FILED

03 NOV 14 P 2: 10

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

S DISTRICT COURT
HARTFORD CT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*     \*

| | |
|---|---|
| MICHAEL W. KENNEDY, | \* |
| | CIVIL ACTION |
| Plaintiff, | \* NO. 3:02cv1754 (CFD) |
| VS. | \* |
| BMW FINANCIAL SERVICES, N.A. | \* |
| | NOVEMBER 14, 2003 |
| Defendant | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*     \*

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule 56 and Local Rule 9(a), the defendant BMW Financial Services NA, LLC ("Defendant") submits this memorandum of law in support of its Motion for Summary Judgment upon the Amended Complaint of the plaintiff Michael W. Kennedy ("Plaintiff").

## I.     INTRODUCTION

Plaintiff has sued a party which had absolutely no involvement in the wrongdoing he has alleged.  After a motor vehicle dealer calculated and charged him certain fees connected with his vehicle lease which he now believes were erroneous, Plaintiff has sued his financing company, which neither calculated nor received those charges.  Federal law expressly immunizes financing companies like Defendant from any liability in these circumstances.  The only relevant fees which Defendant did

charge to Plaintiff were at the end of his lease term, and Plaintiff has conceded he has no evidence to dispute their accuracy. Therefore, this Court should award summary judgment in Defendant's favor upon the Amended Complaint.

## II.    BACKGROUND

On or about April 30, 1999, Michael C. Iannuzzi and Michael P. Iannuzzi (the "Iannuzzis") executed a lease for a new 1999 BMW 328IC convertible (the "Vehicle") with a motor vehicle dealer in Boston, Massachusetts (the "Dealer"). See Paragraph 1 of Defendant's Local Rule 56(a)(1) Statement and exhibits cited therein (hereinafter "Statement at ¶ ___"). The Dealer calculated the title fee, registration fee, license fee, money due at lease signing, and total of payments for this transaction, and disclosed all of these charges to the Iannuzzis. See Statement at ¶ 3. Pursuant to agreements between the Dealer and Defendant which are common in the industry, the Dealer assumed responsibility for providing these disclosures to consumers and wrote the results of its calculations onto blank lease forms which had been provided to the Dealer in advance by Defendant. See Statement at ¶ 3. The Iannuzzis' lease required, *inter alia*, that monthly payments be made for the use of the Vehicle, that it be returned in good condition at the end of the term, and that charges would be assessed for all applicable taxes plus a fee of twenty cents for each mile driven over 36,025. See Exhibit C at ¶¶ 12, 18, 20, 32. At the Iannuzzis' request, the Dealer apparently also etched the Vehicle's VIN number from several of its components and charged them for performing this service. See Statement at ¶¶ 2 and 3.

Defendant is a financing company headquartered in Ohio who agreed to finance the transaction for the Iannuzzis. Defendant had absolutely no involvement in the VIN etch agreement or in calculating the title fee, registration fee, license fee, VIN etch fee, money due at lease signing, or total of payments. See Statement at ¶¶ 4 and 5. Neither did Defendant collect or receive those fees. However, in accordance with industry norms, the Dealer immediately assigned the Vehicle and lease to Defendant, who then began collecting the monthly payments from the Iannuzzis. See Statement at ¶¶ 4 and 5. The Dealer sent a copy of the lease agreement to Defendant, but did not assign to Defendant any document by which it could have been determined that the title fee, registration fee, license fee, VIN etch fee, money due at lease signing, or total of payments could have been incompletely or inaccurately disclosed. See Statement at ¶ 6.

Several months later, at the Iannuzzis' request, Defendant agreed to allow Plaintiff to take over the Vehicle and its monthly payments. All of the parties executed a Transfer of Interest and Assumption of Obligation form between January and February of 2000. See Statement at ¶ 7. As it stated, Plaintiff acknowledged receiving a copy of the original lease and agreed to be bound by all of its terms. See Exhibit D.

Plaintiff returned the Vehicle after the lease term ended more than two years later. By letter dated August 21, 2002, Defendant billed Plaintiff a total of $2,975.45. See Statement at ¶ 8. This bill included several charges which Plaintiff owed to Defendant under the lease's end-of-term provisions, two of which are relevant to this litigation. The first charge was $160.53 in use and sales tax which Defendant was obligated to collect for the State of Connecticut. See Statement at ¶ 8. The

-3-

other charge was $1,868.20 for excess mileage, because Plaintiff had returned the car with 45,366 miles on the odometer, which was 9,341 miles over the 36,025 limit stated in the lease. See Statement at ¶ 9.

Plaintiff commenced this action shortly after receiving that bill. Count One of the Amended Complaint contends that the title fee, registration fee, license fee, money due at lease signing, and total of payments stated in the lease were inaccurate in violation of the Consumer Leasing Act, 15 U.S.C. § 1667, et seq. ("CLA"), and that Defendant failed to explain the items upon which Plaintiff was charged use and sales tax at the end of the lease term. Count Two had alleged that Defendant defrauded Plaintiff by failing to either obtain an odometer statement from the Iannuzzis or give one to Plaintiff in violation of the Motor Vehicle and Cost Savings Act, 49 U.S.C. § 32101, et seq. However, this Court (Droney, J.) dismissed Count Two for failure to state a claim on October 3, 2003. Count Three is a claim under the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a, et seq. ("CUTPA") based on the previous allegations, but it also accuses Defendant of "charging plaintiff an inaccurate sum for excess mileage." Am.Compl. at ¶ 21. Although not mentioned in the Amended Complaint, Plaintiff has stated in discovery that he also believes Defendant is additionally liable for failing to itemize the fee for the VIN etch which the Iannuzzis ordered and which the Dealer performed. See Exhibit H at ¶ 11.

Plaintiff prays for actual damages, statutory damages under the CLA of $1,000.00, punitive damages, forgiveness of the excess mileage fee, correction of any adverse credit reporting, and costs and attorney's fees. See Am.Compl. at Prayer for Relief; Exhibit H at ¶ 13.

-4-

## III.    STANDARD OF LAW

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 325, 327 (1986), quoting Fed. R. Civ. P. 1.  Only genuine disputes over material facts can prevent a grant of summary judgement.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).  A "genuine issue" exists if there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Id. at 249.  "Material facts" are those that might affect the outcome of the suit under governing law.  Id. at 248.  Any response by the plaintiff must therefore "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

## IV.    DISCUSSION

This Court should grant summary judgment against both remaining counts of Plaintiff's Amended Complaint because Defendant cannot be held liable under either of them as a matter of law. The CLA and its regulations state that Defendant, a financing company, cannot be held liable under Count One for any inaccuracies in the April 30, 1999 lease disclosures.  Neither can Defendant be held liable for charging Plaintiff tax and excess mileage fees under Count Three, because those charges were properly assessed and billed under state law and the lease's plain language.

## A.    DEFENDANT CANNOT BE HELD LIABLE UNDER THE CONSUMER LEASING ACT.

This Court should grant summary judgment against Plaintiff's CLA claim in Count One, because the CLA and its regulations state that a financing company cannot be held liable for any inaccuracies in disclosures made by an assigning dealer.

The federal Truth-In-Lending Act ("TILA") provides that certain disclosures must be made to consumers during credit transactions. See 15 U.S.C. §§ 1601, et seq. The CLA, which is a portion of TILA, specifically requires that consumer leases (like the one at issue in this case) must conspicuously disclose certain specified charges and how they are tabulated. See 15 U.S.C. §§ 1667, et seq. Plaintiff has identified in his Amended Complaint and discovery responses exactly six items which he believes violated these disclosure provisions of the CLA. They are as follows:

- The lease says the "title fee" was $50.00, but the Department of Motor Vehicles Registration receipt says that the fee was $25.00. See Am.Compl. at ¶ 8; Exhibit H at ¶ 2.

- The lease says the "registration fee" was $127.50, but the Department of Motor Vehicles Registration receipt says that the fee was $70.00. See Am.Compl. at ¶ 9; Exhibit H at ¶ 3.

- The lease says the "license fee" was $18.00, but the Department of Motor Vehicles Registration receipt says that there was no fee. See Am.Compl. at ¶ 10; Exhibit H at ¶ 4.

- For the above reasons, the "money due at lease signing" should have been $107.50 less than as stated in the lease. See Am.Compl. at ¶ 11; Exhibit H at ¶ 5.

- For the above reasons, the "total of payments" also should have been $107.50 less than as stated in the lease. See Am.Compl. at ¶ 12; Exhibit H at ¶ 6.

- The August 21, 2002 letter from Defendant did not itemize the items upon which the $160.53 use tax and sales tax was charged. See Am.Compl. at ¶ 13; Exhibit H at ¶ 7.

The simplest way to analyze these allegations is to consider the first five of them together, since they all concern the initial April 30, 1999 disclosures. The sixth allegation will be discussed separately since it concerned the final billing over three years later.

1.    **The CLA Immunizes Defendant from Liability as an "Assignee" for Any of the Allegedly Erroneous Disclosures in the April 30, 1999 Lease.**

Plaintiff claims that Defendant is liable for over-stated governmental fees and resulting totals disclosed in the lease. However, only the Dealer calculated and issued these disclosures. Defendant denies that those disclosures were improper in any way, but if they are, Defendant is immune to any liability for them as a matter of law.

Defendant's immunity is set forth in the CLA, which defines retail lessors (such as the Dealer) as the "creditors" who are responsible for all disclosures at the time of a credit lease transaction. See 15 U.S.C. §§ 1602(f), 1640(a), 1667d(b). Where any written obligation is initially payable on its face to a dealer, the dealer is the only "creditor" in the transaction responsible, even where the obligation is immediately assigned to a third party. 12 C.F.R. Pt.226, Supp.I ¶ 2(a)(17)(i)(2) ("[i]f an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person"); General Elec. Capital Corp. v. DirecTv, Inc., 94 F.Supp.2d 190, 203 & n.5 (D.Conn. 1999).[1] The CLA states that a civil

---

[1] Indeed, the Federal Reserve Board has specified an example identical to the circumstances presented in this case: "An auto dealer and a bank have a business relationship in which the bank supplies the dealer with credit sale contracts that are initially made payable to the dealer and provide for the immediate assignment of the obligation to the bank. The dealer and purchaser execute the contract only after the bank approves the creditworthiness of the purchaser. Because the obligation is initially payable on its face to the dealer, the dealer is the only creditor in the transaction." 12

(continued ...)

action "may be maintained against any *assignee* of such creditor *only* if the violation for which such action or proceeding is brought *is apparent on the face of the disclosure statement*." 15 U.S.C. § 1641(a) (emphasis added). Here, Defendant was the Dealer's assignee, as the lease itself clearly states. See Statement at ¶ 5; Exhibit C at pp. 2 and 4. Defendant is therefore statutorily immune to liability under the CLA for any disclosure inaccuracies which are not apparent on the face of the lease assigned to it, under the plain language of § 1641(a).[2]

The rationale behind § 1641(a) is clear: "Congress did not wish to impose liability for damages and attorney's fees on an assignee who was not responsible for and who had no notice of TILA disclosure violations at the time of an assignment." Mayfield v. General Elec. Capital Corp., No. 97cv2786, 1999 WL 182586, *4 (S.D.N.Y. Mar. 31, 1999) (internal quotes and citations omitted). This provision has therefore been uniformly applied such that "[o]nly violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable.... such as statements that are illegal, impossible, or in conflict with other terms." Taylor v. Quality Hyundai Inc., 150 F.3d 689, 694 (7th Cir. 1998); see, e.g., 15 U.S.C. § 1641(a)(1) (permitting liability only if a disclosed figure "can be determined to be incomplete or inaccurate from the face of the disclosure statement"). Examples of facially-apparent violations

---

C.F.R. Pt. 226, Supp.I ¶ 2(a)(17)(i)(2). See Allen v. Jerome Imports, Inc., No. 97cv3847, 1998 WL 751633, *2 (E.D.La. Oct. 26, 1998) (citing this example in decision dismissing claim against motor vehicle finance company as "assignee").
    [2] The assignee defense in § 1641(a) applies to claims brought under the CLA, because they are Parts B and E, respectively, of the same Subchapter I of Chapter 41 ("Consumer Credit Protection"), and § 1641(a) states that it applies to "any civil action for a violation of this subchapter." See generally Jarvis v. South Oak Dodge, Inc., 201 Ill.2d 81, 88-89 (2002); see also 12 C.F.R. §§ 213.2(a) ("the Consumer Leasing Act is chapter 5 of the Truth in Lending Act.").

include obvious inconsistencies within a single assigned document, see, e.g., Rivera v. Grossinger Autoplex, Inc., No. 00cv0442, 2000 WL 796158, *4 (N.D.Ill. June 19, 2000) (disclosure stated "Term (Max. 72 most)  78"); or between two assigned documents, see, e.g., England v. MG Investments, Inc., 93 F.Supp.2d 718, 724-25 (S.D.W.V. 2000) (obvious discrepancies in dollar figures between the two documents assigned).

However, virtually *every* court to have considered the issue has agreed that finance companies are immune to liability for discrepancies between assigned and unassigned documents under § 1641's plain language – and thus that assignees cannot be charged with knowing the contents of unassigned receipts, fee schedules, or similar documents. See, e.g., Ramadan v. Chase Manhattan Corp., 229 F.3d 194 (3d Cir. 2000); Balderos v. City Chevrolet, 214 F.3d 849, 853 (7th Cir. 2000); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 709-10 (11th Cir. 1998); Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 935 (7th Cir. 1998); Taylor v. Quality Hyundai Inc., 150 F.3d 689, 694 (7th Cir. 1998); Mayfield, 1999 WL 182586; Ritter v. Durand Chevrolet, Inc., 932 F.Supp. 32 (D.Mass. 1996). Courts therefore routinely grant summary judgment to motor vehicle financing companies for inaccurate fee disclosures made by dealers under § 1641. See, e.g., Knapp v. Americredit Financial Services, Inc., 245 F.Supp.2d 841, 848 (S.D.W.Va. 2003); Green v. Levis Motors, Inc., 179 F.3d 286, 295 (5th Cir. 1999); Fielder v. Credit Acceptance Corp., 98 F.Supp.2d 1104 (W.D.Mo. 2000).

Here, Plaintiff has effectively conceded that the disclosure inaccuracies he alleges are *not* "apparent on the face" of the lease, because he has stated in discovery that his only evidence of those inaccuracies is his Department of Motor Vehicle Registration receipt validating the amounts paid.

See Exhibit H at ¶¶ 2-6. Neither that receipt nor any other document which would show the fees at issue to have been incompletely or inaccurately stated was ever assigned to Defendant. See Statement at ¶ 6. Plaintiff's resort to the Registration receipt as his sole evidence itself proves that his claim cannot prevail as a matter of law. As the Eleventh Circuit has explained when rejecting an identical claim, "[u]nder the [plaintiffs'] own argument … we would need to resort to evidence or documents extraneous to the disclosure statement. This the plain language of the statute forbids us to do." Ellis, 160 F.3d at 709. Indeed, at least two courts have awarded summary judgment to a motor vehicle finance company for specifically this reason where, as here, the consumer argued that his registration showed that a dealer's disclosures of governmental fees were overstated. See LaCasse v. All Star Dodge, Inc., Docket No. 96cv7365, 2001 WL 34046169 (M.D.La. Feb. 7, 2001); Brister v. All Star Chevrolet, Inc., 986 F.Supp. 1003 (E.D.La. 1997). The Brister court explained:

> Plaintiffs next cite Certificates of Registration issued by Louisiana that state the actual amounts paid to public officials for license, mortgage, title, and title handing fees…. Plaintiffs do not, however, contend that such registration certificates were included in the assignment documents. Nothing in plaintiffs' statements regarding registration certificates helps establish that an inaccuracy was apparent on the face of the disclosure statement or apparent upon review of other [finance company] assignment documents. The Court finds no merit in the registration certificate argument…. Plaintiffs have not provided sufficient substantiation to establish a material issue as to whether the alleged inaccuracies in the disclosures to [the plaintiffs] were apparent, and accordingly summary judgment is appropriate in favor of [the finance company] regarding assignee liability for the alleged inaccuracies.

Id. at 1009. This Court should award Defendant summary judgment in accordance with these well-reasoned, consistent, and overwhelming authorities across the nation.

Section 1641 of the CLA was enacted specifically to immunize financing companies such as Defendant from claims such as Plaintiff's. Because nothing on the face of the documents assigned to Defendant show that the Dealer's disclosures were erroneous, Defendant cannot be held liable for them as a matter of law.

**2.     The CLA Immunizes Defendant from Liability as a "Lessor" for Any of the Allegedly Erroneous Disclosures in the April 30, 1999 Lease.**

Defendant maintains that it is an "assignee" under the CLA, and that the absolute defense set forth in § 1641 therefore immunizes it from any liability under Count One, without any further inquiry. However, in page 4 of its October 3, 2003 Ruling on Defendant's Motion to Dismiss, this Court observed that "[Defendant]'s status as an 'assignee' or 'lessor' and the corresponding scope of liability cannot be decided merely by reference to the amended complaint." Plaintiff had argued that Defendant should be considered a "lessor" under the CLA for a number of reasons, such as that its consent to his assumption of the lease somehow created a "new" lease with its own disclosure obligations, or that providing blank lease forms to the Dealer made it "involved" in the original transaction.[3] For purposes of the present Summary Judgment motion, it is crucial to note that *Defendant cannot be held liable regardless of whether Defendant is considered an "assignee" or a "lessor" under the CLA.*

---

[3] The mere fact that financing companies regularly provide dealers with blank leases, related forms, guidelines specifying the leases they will accept, and the like does not destroy their statutory immunity. See, e.g., Luck v. Primus Automotive Fin. Srvcs., Inc., 763 So.2d 243, 247-48 (Ala. 2000) (affirming summary judgment despite such evidence).

Even assuming Defendant somehow became a "lessor" in this transaction, the CLA does not impose any liability on Defendant for the disclosures made by the Dealer.   The CLA's set of regulations promulgated by the Board of Governors of the Federal Reserve System, known as "Regulation M," specifically states that "[n]ew disclosures are not required when a consumer lease is assumed by another person."   12 C.F.R. § 213.5(c); see also 12 C.F.R. Pt.226, Supp.I ¶ 20(b)(1). Numerous regulations implementing TILA generally and the CLA specifically therefore make clear that "[w]hen a transaction involves more than one lessor, the disclosures required by this part may be made by one lessor on behalf of all the lessors." 12 C.F.R. § 213.3(b); see also 12 C.F.R. Pt.213, Supp.I ¶ 3(c) (permitting a "single lessor [to] provide[] disclosures to a lessee on behalf of several lessors"); 12 C.F.R. § 226.17(d); 12 C.F.R. Pt.226, Supp.I ¶ 17(d); 12 C.F.R. Pt.213, Supp.I ¶ 3(a)(1)(4).

Indeed, Congress itself has specifically directed that "[i]f a transaction involves more than one creditor or lessor, *only one* creditor or lessor shall be required to make the disclosures," and that, "[w]ith respect to any failure to make disclosures required under this part or part D or E of this subchapter [the latter being the CLA], *liability shall be imposed only upon the creditor [or lessor] required to make disclosure*." 15 U.S.C. §§ 1631(b) and 1640(a) (emphasis added).   (The CLA explicitly directs that the term "creditor" in § 1640(a) includes a "lessor" as defined in the CLA. See 15 U.S.C. § 1667d(b).)   The regulations provide that the creditors decide amongst themselves who will provide the disclosures.   12 C.F.R. §§ 213.3(b) and 226.17(d).   "The creditor who agrees to furnish the disclosure statements is the sole creditor who is liable for them."   Canaday v. Household

<u>Retail Servs., Inc.</u>, 119 F.Supp.2d 1258, 1265-66 (M.D.Ala. 2000) (citing 2 Clontz, Truth in Lending Manual ¶ 10.08 at 10-52), <u>aff'd</u>, 268 F.3d 1067 (11th Cir. 2001).

In <u>Canaday</u>, the purchaser of a satellite dish system filed a TILA claim for allegedly inaccurate disclosures against not only the dealer with whom he transacted, but also the financing company to which the payments were assigned after it funded the purchase.  The court awarded summary judgment to the financing company as an "assignee" since none of the alleged defects were "apparent on the face" of the assigned documents, and since § 1641 was enacted to preclude any "duty of inquiry upon financial institutions that serve as assignees." <u>Id.</u> at 1262-64.  However, the court also held that the financing company could not be held liable *even assuming* it was a second "creditor" along with the dealer.  After summarizing the applicable statutes and regulations, the court held that:

> a creditor is not required to disclose unless the debt is initially payable to that creditor on the face of the agreement... [O]ne creditor is not liable for another's errant disclosures.... Therefore, even if [the finance company] and [the retailer] can both be considered creditors, the  court finds that TILA does not allow [the finance company] to be liable in the event that [the retailer]'s disclosures are found to be improper.

<u>Id.</u> at 1265-66 (citations to 2 Clontz, Truth in Lending Manual ¶ 10.08 at 10-52 and other authorities omitted).

Once again, Defendant denies that the lease contains any erroneous disclosures.  But even if it does, Defendant is not responsible for them by both law and logic alike, since the Dealer agreed to (and did) make the disclosures at issue.  Congress was well aware that financing companies to whom leases are assigned do not participate in calculating, collecting, or transmitting the governmental fees

in each transaction. The CLA therefore requires consumers to look to the dealers who did so if those disclosures prove inadequate. Plaintiff sued Defendant instead, which flies in the face of this simple mandate. Summary judgment is therefore appropriate against his claims that Defendant is liable for the Dealer's disclosures of his title, registration, and license fees and his money due at lease signing and total of payments.

### 3.    Defendant Cannot be Held Liable for Allegedly Failing to Itemize the Bases for his Use Tax and Sales Tax at Termination.

The only other ground upon which Count One of the Amended Complaint is premised is that Defendant allegedly miscalculated his sales tax in his August 21, 2002 end-of-lease letter, or allegedly failed to itemize the items upon which that tax was charged. See Am.Compl. at ¶ 13; Exhibit H at ¶ 7.

Connecticut General Statutes § 12-430(4) requires the assignees of motor vehicle leases to collect a 6% sales and use tax at their termination upon remaining base payments, disposition fees, and excess mileage fees, among other items. See "Sales and Use Tax Trade-In Allowance and Other Procedures in Connection with Leases of Motor Vehicles," Policy Statement 96(10) at pp. 2 and 5 (copy attached).[4] Here, Defendant properly calculated the sales and use tax owed by Plaintiff as 6.0% of the sum of his remaining base payment ($457.22), disposition fee ($350.00), and excess mileage fee ($1,868.20), which equals $160.53. See Exhibit A at ¶ 10. When asked to explain the

-14-

basis of his CLA claim in discovery, Plaintiff stated *not* that this tax should not have been collected or that it had been incorrectly calculated, but rather that the items upon which the calculation was based should have themselves been itemized. See Exhibit H at ¶ 7.

Plaintiff is wrong. The CLA simply does not impose any such post-lease tax disclosure requirements, see 15 U.S.C. §§ 1667a and 1667b, and no court or regulation has ever suggested otherwise. The lease properly explained to Plaintiff that "Your End of Lease Term Liability is ... any official fees or taxes assessed or billed in connection with this Lease," see Exhibit C at ¶ 20, since obviously the exact amount could not have been predicted more than three years in advance. Even where the CLA does require disclosures of certain taxes at the lease's commencement, they need not itemize each component of every tax's mathematical calculation. Only their "total dollar amount" must be disclosed or included in a gross capitalized cost. 15 U.S.C. § 1667a(3); 12 C.F.R. §§ 213.2(f) and 213.4(n).[5] Indeed, even when a creditor chooses to "itemize" a particular tax, its name alone is sufficient. The taxes simply "may be totaled and disclosed as an aggregate sum, or they may be itemized by the specific fees and taxes imposed." See 12 C.F.R. Part 226, Supp. I, ¶ 4(e)(2). Defendant properly determined and billed to Plaintiff the Use and Sales Tax he owed to the State of Connecticut, and no violation of the CLA has occurred. Plaintiff can identify no evidence or authority to the contrary which could demonstrate a material dispute of fact on this issue.

---

[4] Policy statements issued by governmental agencies are properly the subject of judicial notice. United States v. Penn Foundry and Mfg. Co., Inc., 337 U.S. 198, 215 (1949) (Douglas, J., concurring); United States v. Eagleboy, 200 F.3d 1137, 1140 (8th Cir. 1999).
[5] Plaintiff could have checked a box on the lease next to the Gross Capitalized Cost figure marked, "if you want an itemization of this amount, please check this box," but he did not. See Exhibit C at ¶ 11(A).

In summary, not one of the six violations of the CLA alleged by Plaintiff can result in liability against Defendant as a matter of law. The alleged overcharges in his lease for title, license, and registration fees and related calculations are attributable solely to the Dealer, which made and issued those disclosures. Defendant was not responsible for them in fact or by law. This Court should therefore award summary judgment for Defendant upon Count One of the Amended Complaint.

**B.    DEFENDANT CANNOT BE HELD LIABLE UNDER THE UNFAIR TRADE PRACTICES ACT.**

This Court should also grant summary judgment against Plaintiff's claim in Count Three that the alleged CLA violations and the charges listed in his August 21, 2002 bill constituted violations of CUTPA. Defendant acted properly at all times, and Plaintiff has conceded in discovery that he has no evidence otherwise.

CUTPA generally prohibits unfair and deceptive acts or practices committed in the course of trade or commerce. See C.G.S. § 42-110a, et seq. Plaintiff predicates his CUTPA claim upon the following four grounds:

- Defendant's alleged CLA violations as described in Count One. See Am.Compl. at ¶ 21; Exhibit H at ¶¶ 2-7, 11.

- Defendant allegedly violated the Motor Vehicle and Cost Savings Act, 49 U.S.C. § 32101, et seq. by failing to have him sign an odometer statement. See Am.Compl. at ¶ 21; Exhibit H at ¶¶ 9 and 11.

- The Iannuzzis were charged $139.00 to have the Dealer etch the Vehicle's VIN number from its components, but this charge was not "itemized" in his purchase order. See Exhibit H at ¶ 11.

-16-

- Defendant allegedly charged Plaintiff an inaccurate sum for excess mileage.    <u>See</u> Am.Compl. at ¶ 21; Exhibit H at ¶¶ 10 and 11.

Each of these allegations will be considered in turn.

At the outset, this Court may summarily dispose of Plaintiff's CUTPA claim insofar as it simply incorporates his CLA claim, since the latter has no merit as explained in Part IV.A, <u>supra</u>. <u>See</u>, <u>e.g.</u>, <u>Hildabrand v. DiFeo Partnership, Inc.</u>, 89 F.Supp.2d 202, 209-10 (D.Conn. 2000) (awarding summary judgment against CUTPA claim after finding no violation of the CLA).[6]

This Court can also quickly reject Plaintiff's suggestion that Defendant violated the Motor Vehicle and Cost Savings Act, 49 U.S.C. § 32101, <u>et seq.</u> by failing to have him sign an odometer statement.  This accusation is premised upon Count Two of the Amended Complaint, which this Court (Droney, J.) dismissed for failure to state a claim on October 3, 2003.  As this Court correctly explained, "The Federal Odometer Act, by its express language, applies only to changes in ownership under these circumstances.... Here, the vehicle was leased to [Plaintiff] but, at all times, was owned by [Defendant]."  <u>See</u> Order dated October 3, 2003 at 5 (citations omitted).  These legally-insufficient allegations therefore cannot support Plaintiff's CUTPA claim now for the purpose of attempting to oppose summary judgment.

Next, this Court must reject Plaintiff's accusation that Defendant failed to "itemize" a $139.00 fee for etching the Vehicle's VIN number from its components.  This is because Defendant had absolutely nothing to do with this fee.  Plaintiff's own evidence is that he executed a "Motor Vehicle

Cash Purchase Agreement" with the Dealer dated April 16, 1999 which states "Vin Etch Service $139.00." See Exhibit H at Production.[7]  It is unclear exactly how this fee should have been "itemized" in Plaintiff's opinion, but regardless, Defendant was never a party (assignee or otherwise) to this Agreement.  Instead, this Agreement was executed and performed solely by the Dealer; it was entirely separate from the lease at issue in this case, and predated it by a full two weeks.  Id. Defendant neither received any request to perform a VIN etch, nor performed any such service, nor calculated or received any fee for doing so.  See Statement at ¶¶ 2 and 4; Exhibit A at ¶¶ 4 and 6. Only the Dealer did so.  Summary judgment is appropriate because Defendant cannot be held liable under CUTPA for failing to itemize a VIN etch fee charged, billed, and collected by someone else.

The final allegation upon which Plaintiff predicates his CUTPA claim is that he disputes the excess mileage fee for which he was billed in the August 21, 2002 letter.  When Plaintiff assumed this lease, he agreed to be bound by all of its provisions, including the twenty-cent fee for each mile driven over 36,025.  See Exhibit C at ¶¶ 12, 18, 20, 32; Statement at ¶ 7.  (The Iannuzzis could have purchased an extra mileage allowance when they signed the lease, but chose not to.  See Exhibit C at ¶ 18.)  At the time Plaintiff returned the Vehicle, it had 45,366 miles on the odometer.  This is specifically verified in both Defendant's Vehicle Inspection Sheet and Defendant's Expense Detail Report.  See Exhibit A at ¶ 11; Exhibit F; Exhibit G.  Because the mileage was 9,341 miles over the

---

[6] Notably, the CLA "does not preclude a lessor from recovering other charges from the lessee at the end of the lease term.  Examples of such charges include ... [e]xcess mileage charges." 12 C.F.R. Pt.213, Supp.I ¶ 4(m)(2)(3)(ii).
[7] Exhibit H was produced to Defendant without page numbers.  The particular document cited herein is the fourth-from-last page of the exhibit.

agreed-upon limit, Defendant properly charged him twenty cents for each of those miles, which equals $1,868.20.  See Statement at ¶ 9.

Plaintiff has unabashedly admitted in discovery that he does not know what the mileage charge should have been or why Defendant's calculation was inaccurate.  See Exhibit I at ¶ 2.[8] Neither does he have any other evidence to dispute Defendant's figures.  See Exhibit H at ¶¶ 10 and 11; Exhibit I at ¶ 2; Exhibit J.  Plaintiff's sole contention is that "[b]ecause [D]efendant failed to provide an odometer statement at inception and termination of the lease it cannot accurately certify the true mileage."  See Exhibit H at ¶ 10.  Unfortunately for Plaintiff, this Court has already held that Defendant had no obligation to provide Plaintiff with an odometer statement.  See Order dated October 3, 2003 at 5.  Plaintiff has also admitted that he has absolutely no evidence to challenge (or even reason to doubt) the accuracy of Defendant's records of the odometer reading at the time he returned the Vehicle.  Thus, Plaintiff cannot meet his burden to demonstrate the existence of a material factual dispute as to these issues.  Defendant is therefore entitled to summary judgment.

In summary, not one of the CUTPA violations alleged by Plaintiff can possibly succeed against Defendant as a matter of law.  Defendant violated neither disclosure rules nor odometer statement requirements, and properly calculated Plaintiff's excess mileage charge.  This Court should therefore award summary judgment for Defendant upon Count Three of the Amended Complaint.

---

[8] Defendant asked Plaintiff to "identify the amount which you contend would have been the accurate sum for excess mileage" and "explain how and why you have so determined."  See Exhibit H at p.10, ¶ 11.  Plaintiff response to both was simply: "Unknown."  See Exhibit I at ¶ 2.

## V.    CONCLUSION

For the foregoing reasons, the Defendant respectfully prays for summary judgment.

THE DEFENDANT
BMW FINANCIAL SERVICES NA, LLC

By: _____
Sheila A. Denton (ct 11436)
Adam J. Cohen (ct 19877)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
Telephone (203) 330-2000

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed on the date hereon to:

**Attorney for the Plaintiff:**
Bernard T. Kennedy, Esq.
49 Rose Street
Branford, CT  06405
Telephone:  (203) 481-1322

**The Plaintiff:**
Michael W. Kennedy, Esq.
101 W. Main Street
Branford, CT  06405
Telephone:  (203) 481-4040

_____
Adam J. Cohen