FILED

03 NOV 14 P 2: 10

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

| | |
|---|---|
| MICHAEL W. KENNEDY, | \* |
| | CIVIL ACTION |
| Plaintiff, | \* NO. 3:02cv1754 |
| VS. | \* |
| BMW FINANCIAL SERVICES, N.A. | \* |
| | NOVEMBER 14, 2003 |
| Defendant | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

## OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

Pursuant to Local Rule 7(a), the defendant BMW Financial Services N.A., LLC (improperly named in the complaint as "BMW Financial Services, N.A.") (the "Defendant") submits this Opposition to the Motion to Dismiss Counterclaim dated October 31, 2003 filed by the plaintiff Michael W. Kennedy (the "Plaintiff").

**I.    BACKGROUND**

This is a dispute over a motor vehicle lease. In February of 2000, Plaintiff assumed the lease from two individuals who had originally leased the vehicle from a retailer in Boston ten months earlier. Am.Compl. at ¶ 2 [*sic*]. That retailer had assigned the Lease to Defendant at the time of the original transaction. See Exhibit A to Defendant's Motion to Dismiss dated January 13,

2003. Neither the prior lessees nor the retailer have been named as parties to this litigation.

The Amended Complaint alleges that the written disclosures given to the original lessees at the time they signed the Lease misstated the amounts due at inception, for total payments, or for various governmental fees, and that the incorrect amount of sales tax was charged. Am.Compl. at ¶¶ 8-13. Count One claims that these inaccuracies violated the Consumer Leasing Act, 15 U.S.C. § 1667, et seq. ("CLA"). Count Two, a claim under the Motor Vehicle and Cost Savings Act, 49 U.S.C. § 32101, et seq., was ordered dismissed by this Court (Droney, J.) on October 3, 2003 for failure to state a claim. Count Three is a claim under the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a, et seq. ("CUTPA") premised upon most of the allegations in Count One, but also adds an accusation that Defendant "fail[ed] to follow the terms of lease at the end of lease and charg[ed] plaintiff an inaccurate sum for excess mileage." Am.Compl. at ¶¶ 21.

Defendant filed an Answer and Affirmative Defenses on October 15, 2003, which denied any wrongdoing or liability. Defendant simultaneously filed a Counterclaim, which states:

> 1. The lease agreement referred to in the complaint obligated Plaintiff to return the vehicle in an undamaged condition, to cooperate with various end-of-lease return requirements, to pay for excess mileage and other charges, and to reimburse Defendant's expenses and attorney's fees for enforcing these obligations.
>
> 2. Plaintiff has breached these obligations, all of which have caused Defendant to suffer damages.
>
> 3. This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. §1367.

Defendant has prayed for compensatory damages, expenses, attorney's fees, and costs.

Plaintiff has now moved to dismiss the counterclaim for two reasons. The first is that this

2

Court lacks subject matter jurisdiction over the counterclaim, on the grounds that it is not compulsory and that supplemental jurisdiction should be declined because "the counterclaim impedes expeditious enforcement of" his CLA claim. See Pl.Mem. at 2-5. The other reason offered by Plaintiff (with only a single sentence of explanation) is that the counterclaim fails to state a claim due to Defendant's alleged failure "to mitigate its damages." See Pl.Mem. at 5. These reasons are baseless, and Plaintiff's motion must be denied.

**II.   STANDARD OF LAW**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the Court's jurisdiction over the subject matter of a claim. Material factual allegations in the claim are presumed to be true, while disputed jurisdictional fact issues may be resolved by reference to evidence outside the pleadings. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Exchange Nat. Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976).

Rule 12(b)(6) of the Federal Rules of Civil Procedure "delineates the procedures which must be followed in testing the legal sufficiency of a [claim]." LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991). All allegations are assumed true as pleaded, and all reasonable inferences are drawn in the claimant's favor. Meritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001); Allen v. WestPoint-Pepperelle, Inc., 945 F.2d 40, 44 (2d Cir. 1991). The motion must be denied if the claimant could possibly prove any set of facts which would entitle him to relief. Boddie v. Schneider, 105 F.3d 857, 860 (2d Cir. 1997); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).

### III. DISCUSSION

#### A. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER DEFENDANT'S COUNTERCLAIM.

This Court has subject matter jurisdiction over Defendant's counterclaim because it is a compulsory counterclaim which Defendant was bound to assert in this action. Federal Rule 13(a) states that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]" In the words of the Supreme Court, this Rule "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." Southern Const. Co. v. Pickard, 371 U.S. 57, 60 (1962). "In determining whether a claim arises out of the transaction that is the subject matter of the opposing party's claim, this Circuit generally has taken a broad view, not requiring an absolute identity of factual backgrounds but only a logical relationship between them." United States v. Aquavella, 615 F.2d 12, 22 (2d Cir. 1979) (internal quotes and alterations omitted). When a counterclaim is compulsory, no independent basis for federal jurisdiction need be shown for it because the Court's supplemental jurisdiction supports it automatically. Federman v. Empire Fire and Marine Ins. Co., 597 F.2d 798, 810-11 (2d Cir. 1979); Harris v. Steinem, 571 F.2d 119, 121-22 (2d Cir. 1978).

Here, there can be no question that the counterclaim arises out of the same transaction or occurrence that is the subject matter of the complaint. Both are squarely and exclusively premised upon the very same lease agreement for the very same motor vehicle between the very same parties.

Count One alleges that Defendant "did not charge the correct sales tax at lease termination." Count Three of the Amended Complaint expressly accuses Defendant of "failing to follow the terms of lease at the end of lease and charging plaintiff an inaccurate sum for excess mileage." Am.Compl. at ¶¶ 21. In addition, Plaintiff has repeatedly stated in discovery that the relief he seeks in his lawsuit includes "forgiveness of the over mileage charge in the sum of $2,975.45." See Plaintiff's Damage Analysis dated March 5, 2003 (attached hereto as Exhibit A); see also Responses to Defendant's First Set of Interrogatories and Request for Production dated April 7, 2003, No. 13 (attached hereto as Exhibit B) (relief sought includes "forgiveness of wrongful excess mileage charges."). Defendant's counterclaim seeking to enforce the same end-of-lease terms and charges which Plaintiff challenges in Count Three necessarily "arise out of the transaction or occurrence." Indeed, it would be impossible to adjudicate the latter claim without thoroughly evaluating the former.

Plaintiff cites a number of cases decided under the Fair Debt Collection Practices Act, which is not at issue in this litigation, as having dismissed debt counterclaims as non-compulsory. See Pl.Mem. at 2. However, unlike that statute, **"debt counterclaims are compulsory in TILA and CLA cases."** Heaven v. Trust Co. Bank, 118 F.3d 735, 738 (11th Cir. 1997) (emphasis added). See Plant v. Blazer Financial Services, Inc. of Georgia, 598 F.2d 1357, 1359-64 (5th Cir. 1979) (concluding, after exhaustive analysis, that counterclaim for the underlying debt in a TILA action is compulsory); Williams v. Public Finance Corp., 598 F.2d 349, 352 & n.1 (5th Cir. 1979) ("[balance-due] counterclaim is compulsory, and the district court had jurisdiction over it" under

TILA); see, e.g., Engle v. Shapert Const. Co., 443 F.Supp. 1383, 1386 (M.D.Pa. 1978) (debt counterclaim is compulsory in TILA action); Kenney v. Landis Financial Group, Inc., 376 F.Supp. 852 (N.D.Iowa 1974) (same, and granting creditor judgment); Rodriguez v. Family Publications Service, Inc., 57 F.R.D. 189, 193 (C.D.Cal. 1972) (debt counterclaim is compulsory in TILA action). "Undeniably, a TILA claim and a state law debt claim which concern the same loan are related. Both claims arise from one transaction." Lacy v. General Finance Corp., 651 F.2d 1026, 1029 (5th Cir. 1981).[1]

Notably, this Court has subject matter jurisdiction over Defendant's counterclaim even if it could be considered only "permissive" rather than "compulsory" under Federal Rule 13.[2] Since its 1990 enactment, 28 U.S.C. § 1367 gives district courts supplemental jurisdiction "over all other claims that are so related to claims in the action within [their] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." There are two rulings in this circuit which deemed debt counterclaims as "permissive" in TILA cases, but both predated § 1367 and are therefore no longer good law insofar as their jurisdictional analyses are concerned. See Perry v. Beneficial Finance Co. of New York, Inc., 81 F.R.D. 490, 493 & n.1 (W.D.N.Y. 1979); Ball v. Connecticut Bank & Trust Co., 404 F.Supp. 1 (D.Conn. 1975). However, even these rulings were themselves explicitly based on the absence of any issue as to the lender's initial disclosures in the plaintiff's case-in-chief. See Perry, 81 F.R.D. at 493 & n.1; Ball, 404

---

[1] All CLA claims are TILA claims by definition, because the CLA is Part E of the United States Code subchapter known as TILA (Subchapter I of Chapter 41). See also 12 C.F.R. §§ 213.2(a) ("the Consumer Leasing Act is chapter 5 of the Truth in Lending Act.").

6

F.Supp. at 3.  Indeed, the Perry court specifically held that a debt counterclaim *was* compulsory where the plaintiff's TILA claims, if proven true, would render the debt legally uncollectable as a matter of law.  See Perry, 81 F.R.D. at 493-94.

Here, Plaintiff is openly seeking a judgment of this Court declaring the debts owed to Defendant as "wrongful" and "forgiven."  See Exhibits A and B.  His Amended Complaint expressly accuses Defendant being liable for overcharges in his lease and at the end of its term.  See Am.Compl. at ¶ 21.  These issues are clearly part of the same "case or controversy" over which this Court has jurisdiction – and it is Plaintiff, not Defendant, that has introduced them.  This Court could not possibly adjudicate Plaintiff's allegations against the end-of-lease events and charges without Defendant's claims in favor of them.  Indeed, it would be difficult to imagine a better example of two claims which "arise out of the transaction or occurrence" than the assertion of a monetary debt under a contract and the debtor's challenge to the legitimacy or recoverability of that debt under that contract.

For this same reason, Plaintiff's last-resort arguments that entertaining these "state law" issues would "impede" his federal-law claim, see Pl.Mem. at 4-5, are wholly unavailing. Plaintiff has forthrightly and deliberately opened the door to them by explicitly raising them in his own complaint and demands for relief.  Although § 1367(c) authorizes district courts to decline supplemental jurisdiction over debt counterclaims in CLA cases, they may do so only for

---

[2] Federal Rule 13(b) states that "[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

the end of the lease term, Plaintiff had to pay Defendant twenty cents for each mile driven over 36,025. See Exhibit C to Defendant's Motion for Summary Judgment at ¶¶ 12, 18, 20, 28, and 31 (filed contemporaneously with this Opposition). If Defendant did choose to sell the vehicle afterward, it was justified in relying on Plaintiff to fulfill these express contractual terms in order to secure the proceeds which Defendant reasonably anticipated before leasing it to Plaintiff.

Of course, none of this is truly relevant for present purposes. This is because "mitigation of damages" is nothing more than an affirmative defense to a claim rather than a basis for dismissing it outright. See Union Savings Bank of Danbury v. Barry, Superior Court, No. 320962, 1996 WL 151895, *1 (Mar. 14, 1996) ("failure to mitigate damages ... does not address the issue of liability"). "The failure to mitigate damages is not a defense to an action for breach of contract, but rather a fact to be considered in determining the amount of damages to be awarded after liability has been determined." Longobardi v. LCA, Inc., Superior Court, No. 9204-5172, 1994 WL 551186, *5 (Aug. 4, 1994). Thus, after Defendant establishes Plaintiff's liability for breaching the lease agreement, he will have the opportunity to attempt to introduce evidence (on his burden) in support of his theory that the damages awarded against him should be reduced for any alleged failure to mitigate. See First Federal Sav. and Loan Ass'n of Rochester v. Charter Appraisal Co., Inc., 247 Conn. 597, 615 (1999). This does not, however, mean that Defendant cannot assert its breach-of-contract claim in the first instance. Accordingly, Plaintiff's challenge to the legal sufficiency of Defendant's breach of contract claim must be denied.

## IV. CONCLUSION

Plaintiff's case-in-chief explicitly challenges the enforceability of the very same end-of-lease terms and charges which Defendant's counterclaim seeks to enforce. To say that this counterclaim does not "arise out of the same transaction or occurrence" is every bit as untenable as suggesting that an alleged failure to mitigate damages renders a breach of contract claim itself non-cognizable.

For these reasons, Plaintiff's motion to dismiss should be DENIED in its entirety.

BMW FINANCIAL SERVICES NA, LLC

By: _____
Sheila A. Denton, Esq. (ct 11436)
Adam J. Cohen, Esq. (ct 19877)
Pullman & Comley, LLC
850 Main Street  P.O. Box 7006
Bridgeport, CT  06601-7006
Telephone: (203) 330-2000

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed on the date hereon to:

**Attorney for the Plaintiff:**
Bernard T. Kennedy, Esq.
49 Rose Street
Branford, CT  06405
Telephone:  (203) 481-1322

**The Plaintiff:**
Michael W. Kennedy, Esq.
101 W. Main Street
Branford, CT  06405
Telephone:  (203) 481-4040

Sheila A. Denton
Adam J. Cohen

BPRT/56275.5/AJC/496842v1

11

Not Reported in A.2d
(Cite as: 1996 WL 151895 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

UNION SAVINGS BANK OF DANBURY
v.
Alan BARRY et al.

No. 320962.

March 14, 1996.

MORAGHAN, J.

*1 Union Savings Bank instituted this proceeding on a promissory note executed by the defendants, which note had been secured by a mortgage. The defendants have admittedly defaulted. The complaint sounds in only one count and alleges that on October 13, 1987, the defendants executed the promissory note in issue to the plaintiff in the amount of $38,000. The plaintiff elected to accelerate the loan and call for the total amount of principal and interest due thereon. Barry has filed an answer and special defense, wherein he averred that the bank "took no steps to protect its collateral" when the City of Danbury brought a foreclosure action for delinquent taxes on the mortgaged property. [FN1]

> FN1. Jana Barry, who was represented by counsel, was also defaulted by the court for failure to plead. To date, no answer has been filed on her behalf nor has the default otherwise been opened. Thus, the motion to strike is directed solely towards the answer filed by defendant Alan.

The bank has filed a motion to strike the special defense asserting that it is legally insufficient. It argues that it is not required to take steps to protect collateral used as security for a note and that, in any event, it has properly exercised its right to elect the method by which it chooses to enforce its rights under the note, i.e., an action on the note itself rather than foreclosure.

"A motion to strike is the proper procedural vehicle to challenge the legal sufficiency of any special defense." *Gateway Bank v. Herman,* Superior Court, Judicial District of Danbury at Danbury, Docket No. 315947 (May 15, 1995) (Stodolink, J.); Practice Book § 152(5). "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." *Grant v. Bassman,* 221 Conn. 465, 472-73; *Bennett v. Automobile Insurance Co. of Hartford,* 230 Conn. 795, 802; Practice Book § 164.

Although the bank correctly asserts that it is entitled to pursue an action on the note rather than elect to proceed with a foreclosure action, once it has made that election, it has chosen to pursue a contract action; *Guaranty Bank & Trust Co. v. Dowling,* 4 Conn.App. 376, 385, cert. denied, 197 Conn. 808 (an action on a note is a contract action); and, accordingly, is subject to all defenses to a contract action. At least one court has stated that failure to mitigate damages is not a defense to a contract action; rather, it is "a fact to be considered in determining the amount of damages to be awarded after liability has been determined." *Vincent Longobardi Candid Associates v. LCA, Inc.,* Superior Court, Housing Session, Judicial District of New Haven at New Haven, Docket No. 9204-5172 (August 4, 1994) (Mintz, J.), citing *Danpar Associates v. Somersville Mills Sales Room, Inc.,* 182 Conn. 444.

Since "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action"; *Grant v. Bassman, supra;* failure to mitigate damages does not meet the definition of a special defense as it does not address the issue of liability. Consequently, the special defense is improper.

*2 It should be noted that the defendant bears the burden of proving that the plaintiff failed to mitigate its damages. *Lynch v. Granby Holdings, Inc.,* 37 Conn.App. 846, 850. He is arguably entitled to raise the issue of mitigation as it relates to damages once liability has been established. See *Vincent Longobardi Candid Associates v. LCA Inc., supra.* However, he has not appropriately raised the issue of whether he is entitled to some reduction in the amount of damages for which he may be found liable.

Accordingly, the motion to strike the defendant's special defense is granted.

Not Reported in A.2d  
(Cite as: 1996 WL 151895, *2 (Conn.Super.))

Page 2

1996 WL 151895 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 551186 (Conn.Super.))

Page 3

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Housing Session,
Judicial District of New
Haven.

Vincent LONGOBARDI, d/b/a Candid Associates
v.
LCA, INC., n/k/a the Litchfield Insurance
Group, Inc.

No. CVNH 9204-5172.

Aug. 4, 1994.

*MEMORANDUM OF DECISION*

MINTZ, Judge.

*1 The plaintiff brought this action against the defendant claiming back rent for a portion of the property located at 116 Washington Avenue, North Haven, Connecticut. The property is owned by the plaintiff and was previously occupied by the defendant. The plaintiff also claimed attorney's fees, interest and reasonable costs of collection. The defendant filed six special defenses, claiming estoppel, that the holding over by the defendant created a month to month tenancy, that the original lease could not be modified orally, that the plaintiff failed to mitigate his damages, that the statute of limitations barred the action, and, finally, an accord and satisfaction.

*FACTS*

On December 1, 1984, the parties to this action entered into a lease for the premises located on the fourth floor of a building located at 116 Washington Avenue, North Haven, Connecticut. Exhibit A. In 1979, the parties had a prior lease for space located in the same building. Exhibit 4. In 1981, the plaintiff relocated the defendant from the second floor to the fourth floor. Sometime after December 1, 1984, the defendant moved, at the plaintiff's expense, to space located on the third floor consisting of approximately 1200 sq. ft. Exhibit F. Sometime in 1988, the defendant expressed an interest in additional space on the third floor. The parties negotiated for some time. Exhibits B, C and D. The parties reached an agreement for the rental of an additional 880 sq. ft., consisting of a lunch room, an office and additional work space. Exhibit G. The parties did not enter into nor did they subsequently make a written memorandum of their agreement. The defendant took occupancy of the additional space; however, from the evidence presented at trial, the exact date of the commencement of the occupancy is unclear. The agreement of the parties was that the original lease would be modified to include the additional space. The term of the lease would be extended through January, 1992. The rent commencing February, 1989 would be at the monthly rent of $3,292.00. The plaintiff performed the work necessary on the additional space to prepare it for the defendant's occupancy. The defendant paid and the plaintiff accepted the monthly rent of $3,292.00 from February, 1989 through September, 1991, leaving the rent unpaid for the months October, 1991 through January, 1992. The defendant vacated the premises by the end of September, 1991. [FN1]

FN1. The defendant paid the February, 1989 rent in two installments. The first installment was in the amount of $1650, which represented the rent due under the unmodified lease. The second installment was made by a check dated April 3, 1989 in the amount of $1,642.00. Exhibit 1.

At all relevant times, the plaintiff dealt only with the defendant's agent, Larry Blake, with regard to the tenancy of the defendant. The dealings of the plaintiff with Mr. Blake included the two moves of the defendant within 116 Washington Avenue, all day to day activities concerning the tenancy and all negotiations for the renting of the additional space. Mr. Blake was the manager of the defendant's North Haven office located at 116 Washington Ave. The president of the defendant, Daniel Krout, knew or should have known of Mr. Blake's activities in dealing with the plaintiff; did nothing to dissuade the plaintiff from believing that Mr. Blake had authority to enter into said activities; and knowingly permitted Mr. Blake to act as having the authority to enter into said activities. Mr. Krout, in letter dated September 3, 1991 to the plaintiff, acknowledged that Mr. Blake had a conversation with the plaintiff regarding the tenancy. Exhibit E. The plaintiff reasonably believed that Mr. Blake had the necessary authority to bind the defendant and accordingly acted in good faith by completing the

Not Reported in A.2d
(Cite as: 1994 WL 551186, *1 (Conn.Super.))

Page 4

required construction in the additional space, allowing the defendant to occupy said space and accepting rental payments for said space.

*2 On September 3, 1991, Mr. Krout sent a letter to the plaintiff informing him that the defendant would be vacating the premises. Exhibit E. Enclosed with said letter was the September, 1991 rent check. Exhibit 2. Said letter also stated that said check would "be the final payment." Exhibit E.

After the defendant vacated the premises, the plaintiff attempted to re-rent the premises by dealing with four local brokers: The H. Pierce Company, Caldwell Banker, C.B. Commercial and Raveis Realty. The plaintiff did some advertising on radio and displayed an eighty foot banner on the building in which the premises are located. The plaintiff showed the premises on four separate occasions. The plaintiff was unsuccessful at re-renting the premises before February, 1992.

## DISCUSSION
### I. *Apparent Authority*

"Courts have developed the doctrine of apparent authority to protect, under proper circumstances, a third person in his dealings with an agent who lacks express authority." (Internal quotation marks omitted; citation omitted.) *Edart Truck Rental Corp. v. B. Swirsky & Co.,* 23 Conn.App. 137, 140, 579 A.2d 133 (1990).
> Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal. The issue of apparent authority is one of fact to be determined based on two criteria. First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action.
> (Emphasis added.) (Internal quotation marks omitted; citations omitted.) *Tomlinson v. Board of Education,* 226 Conn. 704, 734-35, 629 A.2d 333 (1993).

"Apparent authority may be derived from a course of dealing." *Edart Truck Rental Corp. v. B. Swirsky & Co.,* supra, 23 Conn.App. 140. "A 'principal cannot be justified in willfully closing his eyes to knowledge.' " Id., 141, citing 1 F. Mechem, Agency (2d.Ed.) 404. Comment "a" of the Restatement (Second) Agency, § 27, provides that "either the principal must intend to cause the third person to believe that the agent is authorized to act for him, or he should realize that his conduct is likely to create such belief." See *Hartford Fire Ins. Co. v. Marsala,* Superior Court, judicial district of Ansonia/Milford, Docket No. 039597 (January 25, 1993, McGrath, J.).

The court finds that Larry Blake possessed the apparent authority to bind the defendant, LCA, Inc., the principal, to the agreement with the plaintiff. Even if the court found that Daniel Krout, the president of the defendant corporation, never held Mr. Blake out to the plaintiff as possessing sufficient authority to bind the defendant corporation to a lease agreement, the court found that Krout knowingly permitted Mr. Blake to act as having such authority.

### II. *Statute of Frauds and the Part Performance Doctrine*

*3 Pursuant to General Statutes § 52-550(a)(4), no civil action may be maintained upon any agreement for any interest in or concerning real property "unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged."

The Connecticut Supreme Court has "held that acts on the part of the promisee may be sufficient to take a contract out of the statute [of frauds] if they are such as clearly refer to some contract in relation to the matter in dispute." (Internal quotation marks omitted; citations omitted.) *Ubysz v. DiPietro,* 185 Conn. 47, 54, 440 A.2d 830 (1981).
> The doctrine of part performance arose from the necessity of preventing the statute against frauds from becoming an engine of fraud. The acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also

Not Reported in A.2d
(Cite as: 1994 WL 551186, *3 (Conn.Super.))

Page 5

be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute. These criteria have recently been restated to require a showing that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific performance.
(Internal quotation marks omitted; citations omitted.) Id.

"Contracts that would otherwise be unenforceable without a writing sufficient to comply with the Statute of Frauds, General Statutes § 52-550, are nonetheless enforceable because of part performance if two separate but related criteria are satisfied." *H. Pearce Real Estate Co. v. Kaiser,* 176 Conn. 442, 443, 408 A.2d 230 (1979).
First, the contract alleged must satisfy the evidentiary function of the Statute of Frauds. To constitute part performance the conduct relied upon must be referable to and consistent with the oral agreement. Second, the conduct alleged to have been induced by reliance on the oral agreement must be of such character that repudiation of the contract by the other party would amount to the perpetration of a fraud.
(Internal quotation marks omitted; citations omitted.) Id.

"Entry and payment of rent under a lease, especially when no denial of its validity is asserted or indicated by the lessor until just before the expiration of the original term, may constitute such part performance as to estop the lessor from setting up the defense of the Statute of Frauds." *Galvin v. Simons,* 128 Conn. 616, 619-20, 25 A.2d 64 (1942).

In the present case, the court finds that Mr. Blake, the agent of the defendant corporation, and the plaintiff entered into an oral agreement in which the plaintiff was to lease to the defendant the additional space at a rate of $3,292.00 per month, for a three year term commencing in February, 1989. The court further finds that while the agreement does not satisfy the requirements of the Statute of Frauds, the agreement is nevertheless enforceable pursuant to the part performance doctrine.

*4 The plaintiff reasonably relied upon the contract and completed the construction on the additional space to make it ready for the defendant's occupancy. The acceptance of the monthly rental payments at the increased rate of $3,292.00 by the plaintiff constitutes the act of part performance by the party seeking to enforce the contract. Accordingly, the court finds that the defendant has failed to tender four monthly payments (October, 1991 through January, 1992) of $3,292.00 totaling $13,168.00. [FN2]

> FN2. The court notes the defendant in its brief argued that, in the alternative, the actions of the parties created a year to year tenancy. The court has come up with the same end result but from a different direction.

III. *Accord and Satisfaction*

The defendant contends that its letter to the plaintiff, dated September 3, 1991, notifying the plaintiff that it was vacating the property, with the September, 1991 rent check enclosed, and the plaintiff's subsequent cashing of the check, constitutes an accord and satisfaction. The defendant relies upon the following statement in the letter: "The enclosed check is for September's rent and will be the *final* payment." Exhibit E.

The Connecticut Supreme Court set forth the law of accord and satisfaction in *County Fire Door Corp. v. C.F. Wooding Co.,* 202 Conn. 277, 520 A.2d 1028 (1987).
When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim. Such a contract is often initiated by the debtor, who offers an accord by tendering a check as 'payment in full' or 'in full satisfaction.' If the creditor knowingly cashes such a check, or otherwise exercises full domain over it, the creditor is deemed to have assented to the offer of accord. Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration.

Not Reported in A.2d
(Cite as: 1994 WL 551186, *4 (Conn.Super.))

Page 6

A contract of accord and satisfaction is sufficiently supported by consideration if it settles a monetary claim that is unliquidated in amount. This court has had numerous occasions to decide whether, in the context of accord and satisfaction, a claim is unliquidated when the debtor tenders payment in an amount that does not exceed that to which the creditor is concededly entitled. Where it is admitted that one of two specified sums is due, but there is a dispute as to which is the proper amount, the demand is regarded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction.... Where the claim is unliquidated any sum, given and received in settlement of the dispute, is a sufficient consideration.
Id., 281-82.

"[A] condition precedent to the making of a contract of accord and satisfaction is that there be a dispute as to the amount owed or an unliquidated claim." *O & P Realty v. Santana,* 17 Conn.App. 314, 551 A.2d 1287 (1989). "The defense of accord and satisfaction required the defendant to prove an accord, that is, an agreement to accept a lesser amount in settlement of the claim and satisfaction, that is payment of that amount by the defendant. Part payment of a debt does not operate to discharge the whole unless the creditor assents to receive part payment as such." *Scotts of Wisconsin v. R & S Dist., Inc.,* Superior Court, judicial district of New Haven, Docket No. 310679 (August 6, 1993, Hodgson, J.), citing *First Hartford Realty Corp. v. Ellis,* 181 Conn. 25, 34, 434 A.2d 314 (1980). An accord also requires mutual assent, i.e., a meeting of the minds. *Gillis v. Gillis,* 21 Conn.App. 549, 552, 575 A.2d 230 (1990).

*5 "[T]he defense of accord and satisfaction requires the defendant to allege that the new agreement be offered by the debtor and accepted by the creditor with the intent to satisfy the whole claim, and that the effect of its acceptance must be made known to the creditor in some unmistakable manner so that he is bound to understand that if he takes it, he takes it in full satisfaction of his claim." (Internal quotation marks omitted.) *Yorke v. Executive Dodge, Inc.,* Superior Court, judicial district of New Haven, Docket No. 311406 (September 18, 1992, Zoarski, J.), citing *Keller v. Rohde,* 109 Conn. 244, 248, 146 A. 288 (1929).

The court finds that the language used in Exhibit E is insufficient to constitute an accord. The court finds that the language "will be the final payment" does not make known to the plaintiff "in some unmistakable manner" that if he took the check, he took it in full satisfaction of the defendant's claim. *Id.* Therefore, the plaintiff should not be denied recovery based upon this defense.

IV. *Mitigation of Damages*

The defendant argues that if the court awards damages to the plaintiff, "the award should be reduced on account of the Plaintiff's failure to engage in a reasonable effort to mitigate its damages."

The failure to mitigate damages is not a defense to an action for breach of contract, but rather a fact to be considered in determining the amount of damages to be awarded after liability has been determined. *Danpar Associates v. Sommerville Mills Sales Room, Inc.,* 182 Conn. 444, 438 A.2d 708 (1980).
When the lessee breaches a lease for commercial property, the lessor has two options: (1) to terminate the tenancy; or (2) to refuse to accept the surrender. Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. When the landlord elects to terminate the tenancy, however, the action is one for breach of contract and, when the tenancy is terminated, the landlord is obliged to mitigate his damages.
(Citations omitted.) *Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.,* 18 Conn.App. 384, 388, 558 A.2d 265 (1989). "The duty to mitigate requires a landlord to make reasonable efforts to minimize damages which includes taking steps to relet the premises. What constitutes reasonable efforts is a question of fact for the trier." (Emphasis added.) (Internal quotation marks omitted; citations omitted.) Id., 390.

In the present case, the court finds that the plaintiff made reasonable efforts to mitigate its damages as set forth in the facts above. Thus, any damages awarded to the plaintiff should not be reduced for the plaintiff's failure to mitigate damages.

*CONCLUSION*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 551186, *5 (Conn.Super.))

Page 7

For the foregoing reasons, judgment may enter in favor of the plaintiff in the amount of $13,168.00. The court concludes that the defendant abandoned its special defenses of estoppel and the statute of limitations, since no evidence was put forward during trial regarding them, at oral argument defendant's counsel did not raise them nor were they discussed in the defendant's Post- Trial Brief.

1994 WL 551186 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works