# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL W. KENNEDY

     Plaintiff,

   V.                              CIVIL ACTION NO.
                                      3:02CV1754 (CFD)

BMW FINANCIAL SERVICES, N.A.

     Defendant.                      APRIL 7, 2003

## RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORES AND REQUEST FOR PRODUCTION.

     GENERAL OBJECTIONS: Plaintiff objects to all of defendant's interrogatories to the extent that the information sought is protected by the attorney-client or work-product privileges; is available to defendant or already in its possession.

1. See response dated March 25, 2003.

2. The title fee paid to the State of CT was $25. The lease states that sum was $50. See Department of Motor Vehicle Registration and lease.

3. The registration fee paid to the State of CT was $70. The lease state that the sum was $127.50. See Department of Motor Vehicle Registration and lease.

4. No entity was paid any sum for a license fee. The lease states that the sum was $18. See Department of Motor Vehicle Registration and lease.

5. The lease states that $202.50 was paid for title, registration and license fees. The true sum paid to the State of CT for those items were $95. The correct sum due at lease signing was $6852.65. This response is premised on the assumption there are no other inaccuracies within the lease. See lease and Department of Motor Vehicle Registration.

6. The total of payments should have been reduced by $107.50, see response to answer no. 5, above. This response is premised on the

assumption there are no other inaccuracies within the lease. See Lease and registration.

7. The defendant charged $160.53 tax. There was no itemization on what items the tax was charged. See Letter August 21, 2002.

8. Based on information and belief, the original lessee did not sign an odometer statement at time of termination.

9. 49 CFR § 580 requires each lessor to obtain from the lessee an odometer statement supplied by the lessor. Plaintiff did not sign such a document nor did defendant produce such a document in plaintiff's first request for production.

10. Defendant's seeks additional money from plaintiff for excess mileage. Because defendant failed to provide an odometer statement at inception and termination of the lease it cannot accurately certify the true mileage of the auto at lease transfer or termination. Plaintiff has no odometer statements and defendant has not produced the required statements to substantiate they were prepared.

11. See response to interrogatory no. 2, 3, 4, 5, 6, 9, 10, above. In addition, plaintiff was charged $139 for Vin etch and it was not itemized. See purchase order agreement.

12. See response to interrogatory no. 11, above,

13. Statutory damages CLA $1000, forgiveness of wrongful excess mileage charges, correction of any adverse credit reporting by defendant, costs and attorney fees.

14. No claim has been filed against any third party.

15. The lease was transferred by BMW to me without upfront money.

16. None.

RESPONSE TO PRODUCTION

1.  None.

2.  Attached.

3. Attached.

4. Attached.

5. Attached.

6. Attached.

7. Attached.

8. NA

9. NA.

10. None.

11. Attached.

12. Attached.

13. None.

14. None.

15. Attached.

16. None

## INTERROGATORIES

1)    Identify all persons who answered or provided information for responding to these interrogatories, or who provided documents responsive to the document requests.

RESPONSE:

2)    (a) State the basis for each and every allegation in Paragraph 8 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify the amount which you contend would have been correct; (d) explain how and why you have so determined; (e) identify all documents and communications concerning the same; and (f) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

3)    (a) State the basis for each and every allegation in Paragraph 9 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify the amount which you contend would have been correct; (d) explain how and why you have so determined; (e) identify all documents and communications concerning the same; and (f) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

4)    (a) State the basis for each and every allegation in Paragraph 10 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify the amount which you contend would have been correct; (d) explain how and

why you have so determined: (e) identify all documents and communications concerning the same; and (f) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

5)    (a) State the basis for each and every allegation in Paragraph 11 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify the amount which you contend would have been correct; (d) explain how and why you have so determined; (e) identify all documents and communications concerning the same; and (f) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

6)    (a) State the basis for each and every allegation in Paragraph 12 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify the amount which you contend would have been correct; (d) explain how and why you have so determined; (e) identify all documents and communications concerning the same; and (f) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

7)    (a) State the basis for each and every allegation in Paragraph 13 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify the amount which you contend would have been correct; (d) explain how and why you have so determined; (e) identify all documents and communications concerning the same; and (f) identify all evidence you expect to use at trial in support of the same.

-8-

RESPONSE:

8)    (a) State the basis for each and every allegation in Paragraph 16 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify all documents and communications concerning the same; and (d) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

9)    (a) State the basis for each and every allegation in Paragraph 17 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify all documents and communications concerning the same; and (d) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

10)    (a) State the basis for each and every allegation in Paragraph 18 of the complaint; (b) identify the date and manner in which you first became aware of the same; (c) identify all documents and communications concerning the same; and (d) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

11)    (a) State the basis for each and every allegation in Paragraph 21 of the complaint; (b) identify the date and manner in which you first became aware of each act of wrongdoing alleged therein; (c) identify the amount which you contend would have been the accurate sum for excess mileage; (d) explain how and why you have so determined; (e) explain how and why Defendant did know or should have known about the same, or was otherwise responsible therefor; (f) identify all documents and communications concerning the same; and (g) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

12)    If you contend that Defendant is liable to you for any act or omission other than as already stated in response to the above interrogatories: (a) state the basis for each and every such alleged liability; (b) identify the date and manner in which you first became aware of each; (c) identify all documents and communications concerning the same; and (d) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

13)    (a) State the basis for each and every allegation in Paragraphs 14, 19, and 22 of the complaint; (b) identify the date and manner in which you first became aware of such damages; (c) state the dollar amounts of all such damages for which you contend Defendant is liable; (d) explain how and why you have so determined; (e) explain all efforts you have made to mitigate those damages; (f) identify all documents and communications concerning the same; and (g) identify all evidence you expect to use at trial in support of the same.

RESPONSE:

14)    (a) State whether you ever considered making, threatened to make, or actually made any demand or claim against any person other than the Defendant for any act, omission, or event concerning this litigation, any of the claims or defenses therein, or the motor vehicle referred to in the complaint; and (b) identify all documents and communications concerning the same.

RESPONSE:

15)    (a) Explain why you assumed the motor vehicle lease referred to in your complaint; (b) describe all communications you had with any person except an attorney for the purpose of obtaining legal advice concerning any defects or inaccuracies in the lease, its disclosures, or any related documents prior to or at the time of that assumption; and (c) identify all representations made to you by any person concerning the same.

RESPONSE:

16)    Identify all communications relevant to any act, omission, or event concerning this litigation, any of the claims or defenses therein, or the lease or motor vehicle referred to in the complaint, between yourself and (a) Defendant; (c) Michael C. Iannuzzi; (d) Michael P. Iannuzzi; (e) any other person except an attorney for the purpose of obtaining legal advice.

RESPONSE:

## PRODUCTION REQUESTS

1)    Produce all documents identified in or concerning your response to Interrogatory 1 or to which you referred in preparing that response.

RESPONSE:

2)    Produce all documents identified in or concerning your response to Interrogatory 2 or to which you referred in preparing that response.

RESPONSE:

3)    Produce all documents identified in or concerning your response to Interrogatory 3 or to which you referred in preparing that response.

RESPONSE:

4)    Produce all documents identified in or concerning your response to Interrogatory 4 or to which you referred in preparing that response.

RESPONSE:

5)    Produce all documents identified in or concerning your response to Interrogatory 5 or to which you referred in preparing that response.

RESPONSE:

6)    Produce all documents identified in or concerning your response to Interrogatory 6 or to which you referred in preparing that response.

RESPONSE:

7)     Produce all documents identified in or concerning your response to Interrogatory 7 or to which you referred in preparing that response.

RESPONSE:


8)     Produce all documents identified in or concerning your response to Interrogatory 8 or to which you referred in preparing that response.

RESPONSE:


9)     Produce all documents identified in or concerning your response to Interrogatory 9 or to which you referred in preparing that response.

RESPONSE:


10)    Produce all documents identified in or concerning your response to Interrogatory 10 or to which you referred in preparing that response.

RESPONSE:


11)    Produce all documents identified in or concerning your response to Interrogatory 11 or to which you referred in preparing that response.

RESPONSE:


12)    Produce all documents identified in or concerning your response to Interrogatory 12 or to which you referred in preparing that response.

RESPONSE:


13)    Produce all documents identified in or concerning your response to Interrogatory 13 or to which you referred in preparing that response.

RESPONSE:


14)    Produce all documents identified in or concerning your response to Interrogatory 14 or to which you referred in preparing that response.

RESPONSE:


15)    Produce all documents identified in or concerning your response to Interrogatory 15 or to which you referred in preparing that response.

RESPONSE:


16)    Produce all documents identified in or concerning your response to Interrogatory 16 or to which you referred in preparing that response.

RESPONSE:


THE DEFENDANT
BMW FINANCIAL SERVICES NA, LLC


By:  _____
        Sheila A. Denton (ct 11436)
        Adam J. Cohen (ct 19877)
        Pullman & Comley, LLC
        850 Main Street, P.O. Box 7006
        Bridgeport, CT  06601-7006
        Telephone (203) 330-2000
        Facsimile (203) 576-8888
        Its Attorneys

-14-



## TRANSFER OF INTEREST AND ASSUMPTION OF OBLIGATION
## UNDER A MOTOR VEHICLE LEASE AGREEMENT

FOR VALUE RECEIVED, and subject to the consent of the Lessor, BMW Financial Services NA, Inc. (BMW FS), I (we) hereby transfer to Michael W. Kennedy of 40 Oak Ridge Road, Branford, CT 06405-0000, all my (our) right, benefit and interest in and to the vehicle described as 1999 BMW 323ic, Serial Number WBABK8339XEY91875 subject to a security interest created by a Motor Vehicle Lease Agreement (Lease) dated April 30, 1999 between BMW FS and me (us), and all of my (our) obligations under said Lease.

I (we) hereby agree that this transfer shall in no way relieve me (us) from my (our) obligations under said Lease (a copy of the original Lease is attached and herewith acknowledged), and I (we) hereby agree that the time for making payments for any or all of the installments due or to become due under said Lease may be extended or the Lease may be changed in any other manner at the option of BMW FS and without my (our) consent and that any such extensions or changes shall not relieve me (us) from liability under such Lease.

I (we) hereby appoint BMW FS as my (our) attorney-in-fact to execute and file on my (our) behalf all official forms necessary to transfer my (our) right, benefit and interest in the above described vehicle.

The parties hereto agree that this transfer and modification of the subject Lease is entered into in accordance with the Lease terms and that all the Lease terms and provisions remain unchanged and in full force and effect. Transferor shall remain liable for the indebtedness and the provisions thereof may be enforced jointly and/or severally against both or either Transferor or Transferee.

Transferor _____ Address _____
Michael C. Iannuzzi

Transferor _____ Address _____
Michael P. Iannuzzi

Subscribed and sworn to before me this 28th day of January , to 2000

My commission expires July 31, 2001   Barbara M. Kennedy
                                        Notary Public

FOR AND IN CONSIDERATION OF the transfer to me (us) of the above described vehicle and corresponding obligations under the above-mentioned Lease and security interest I (we) hereby agree to make all payments now due or to become due under said Lease and further agree to comply with and be bound by each and all of the terms and conditions of said Lease with 27 remaining payments of $484.65 due on the 1st of the month and payable in accordance with the terms of the original Motor Vehicle Lease Agreement.

I (we) hereby appoint BMW FS as my (our) attorney-in-fact to execute and file on my (our) behalf all official forms necessary to transfer my (our) right, benefit and interest in the above described vehicle. I (we) hereby acknowledge receipt of a copy of the above-mention Lease.

Transferee _____ Address 40 Oak Ridge Rd Branford, ct 06
Michael W. Kennedy

Delphine Merline _____ 3 Block Island Rd. 611 Branford, Ct.
Witness                                    Address

Subscribed and sworn to before me this 28th day of January , # 2000

My commission expires July 31, 2001   Barbara M. Kennedy
                                        Notary Public

We hereby consent to the transfer of the above described vehicle and corresponding Lease obligations subject to the terms of the above-mentioned Lease.

BMW FINANCIAL SERVICES NA, INC.

Dated this 28th day of February , 2000   By _____

**BMW Financial Services NA, Inc.**
Motor Vehicle Lease Agreement (Closed End)

3-208849

| 1. LESSOR NAME AND ADDRESS | 2. LESSEE NAME(S) AND ADDRESS(ES) |
|---|---|
| HERB CHAMBERS 1186, INC. | MICHAEL C IANNUZZI |
| 1186 COMMONWEALTH AVE | MICHAEL P IANNUZZI |
| BOSTON, MA 02134 | 66 PINE ORCHARD ROAD |
| | BRANFORD CT 06405 |

| 3. DATE OF LEASE | 04/30/99 |
|---|---|
| END OF LEASE DATE (LEASE TERM) | 01 MAY 2002 |

4. **AGREEMENT TO LEASE.** This Motor Vehicle Lease Agreement ("Lease") is entered into between the Lessor(s) ("Lessor") and the Lessee ("Lessee") named above. "You" and "your" refer to the Lessee(s). "We", "our" and "us" refer to the Lessor. "Vehicle" refers to the leased vehicle described below. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures disclosed in this Lease are also made on behalf of BMW Financial Services NA Inc.

| 5. VEHICLE DESCRIPTION | | | | |
|---|---|---|---|---|
| LEASED VEHICLE | | □ New  □ Used  □ Demo | Primary Use: □ Personal, Family, or Household □ Commercial or Agricultural |  |
| Model Year 99 | Make BMW | | Model BMW 328IC | |
| Vehicle ID Number | | Vehicle Identification Number WBABK8339XE191835 | | |
| 6. TRADE-IN VEHICLE | | | | |

| 7. AMOUNT DUE AT LEASE SIGNING OR DELIVERY | 8. MONTHLY PAYMENTS | 9. OTHER CHARGES | 10. TOTAL OF PAYMENTS |
|---|---|---|---|
| (Itemized in section 10 below) | Your first Monthly Payment of $ 484.25 is due on 04/30/99 followed by 35 payments of $ 484.25 due on the 1st of each month. The total of your Monthly Payments is $ 17427.00 | (Not part of your Monthly Payment) A Disposition Fee (if you do not purchase the Vehicle at lease end) $ 300.00 B $ N/A C $ N/A Total $ N/A | (The amount you will have paid by the end of the Lease) |
| $ 4560.15 | | | $ 22737.90 |

### 10. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

A. **AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| (1) Capitalized Cost Reduction | $ 5000.00 |
|---|---|
| (2) First Monthly Payment | $ 484.25 |
| (3) Refundable Security Deposit | $ 500.00 |
| (4) Title Fees | $ 50.00 |
| (5) Registration Fees | $ 172.00 |
| (6) License Fees | $ 18.00 |
| (7) Sales Tax on the Capitalized Cost Reduction | $ 300.00 |
| (8) ACQUISITION FEE | $ 180.00 |
| **TOTAL** | $ 4560.15 |

B. **HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID.**

| (1) Net Trade-in Allowance | $ N/A |
|---|---|
| (2) Rebates and Noncash Credits | $ N/A |
| (3) Amount to be Paid in Cash | $ 4560.15 |
| **TOTAL** | $ 4560.15 |

### 11. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

| | | |
|---|---|---|
| A | Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 14286.61 ) and any items you pay over the Lease Term (such as service contracts, insurance, and any outstanding prior charge or lease balance) [If you want an itemization of this amount, please check this box □] | $ 14296.63 |
| B | Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost | $ 5000.00 |
| C | Adjusted Capitalized Cost. The amount used in calculating your Base Monthly Payment | $ 9296.63 |
| D | Residual Value. The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment | $ 18054.90 |
| E | Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term | $ 9231.73 |
| F | Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts | $ 5618.09 |
| G | Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge | $ 14459.82 |
| H | Lease Term. The number of months in your Lease | 36 |
| I | Base Monthly Payment | $ 401.10 |
| J | Monthly Sales/Use Tax | $ 23.15 |
| K | | $ N/A |
| L | | $ N/A |
| M | Total Monthly Payment | $ 484.25 |

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

12. **Excessive Wear and Mileage.** You will be charged for excessive wear based on our standards for normal use. You will be charged for mileage in excess of the total miles over the Lease Term of 36000 miles, at the rate of .22 cents per mile.

13. **Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the Lease Term for the Residual Value plus any official fees and taxes in connection with the purchase. Other Important Terms. See your Lease documents for additional information on early termination, purchase option and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

14. **OFFICIAL FEES AND TAXES.** The total estimated amount you will pay for official and license fees, registration, tax and taxes over the Lease Term, whether included in the Monthly Payments or otherwise assessed. $ 1105.73

### 15. MAINTENANCE AGREEMENT

You are not required to buy a maintenance agreement to enter into this Lease. You may buy a maintenance agreement to cover certain maintenance and repairs to the Vehicle, where the Vehicle is automatically covered under the BMW Maintenance Program. The terms of the coverage will be provided by the company in your maintenance agreement. If you want to buy the coverage, you have reviewed the terms of the maintenance agreement which describe the maintenance and repairs. If a copy of the maintenance agreement is not given to you at the time you enter into the Lease, you should request a copy from your provider.

Maintenance Company Name _____

□ You choose to buy a maintenance agreement for $ N/A and pay for it during your Lease Term as part of the Monthly Payment. The amount you pay will incur Rent Charge.

□ You choose to buy a maintenance agreement and pay for it as part of the Amount Due at Lease Signing or Delivery (Section 10 above).

Lessee Initials _____   Co-Lessee Initials _____

### 16. MECHANICAL BREAKDOWN PROTECTION (MBP)

You are not required to buy mechanical breakdown protection (MBP) to enter into this Lease. You may buy MBP to cover certain major mechanical breakdowns of the Vehicle and some related expenses. The term of the coverage will be governed by the agreement in your MBP agreement. If you want to buy this coverage, you have reviewed the terms of the MBP agreement. If a copy of the MBP agreement is not given to you at the time you enter into the Lease, you should request a copy from your provider.

MBP Company Name _____

□ You choose to buy MBP for $ N/A and pay for it during your Lease Term as part of the Monthly Payment. The amount you pay will incur Rent Charge.

□ You choose to buy MBP and pay for it as part of the Amount Due at Lease Signing or Delivery (Section 10 above).

Lessee Initials _____   Co-Lessee Initials _____

### 17. WARRANTIES

The Vehicle is subject to the standard manufacturer's warranty. The Vehicle is also covered by the following, if checked:

□ Remainder of the standard manufacturer's warranty if the Vehicle is not a new vehicle.

□ _____

LESSOR MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES. LESSOR MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY, UNLESS REQUIRED BY LAW. YOU ACKNOWLEDGE THAT YOU...

### 18. MILEAGE ALLOWANCE

36000 You agree this is the total allowed mileage for your Lease Term.

□ If the use is shared, you purchased extra mileage over the standard allowance of 15,000 miles per year.

□ Extra Mileage Refund at the Surrender End of the Lease. If you purchased extra mileage, you may receive a refund of 0.0¢ cents per unused mile over this Lease. You will not receive a refund if the Vehicle is destroyed or stolen. If you default or terminate this Lease early, if you exercise the purchase option or the refund is less than $1.

□ Excess Mileage. At the scheduled end of this Lease, you will pay certain .22 cents ...

## ENDING YOUR LEASE

**19. PURCHASE OPTION.** You have an option to purchase the Vehicle AS IS, WHERE IS, if you give us 30 days advance written notice, and (b) you are not in default under this Lease. You agree to re-register the Vehicle in your name at the time you purchase the Vehicle. If you fail to do so, we reserve the right to cancel the registration.

END OF LEASE TERM. If you purchase the vehicle at the end of the Lease Term, you will pay: a) the Residual Value (Section 1); b) any official fees or taxes or other charges to satisfy your obligation under this Lease arising in connection with the purchase.

PRIOR TO END OF LEASE TERM. If you purchase the Vehicle prior to the end of the Lease Term, you will pay us (i) the remaining Payoff, plus (ii) all early termination fees or charges as set forth in this Lease.

**20. RETURN OF VEHICLE AND END OF LEASE TERM LIABILITY.** If you do not purchase the Vehicle, you must return it to the place we specify, with all parts and accessories and in good working order. The Vehicle must have 4 serviceable tires with tread in each of all 4 positions, in the same grade and quality as those delivered with the Vehicle. Upon return, you must sign a completed Rent or Condition Report and Federal Odometer Statement, which we may use in determining whether there is excess wear and use, or excess mileage. Your End of Lease Term Liability is (a) the Residual Value (Section 1) plus (b) any unpaid Monthly Payments due and any other amounts due under this Lease, plus (c) any excess mileage (Section 13), (d) late charges (Section 33), plus (e) any additional amounts owed to extend or terminate in connection with this Lease. You must pay all your End of Lease Term Liability when we bill you. If you fail to return the Vehicle, you must continue to pay an additional Monthly Payment for each month until the time you return the Vehicle. Payment of this amount will not show you took the Vehicle or automatically extend this Lease. This Monthly Payment may differ from your scheduled Monthly Payment under the original terms of this Lease.

**21. EARLY TERMINATION OF THE LEASE.** You may terminate this Lease at any time if you are not in default under this Lease. To terminate, you must return the Vehicle and all parts and accessories in good working order. The Vehicle must have 4 serviceable tires with tread in each of all 4 positions, in the same grade and quality as those delivered with the Vehicle. Your Early Termination Liability is (a) the Early Termination Cost (Section 22), plus (b) if we terminate this Lease because you are in default all collection costs and to the extent permitted by law, court costs and reasonable fees or attorneys who are not our salaried employees. You must pay all your Early Termination Liability when we bill you.

**22. EARLY TERMINATION COST.** For the purpose of figuring your Early Termination Liability (Section 21), the Early Termination Cost is: (a) any unpaid Monthly Payments due, plus (b) any official fees and taxes owed in connection with the Lease; plus (c) any other charges to satisfy your obligation under the Lease, including excess mileage charges, at termination, plus (d) an early termination fee of $250.00, plus (e) the Adjusted Payoff, minus (f) the Estimated Value of the Vehicle (Section 23), (Early Termination Cost). Your early termination will result in one additional charge which the amount of your Vehicle which will be billed to you. Your Adjusted Payoff is the amount you owe at any time under the terms of your Lease. We compute your Adjusted Payoff by taking the Gross Capitalized Cost, and deducting: (i) each Rent Charge you have previously paid; (ii) the total of all your Monthly Payments previously made; (iii) all monthly Rent Charges being due under this Lease (so it contains and minus based upon your declining lease balance), assuming your Base Monthly Payments have been received on time. Scheduled due dates. We may use taxes or all of your security deposit to pay what you owe.

**23. ESTIMATED VALUE OF THE VEHICLE.** For the purpose of figuring your Early Termination Cost (Section 22), the Estimated Value of the Vehicle is the current Black Book Wholesale Average Condition of your region. In the event Black Book does not quote value in your region, the average wholesale loan value of the Vehicle as published in the current N.A.D.A. Official Used Car Guide Wholesale Average Condition for your region will be used to determine the Estimated Value of the Vehicle. If you disagree with the Estimated Value of the Vehicle, you may obtain, at your own expense within 10 days from the date the Vehicle is returned to us, from an independent third party appraisal of the value of the Vehicle which could be reached at sale, which will then be final and binding upon you and us.

**24. INSURANCE-EARLY TERMINATION.** If the Vehicle has been taken or destroyed, your Early Termination Liability is the amount of any proceeds of your total risk insurance claim otherwise maintained to you on the Vehicle and any applicable amounts under the terms of the policy, unpaid Monthly Payments due, any official fees and taxes assessed or owed in connection with the Lease and any other charges to satisfy your obligations under this Lease.

**25. REFUNDABLE SECURITY DEPOSIT.** We may use some or all of your Security Deposit to pay what you owe under this Lease. The Security Deposit cannot be used to pay any Monthly Payment. You will receive any non-interest deposit at your sole discretion. We may commingle your Security Deposit with our general funds; any interest or monetary benefit shall not be paid to you for appreciation of the Deposit. After the Lease ends, the funds paid on your obligations to us under this Lease, we will refund to you any part of your Security Deposit that is not used to pay what you owe us.

## INSURANCE, MAINTENANCE & OPERATION

**26. VEHICLE INSURANCE.** You agree to provide the following types and amounts of primary insurance during the Lease Term: a) Public Liability for bodily injury or death in any one accident for not less than $100,000 and for any one loss occurring for not less than $300,000; b) Property Damage Liability for not less than $50,000; c) Comprehensive coverage, including loss and risk for the Vehicle; d) Collision coverage in case of collision or a replacement vehicle. In order to enjoy the benefits of a deductible of $1,000 for deductibles must have us as an additional insured and loss payee. The policy must provide us with at least 30 days advance notice of cancellation. We have the right to require you to carry our insurance check of settlement we receive. If you fail to give us proof of this insurance, we may purchase it, adding the insurance we purchase which we bill you. The cost of this insurance may be more than the cost of insurance you could obtain. If you do not pay us the cost of this coverage we purchase, we will add the cost of insurance to the amount you owe and this Rent Charge. The insurance we purchase may not cover you, our obligations to us or the Vehicle. You have the right to purchase your own insurance. We will cancel the insurance we purchased, any returns of premium, are Rent Charge will be owed to reduce what you owe us under this Lease.

**27. TOTAL LOSS PROTECTION.** If the Vehicle is considered stolen or destroyed and insurance or a lienholder settles your insurance coverage, and you have maintained the Vehicle insurance specified (Section 26) including Excess coverage, we will waive the "gap amount" which is the difference of the amount of insurance coverage maintained by you on the Vehicle and the deductible amount under your insurance coverage; (c) any unpaid Monthly Payments due; and (d) any taxes or fees assessed or owed in connection with this Lease; and any other charges to satisfy your obligation under this Lease. The "gap amount" is the difference between the actual Payoff and the sums in Sections (a), (b), (c) and (d) herein at the time of the total loss.

**28. VEHICLE LOSS OR DAMAGE.** You must immediately notify us if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or taken by a police or other governmental agency. If the Vehicle is not considered a total loss, we may reconstruct the Lease. Your insurance and any amounts of Monthly Payments due. You must pay us and you are liable to us for any amounts such insurance does not pay including deductibles. If the Vehicle is taken or destroyed in any manner, this Lease shows your insurance proceeds to us under this Lease. If you are obligated to provide a replacement vehicle. If the Vehicle is damaged and we do not wish the this Lease and have the Vehicle is reasonably repairable, you must have it repaired, made to our satisfaction at your expense.

**29. VEHICLE USE.** You permit only non-commercial use, not government license, or use the Vehicle for any illegal purpose. You are at least 21 years of age. The Vehicle written a valid driver license. You agree to never use while you operate when you sign this Lease for those least 21 days without our permission if you take the Vehicle out of the state. Sales, except to ever than 30 days in Canada; (e) use the Vehicle to transport goods or persons, for hire or for hire to remain in States, or (f) allow a third party to operate the Vehicle for an extended period of time without written permission from us.

**30. VEHICLE OPERATION.** You are responsible for maintaining the Vehicle in good order and condition. You must pay all servicing expenses including upkeep, all tires, and repairs at maintenance and wear. You must have the Vehicle serviced in accordance with the manufacturer's recommendations. The Vehicle may (a) operation's that decrease the Vehicle's value or (b) change to and void the due. If you do this, you agree to the extent which determine the required or maintain and decreasing the Vehicle's value or worthiness. If the Vehicle is returned to us, the equipment we install is the property. We may make the Vehicle at any reasonable time. You will also have complete maintenance records and return them and the vehicle.

**31. EXCESS WEAR AND USE.** The following are applicable to determining excess wear and use: You must pay us the Value of damages to the Vehicle that are not the result of normal wear and use. This includes, but is not limited to: (a) repair of all mechanical defects; and (b) repair of damage other than scratches or replacement of parts and accessories; (c) replacement of missing or broken body parts, paint or interior conditions; (d) any damage resulting in the Vehicle's unsafe or unusable by law; (e) replacement of any damaged parts, accessories or equipment; (f) repair of any damage resulting from accidents or abuse; (g) repair of all damage that would be covered by comprehensive insurance whether or not that insurance is actually in force.

## ADDITIONAL INFORMATION

**32. TAXES, REGISTRATION AND TITLING.** You must pay when due all registration fees, license, plates and titling taxes and fees public than the Vehicle in connection with the Vehicle. If we do or less incurred during the Lease Term is not assessed or billed until after the Lease Term, you must pay us such fee when we bill you. If you refuse to register/license during the Lease Term, you agree to be, or it is 5% damaging fee or public's suspension. You and agrees documents in addition to the actual description. If at any time during the Lease Term, you may be responsible for collecting any official documents in connection with the Vehicle, you agree to sign or send us documents any of which may cause you such Lease ends.

**33. LATE CHARGE; RETURNED CHECK CHARGE.** If we do not receive your entire Monthly Payment within 10 days of its due date, you must pay a late charge of 5% of the amount of the payment that is late or $25, whichever is greater, or, if the amount of the applicable state law. If any check or payment item is returned to us unpaid for any reason, and any electronic debit submission is not paid, you must pay us a $25 service charge per item when we bill you.

**34. DEFAULT.** You will be in default under this Lease if: (a) you fail to make a Monthly Payment when due; or (b) you fail to keep any of your promises under this Lease; or (c) you die or become involved in any bankruptcy proceeding or other insolvency proceeding or a guarantee's Lease agreement is void; or (d) you are in default of this, any of the following: (d) take any reasonable measures to cancel or protect, keep or cancel the Vehicle. Save us from loss; and you must pay us due costs and expenses; or (e) reinstate the Lease and also your right to establish and the Vehicle, and if you do not keep the Vehicle in an insurable, take possession of the Vehicle by any means permitted by law; (iii) determine your Early Termination Liability; (iv) pay any other charges under the Lease. If you default, we may charge you, after the we sell or dispose of the Vehicle, any difference between what you still owe and what we obtained from any sale, minus costs and legal costs including attorney's fees; we may sell to indirect, more resell, resell and/or distribute the Vehicle.

**35. REIMBURSEMENT.** You must reimburse us for any amount of loss, taxes or other expense including attorney's fees arising from the operation, ownership, use or possession of the Vehicle, including costs, notary, insurance and liability insurance. If you fail to take any of the above we may pay such item or obtain or secure on your behalf. You agree to pay us the amount we pay plus a handling fee of $25 when we bill you.

**36. GENERAL.** (a) You have all rights or obligations, or your rights under this Lease to another Vehicle. We may assign our interests under this Lease without your consent and (b) this may or after endorsement of the rights under this Lease without affecting your rights or remedies, (c) Any part of this Lease which you believe does not affect the validity of the remaining of this Lease, (d) this Lease and any instruments that this obligations contains. (e) ALSO and if this Lease arises from connection of your Lease. (f) ongoing an additional contract your remaining the rights under this Lease shall not be taken as a waiver of such rights or obligations. (g) You must notify us within 30 days of any change you notice relating to the Lease (h) This Lease contains all agreements when you and us and supersedes any prior understanding to protected by law, this Lease will not be subject to the laws of the state where you sign it. (i) This Lease describes all agreements between you and us and all subject to any prior Lease. If the Vehicle has any otherwise to law.

12. EARLY TERMINATION COST. For the purpose of figuring your Early Termination Liability (Section 21), the Early Termination Cost is ...

13. ESTIMATED VALUE OF THE VEHICLE. For the purpose of figuring your Early Termination Cost (Section 12), the Estimated Value of the Vehicle is the value at the current ...

14. INSURANCE EARLY TERMINATION. If the vehicle has been stolen or destroyed, your Early Termination Liability is the amount of any proceeds of insurance ...

15. REFUNDABLE SECURITY DEPOSIT. We may still have to pay us your Security Deposit to pay ...

## INSURANCE, MAINTENANCE & OPERATION

16. VEHICLE INSURANCE. You agree to maintain the following types and amounts of primary insurance during the Lease Term: 1. Public Liability for bodily injury to each ...

17. TOTAL LOSS PROTECTION. If the Vehicle is damaged, stolen or destroyed and considered a total loss under your insurance coverage and you either surrender the Vehicle ...

18. VEHICLE LOSS OR DAMAGE. For loss immediately notify us when Vehicle is damaged or destroyed ...

19. VEHICLE USE. You provide that you will not carry passengers for hire nor rent or sublease the Vehicle ...

20. VEHICLE OPERATION. You are responsible for maintaining the Vehicle in good order and condition ...

21. EXCESS WEAR AND USE. The following are standards for determining excess wear and use. The standards are the legal minimum ...

## ADDITIONAL INFORMATION

32. TAXES, REGISTRATION AND TITLING. You must pay when due all registration, title, license, inspection fees and other applicable fees and taxes ...

33. LATE CHARGE; RETURNED CHECK CHARGE. If we do not receive your total Monthly Payment within 10 days of its due date, you must pay a Late Charge of 5% of the amount of the payment that is late or $25, whichever is greater ...

34. DEFAULT. You will be in default under this Lease if: (1) you fail to make a Monthly Payment when due ...

35. REIMBURSEMENT. You must reimburse us for any amount of loss, liability or other expense we incur ...

36. GENERAL. (a) You have no right to assign any of your rights under this Lease or in the Vehicle ...

---

† LESSOR'S ASSIGNMENT

# BMW Financial Services



August 21, 2002

Michael Kennedy
101 West Main Street
BRANFORD, CT 06405-0000

Re:   Account Number:     3000208849
      Year and Model:     1999 328i convertible

Dear Michael Kennedy:

Thank you for choosing BMW Financial Services to meet your vehicle leasing needs. We hope that you will consider using BMW Financial Services in the future should the opportunity arise. The information listed below represents your end of lease charges, calculated as follows:

| ITEM: | | AMOUNT: |
|---|---|---|
| Account Balance Brought Forward: | | $1,096.72 |
| Excessively Worn or Mismatched Tires | $0.00 | |
| Glass Repair or Replacement | $0.00 | |
| Interior Damages or Excess Wear | $0.00 | |
| Exterior Damage or Excess Wear | $0.00 | |
| Mechanical Problems or Excess Wear | $0.00 | |
| Total Excess Wear and Tear Charge: | | $0.00 |
| Excess Mileage or Kilometers Charge: | | $1,868.20 |
| Termination/Disposition Fee: | | $350.00 |
| Use Tax/Applicable Sales Tax: | | $160.53 |
| Personal Property Taxes: | | $0.00 |
| Total of Charges: | | $3,475.45 |
| Refundable Security Deposit: | | $500.00 |
| Net Balance Due Upon Receipt | | $2,975.45 |

Please make your check payable to BMW Financial Services. To ensure proper credit please include your account number on the check.

BMW Financial Services
P.O. Box 78103
Phoenix, AZ 85062-8103

If you have any questions or concerns regarding your end of lease statement or to pay by credit card, please contact an End of Term Specialist at 1-800-398-3939, Monday through Friday, 9:00 a.m. to 6:00 p.m. Eastern Time, or by mail at either address listed.

Sincerely,

BMW Financial Services NA, LLC

NOTE: Personal Property taxes or Excise taxes may be assessed to your account in arrears, if billed by your state or province, county, or locality. If applicable, return plates to your department of Motor Vehicles and mail receipt to BMW Financial Services at the above address for adjustment of tax amount.

5515 Parkcenter Circle
Dublin, OH 43017-3535

Mailing Address
P.O. Box 3608
Dublin, OH 43016-0308

General
(614) 718-6900

Facsimile
(800) 820-4269

Customer Care
Department
1-800-578-5000



Herb Chambers .... ...da-SAAB-Infiniti
1186 Commonwealth Avenue
Boston, MA 02134
Honda/SAAB TEL: 617-731-0100
Infiniti TEL: 617-739-6600
FAX:        617-232-8187

Herb Chambers.   1W
1172 Commonwealth Avenue
Boston, MA 02134
TEL: 617-731-1700
FAX: 617-731-1555

MOTOR VEHICLE CASH
PURCHASE AGREEMENT
For Consumer Use Only

| DATE | STOCK NO. | SALES REPRESENTATIVE | SOC. SEC. # / D.O.B. |
|------|-----------|---------------------|----------------------|

| PURCHASER'S NAME(s) | STREET ADDRESS | SOURCE |
|---------------------|----------------|--------|

| CITY | STATE | ZIP CODE | TELEPHONE NUMBERS HOME / BUSINESS |
|------|-------|----------|-----------------------------------|

ENTER MY ORDER FOR (QUANTITY)    ☐ NEW  ☐ USED    FORMER USE (if applicable)    ☐ DEMONSTRATOR  ☐ FORMER LEASED CAR    ☐ POLICE CAR  ☐ TAXICAB    ☐ _____  ☐ FORMER DAILY RENTAL

| Year | Make | Model | Body Type | Model No | Transmission Standard ☐ Automatic ☐ | (Speeds) | Cyl | Pass | Doors |
|------|------|-------|-----------|----------|-------------------------------------|----------|-----|------|-------|

| Vehicle Identification No. | Exterior Color 1st 2nd 3rd | Interior Color 1st 2nd 3rd | Top | Odometer ☐ Miles ☐ Kilometers | Expected Delivery Date |
|----------------------------|--------|--------|-----|--------|--------|

| **TRADE IN** Year | Make | WARRANTY INFORMATION | Price of Unit | $ |
|-------------------|------|----------------------|---------------|---|
| Model | Type | Color | ☐ This vehicle carries an express warranty. You may obtain a copy of such warranty from the dealer upon request | Additional Equipment/Items |
| Z.I.N. | | | | |
| Odometer | ( mi. ☐ / km. ☐ ) | | | |
| Transmission ☐ Standard (speeds ___ )  ☐ Auto | | ☐ This vehicle does not carry an express warranty | |
| No. of Cyl | Pass | Doors | (Initial Applicable Statement) | |
| Title No. | | State | | |
| Previous Owner | | REGISTRATION FEE/TITLE FEE SALES TAX (2 Checks Required) | |
| Address | | Application for Title ☐ | |
| City/State/Zip | | Application for Reg. ☐ New ☐ Transfer | |
| **LIENHOLDER** | | Registration No. | |
| Address | | Registration Fee | $ |
| City/State/Zip | | | |
| Acct. No. | Pay Off Good Until | Title Fee | $ |
| Balance Due $ | | Mass Sales Tax | $ | Vin Etch Service | $ 139.00 |

Additional Information - Vehicle Purchased

(Pay to Commonwealth of Massachusetts)
Sales Tax amount is included in right hand column only when dealership check is issued in payment of Mass Sales Tax

I hereby consent that HERB CHAMBERS HONDA can install a plate that advertises its name on the motor vehicle I have purchased.

_____
Purchaser's Signature

**LIENHOLDER**
Address
City/State/Zip

**INSURANCE CO.**
Agent/Branch
Address/City

CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLES ONLY
The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sales

| Customer Services | $ | 97 | 50 |
|-------------------|---|----|----|

LOST TITLE FEE $100.00

In the event I fail to take delivery of the vehicle purchased by me within forty-eight (48) hours after I have been notified by you that it is ready for delivery and pay the total contract price in the manner indicated, my deposit in the amount of $ _____ may, at your option, be retained by you to compensate you in whole or part for any losses sustained by you. The right to retain my deposit shall be in addition to and not instead of any other right or remedy provided by applicable law including, without limiting the generality of the foregoing, the sale of the car or truck I agree to purchase. If the amount of my deposit exceeds actual damages sustained by you, you will promptly refund the difference to me.

| _____ | Purchaser's initials |

THIS CONTRACT IS NOT BINDING UPON EITHER SELLER OR PURCHASER UNTIL SIGNED BY DEALER OR ITS AUTHORIZED REPRESENTATIVE. PURCHASER MAY CANCEL THIS CONTRACT AND RECEIVE A FULL REFUND AT ANY TIME UNTIL HE/SHE RECEIVES A COPY OF THIS CONTRACT SIGNED BY THE AUTHORIZED DEALER REPRESENTATIVE. PURCHASER MUST GIVE WRITTEN NOTICE OF CANCELLATION TO THE DEALER.

| 1 Total Price | $ |
|---------------|---|
| 2 Credit/Order Allowance | $ |
| 3 Trade-In Allowance | $ |
| 4 Trade Difference (line 1 - lines 2 & 3) | $ |
| 5 Mass Sales Tax ( ___ % of line 4) | $ |
| 6 Title Preparation | $ |
| 7 Documentary Preparation | $ |
| 8 Other | $ |
| 9 Total Contract Price (Total of lines 4, 5, 6, 7 and 8) | $ |
| 10 Balance Due on Trade-In | $ |
| 11 Total of lines 9 and 10 | $ |
| 12 DEPOSIT | $ |
| 13 Amount to be Financed | $ |
| 14 Cash Due on Delivery | $ |
| 15 Total Payment (Total of lines 12, 13 and 14 MUST equal 11) | $ |

The front and back of this order comprise the entire agreement between the dealer and purchaser and no other agreement or understanding has been made or entered into. Purchaser represents and warrants that no credit other than that added above has been extended to him/her by dealer. Purchaser represents and warrants that he/she has read and understands the materials printed on his motor vehicle purchase contract. Purchaser acknowledges receipt of a signed copy of this motor vehicle purchase contract.

X _____
Purchaser's Signature

X _____
Co-Purchaser's Signature

X _____
Business Manager's Signature

X _____
Approved-Authorized Dealer Representative

CASHIERS CHECK OR CERTIFIED CHECK ONLY FOR ALL COD'S

APPLICATION FOR REGISTRATION
OF A MOTOR VEHICLE AND CERTIFICATE OF TITLE
H-13 Rev. 7-96

STATE OF CONNECTICUT
DEPARTMENT OF MOTOR VEHICLES
60 State Street Wethersfield, CT 06161

INSTRUCTIONS (1) Do not print below the line labeled OFFICE USE ONLY (2) If the last previous owner of this vehicle had a valid certificate of title to the vehicle, the title must accompany this application. (3) See back of form for instructions concerning TAX EXEMPTION.

| | | VALIDATED HERE BY CONNECTICUT DMV | 70.00 |
| | | SLS TAX EX | 0.00 |
| | | TITLE | 25.00 |
| | | 04/30/99 112 177 095 3831 0052 95.00 TYC01 | |

TYC01

| 1. APPLICANT (Owner Registering Vehicle) | OWNER'S NAME (Last, First, Middle Initial) BMW Financial Services | IF CO-OWNERSHIP ☐ AND (Common) ☐ OR (Joint) | CO-OWNER'S NAME (If Any) | |
|---|---|---|---|---|
| | MAILING ADDRESS No. & Street 5515 Park Center Circle | OWNER'S SEX ☐ MALE ☐ FEMALE | OWNER'S BIRTHDATE | OWNER'S SOCIAL SECURITY NO. (Optional) |
| | City/Town Dublin State OH Zip Code 43017 | CO-OWNER'S SEX ☒ MALE ☐ FEMALE | CO-OWNER'S BIRTHDATE | CO-OWNER'S SOCIAL SECURITY NO. (Optional) |
| | RESIDENT ADDRESS (If Different from Mailing Address) | DATE VEHICLE PURCHASED 4-30-99 | CT TOWN WHERE VEHICLE IS TO BE TAXED AS PROPERTY (Where vehicle is garaged/parked for longest period in a year) BRANFORD | |

| 2. VEHICLE | VEHICLE I.D. NUMBER (VIN) WBABK8339XEY91875 | MAKE BMW | YEAR (4-digit) 1999 | BODY STYLE (e.g. 4-Dr. Sedan, etc.) Convertible | NEW OR USED ☒ NEW ☐ USED |
|---|---|---|---|---|---|
| | ODOMETER READING (Mileage) 20 | COLOR (Maximum of Two) Black | MODEL NAME OR NO. 328ICA | NO. OF CYLINDERS 6 | FUEL TYPE (Gasoline, Electric, Diesel, Propane, etc.) Gasoline | COMMERCIAL USE ☐ YES ☒ NO |

| 3. IF OTHER THAN PASSENGER REGISTRATION | LIGHT WEIGHT (Wt. of vehicle(s) empty) | COMPLETE FOR APPLICABLE VEHICLES (Buses, Trucks) ➤ | SEATING CAPACITY | NO. OF STANDEES | NO. OF AXLES |
|---|---|---|---|---|---|
| | GROSS WEIGHT (Light wt. plus wt. of maximum load) | COMPLETE FOR TRAILERS ONLY | REAR LIGHT ☐ YES ☐ NO | EQUIPPED WITH BRAKES ☐ YES ☐ NO | LENGTH OF VEHICLE & TRAILER(ft.) |

| 4. LIEN-HOLDER (If vehicle purchase was financed) | LIEN-HOLDER FINANCING VEHICLE PURCHASE FOR CURRENT OWNER | DATE OF LIEN | SECOND LIEN-HOLDER (If Any) | DATE OF SECOND LIEN |
|---|---|---|---|---|
| | ADDRESS OF LIEN-HOLDER | | ADDRESS OF SECOND LIEN-HOLDER | |

| 5. AUTOMOBILE INSURANCE | INSURANCE COMPANY NAME (Not agent) Allstate | AUTOMOBILE INSURANCE POLICY NO. 095851S3 4/29/99 |
|---|---|---|

| 6. IF TAX EXEMPTION IS CLAIMED | APPLICANT, READ REVERSE SIDE OF THIS FORM AND SPECIFY CODE 1, 2, 3, 4, OR 5 AND ANY ADDITIONAL INFORMATION. | CODE NO. | EXEMPTION INFORMATION |
|---|---|---|---|

| 7. IF LEASED VEHICLE | NAME OF LESSEE (Person to whom vehicle is leased) Michael C Iannuzzi | CONNECTICUT LEASING LICENSE NO. | Keep this certificate, and documents supporting purchase price (copy of Bill of Sale, cancelled check), as proof of required sales tax paid. If you sell or transfer this vehicle, you must complete the Certificate of Sale or Transfer section on the reverse of the yellow copy, and return your marker plate(s) and the yellow registration certificate to DMV. |
|---|---|---|---|
| | ADDRESS OF LESSEE (P.O. Box is Not Acceptable) 86 Pine Orchard Rd Branford CT 06405 | | |
| 8. SELLER(S) | NAME OF SELLER(S) (If 2 owners, include both names) Herb Chambers BMW | IF LICENSED CT DEALER, LICENSE NO. | |
| | SELLER'S ADDRESS 1186 Commonwealth Ave Boston Ma 02RH | PURCHASE PRICE (Bill of Sale required) | |

| 9. SIGNATURE(S) | The undersigned certifies under penalty of false statement that there are no liens on this vehicle except those specified above, that the insurance required by Connecticut law is in effect and will be maintained during this registration period, and that all information is true and accurate to the best of my/our knowledge and belief. If other than Passenger registration, the undersigned certifies that this vehicle is being registered in accordance with the Manufacturers Maximum Gross Vehicle Weight Rating. | | |
|---|---|---|---|
| | OWNER'S SIGNATURE X | OWNER'S CT LICENSE NO. | CO-OWNER'S SIGNATURE X | CO-OWNER'S CT LICENSE NO. |

OFFICE USE ONLY

THIS SECTION FOR SALES BY CONNECTICUT LICENSED DEALERS ONLY

| | DATE | TIME | MAKE OF TRADE-IN | MODEL OF TRADE-IN | YEAR | C.C. 01 | S.C. | TYPE OF REGISTRATION PASS | MARKER PLATE NO. |
|---|---|---|---|---|---|---|---|---|---|
| ☐ ISSUE ☐ TRANSFER | | | | | | | | | |
| ☐ OUT-OF-STATE DEALER ☐ CT DEALER'S SALES TAX NO.: | | | IDENTIFICATION NUMBER OF TRADED-IN VEHICLE | | | EXPIRATION DATE 04/30/01 | PRIOR TITLE STATE | PRIOR TITLE NUMBER | |
| | | | | | | TAX TOWN 014 | EMISSIONS STICKER NO. 90110 | EMISSIONS EXPIR. DATE 4/2000 | |

DMV FEES COLLECTED

| | | | | | EQUITY | ANNUAL FEE 35. | FEE FACTOR 70 |
|---|---|---|---|---|---|---|---|
| TOTAL SALES PRICE | $ | new issue | info. change | | | | |
| TRADE-IN ALLOWANCE | | transfer | sales tax ◯ | | C/O | | |
| NET SALES PRICE | | | safety plate | | DOP | | |
| STATE TAX COLLECTED | | temp. cert. ☐ title ☐ no title | | | | | |
| VEHICLE SOLD IS: (Check as applicable) ☐ DEMO ☐ REBUILT ☐ MANUFACTURER BUYBACK | sub. reg. | lien | | | | | |
| DEALER'S SIGNATURE X | DATE SIGNED | dup. cert. | TOTAL FEE $ 95— | BC | | | |

REGISTRATION CERTIFICATE

## RESPONDENT'S OATH

I, Michael W. Kennedy, hereby certify under penalties of perjury that my Responses to the Defendant's First Set of Interrogatories and Requests for Production of Documents are true and correct.

_____
MICHAEL W. KENNEDY

Subscribed and sworn to before me this 7th day of _____, 2003.

_____
Notary Public
My Commission Expires:

-15-

THE PLAINTIFF


Bernard T. Kennedy
49 Rose Street, #301
Branford, CT 06405
Fed. Bar # ct00680
(203) 481-1322


## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed on this date via

U.S. Mail, postage prepaid, to:


Adam J. Cohen, Esq.
Pullman & Comley, LLC
Box 7006
Bridgeport, CT 06601-7006


Bernard T. Kennedy