UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 JAN 27 P 12: 19
U.S. DISTRICT COURT
HARTFORD, CT.

MICHAEL W. KENNEDY

    Plaintiff,

V.

    CIVIL ACTION NO.
    3:02CV 1754 (CFD)

BWM FINANCIAL SERVICES, N.A.

    JANUARY 26, 2004

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT TO LIABILITY ONLY

Plaintiff Michael W. Kennedy ("Kennedy") files his Objection to Defendant BMW Financial Services, N.A. ("BMW") Motion for Summary Judgment on the Amended Complaint and his Cross-Motion for Summary Judgment.

I.  INTRODUCTION

Kennedy brought his claim against the Lessor BMW the true party that extended the credit in the lease transaction and also liable for the lease violations.

II.  BACKGROUND

On April 30, 1999 the original lessees Michael C. Iannuzzi and Michael P. Iannuzzi ("Iannuzzis") lease a new 1999 BMW in Boston, MA from a local dealer ("Dealer"). See plaintiff's Exhibit 2.

The custom within the auto leasing industry is the consumer fills out a credit application with the Dealer who sends it to the financier for credit approval. After BMW approved Iannuzzis credit, the Dealer filled in the lease as instructed by BMW the Lessor/Financier through the assistance of the documents, bulletins and consultation with its support staff, as to monthly

charges, residual value and excess mileage charges and all other aspects of the lease. The lease was executed by the Iannuzzis and immediately assigned to BMW on the same date. See ¶5 of BMW's Local Rule 56(a) (1) statement and plaintiff's exhibit 2.

The Iannuzzis contacted BMW requesting that they be released from the lease. BMW prepared a Transfer of Interest and Assumption of Obligation in January and February 2000 and the document was executed by the Iannuzzis, Kennedy and BMW.

Kennedy returned the auto to BMW at lease end which was beyond the term of the original lease.

Thereafter, Kennedy commenced an action against BMW for alleged violations of The Consumer Leasing Act ("CLA") Count I, the Motor Vehicle Information and Cost Saving Act ("Odometer Law") Count II and Connecticut Unfair Trade Practices Act ("CUPTA") Count III.

BMW filed a motion to dismiss the complaint and plaintiff filed his objection. The Court issued its ruling on BMW motion to dismiss [Dkt. No. 37] and denied in part BMW's motion to dismiss on Count I, CLA and Count III CUTPA. It granted in part BMW's motion on Count II Odometer Law.

## III. STANDARD OF LAW

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages.

2

The entry of summary judgment is inappropriate where there exist a genuine and material issue of fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 342, 247-48, 106 S. Ct 2505, 2509-10, 91 L. Ed. 2d 202 (1986).

Substantive law defines which facts are material and only disputes over facts that might affect the outcome of the case will defeat summary judgment, <u>Id.</u> At 248, 106 S.Ct at 2510. A factual dispute is genuine if a "reasonable jury could return a verdict for the non-moving party." <u>Id.</u> Although all inferences to be drawn from the underlying facts must be viewed in light most favorable to the non-moving party, once the movant has met its burden of demonstrating the absence of a genuine issue of material fact, the party opposing the judgment "must do more than simply show that there is some metaphysical doubt as to the material facts: to prevent its entry." <u>Matsushita Electric Industrial Co., Zenith Radio Corp.</u>, 475 U.S. 547, 586-87, 106 S. Ct. 1348, 1355-56, L.Ed. 2d 538 (1986). It is not sufficient for the party opposing summary judgment to provide a scintilla of evidence support its case. <u>Anderson</u> <u>supra</u> 477 U.S. at 252, 106 S. Ct at 1512.

**IV.    DISCUSSION**

**A.    BMW's DEFENSES ARE WITHOUT MERIT**

BMW has inaccurately raised defenses that it has no liability for the disclosures within the lease dated April 30, 1999 or the transfer in 2000. Those defenses may be divided into four categories.

1. BMW alleges that the Consumer Leasing Act (CLA) protects it from liability as an "Assignee" and relies on its alleged status as an assignee. Memorandum page 7.

2(a). BMW alleges that the CLA protects it from liability as "lessor". See Defendant's

3

memorandum page 11 at the time of inception of the original lease on April 30, 1999.

2(b) BMW further alleges that it is protected from liability in the "alleged transfer" of the lease during January-February 2000.

3. BMW alleges it cannot be held for charging the incorrect sales tax in the end of lease letter. Defendant's memorandum page 14 ¶ 3.

4. BMW alleges that it cannot be held liable under the Connecticut Unfair Trade Practices Act (CUTPA).

The CLA applies to leases whether or not the consumer has the option to purchase the property at the end of the lease term, but the Act does not apply to *credit sales*, as defined for purposes of the Truth In Lending Act ("TILA"), see 15 U.S.C. § 1667(1).

There are two major sources of CLA law besides the statute itself and existing case law. The first is the Federal Reserve Board (FRB) Regulation M on Consumer leasing. The regulations are found at 12 C.F.R. 213. Second is the FRB Official Staff Commentary on Regulation M, found as a supplement to 12. C.F.R. 213. No other agency issues CLA interpretations, so that the only primary source of precedent is the small number of federal cases interpreting the ACT. See 61 Fed. Reg. 52246-52281 (Oct. 7 1996), as amended by 62 Fed. Reg. 15364-15372 (April 1, 1997), and by 63 Fed. Reg. 52107 (Sept. 29, 1998).

**B.  BMW IS LIABLE AS AN ASSIGNEE ON THE LEASE DATED APRIL 30, 1999**

BMW claims it has immunity through the CLA as a creditor and 15 U.S.C. §§ 1602(f), 1640(a), and 1667d (b). It further alleges it is protected from liability if the violation is not apparent on the face of the document.

BMW has cited the following cases, statutes and regulations on p.7 -10 of its

4

Memorandum in reliance that the CLA immunizes it from liability as an "assignee"

12 C.F.R. 226; 15 U.S.C. §§ 1602(f), 1641(a); <u>General Elec. Capital Corp v. DirecTv, Inc.</u> 94 Supp.2d 190; <u>Mayfield v. General Elec. Capital Corp.</u>, No. 97cv2786, 1999 WL 182586 *4 (S.D.N.Y. Mar. 31, 1999); <u>Taylor v. Quality Hyundai Inc.</u>, 150 F.3d 689, 694 (7th Cir. 1998); <u>Allen v. Jerome Imports, Inc.</u>, No 97cv3847, 1998 WL 751633 *2 (E.D.La Oct. 26, 1998); <u>Rivera v. Grossinger Autoplex,Inc.</u>, No 00cv0442, 2000WL 795158, *4 (N.D. Ill. June 19, 2000); <u>England v. MG Investments, Inc.</u>, 93F. Supp.2d 718; <u>Randadan v. ChaseManhattan Corp.</u> 229 F.3d 194; <u>Balderos v. City Chevrolet</u>, 214 F.3d 849; <u>Ellis v. General Motors Acceptance Corp.</u>, 160 F.3d 703; <u>Walker v. Wallace Auto Sales, Inc.</u>' 155 F.3d 927; <u>Ritter v. Durand Chevrolet, Inc.</u>, 932 F. Supp. 32; <u>Knapp v. Americredit Financial Services, Inc.</u>, 245 F. Supp.2d 841; <u>Green v. Levis Motors, Inc.</u>, 179 F.3d 286; <u>Fielder v. Credit Acceptance Corp.</u>, 98 F. Supp.2d 1104; <u>LaCasse v. All Star Dodge, Inc.</u>, Docket No. 96cv7365, 2001 WL 34046169 (M.D.La Feb 7, 2001); and <u>Brister v. All Star Chevrolet, Inc.</u>, 986 F. Supp. 1003.

## C.   DISTINGUISHING LEASES FROM CREDIT SALES

The CLA applies to leases or bailment's whether or not the consumer has the option to purchase the property at the end the lease term, but the Act does *not* apply to *credit sales*, as defined for purposes of TILA. See 15 U.S.C. § 1667 (1).

TILA treats a lease as a disguised credit sale if the consumer pays in the lease or bailment a sum at least substantially equivalent to the value of the property and services, and the consumer has the option to become, for no additional consideration or for nominal consideration, the owner of the property at the end of the lease. 15 U.S.C. § 1602 g); Reg. M § 226.2 (a) (16). Under these circumstances, the lease is covered by TILA not the CLA, which is not so in the pending case.

5

The statues, regulations and case law that BMW relied on all relate to TILA. Since all relate to *credit sales* and the case before the court is a **lease** which is governed by the CLA the court must disregard all the statutes, regulations and case law erroneously submitted by BMW.

Therefore, BMW is liable as a matter of law.

### D.     BMW IS LIABLE AS A LESSOR ON THE LEASE DATED APRIL 30, 1999

The CLA application to assignees substantially involved with lesssors is different from TILA, which in 1980 was amended so that the definition of creditor applies only to the individual to whom the debt is initially payable as evidenced by the face of the consumer note. See 15 U.S.C. 1602 (f). *Because the CLA was never amended in a similar fashion, the CLA's application to assignees is significantly broader, and is similar to that found under TILA before the 1980 amendment.* See Jordon v. Schaumburg, Toyota, 1999 U.S. Dist. LEXIS 2553 (N.D. Ill.). See [Dkt. 37] this Court's Ruling on the Motion to Dismiss, page 4 "While TILA expressly limits the liability of 'assignees' to a disclosure violation that is 'apparent on the face of the disclosure state,' see 15 U.S.C. § 1641(a), the CLA does not expressly address assignee liability. Nor has the Second Circuit spoken on this issue."

Under TILA assignees are only liable for violations apparent on the face of the disclosure. Under the CLA, assignees **substantially** involved with the lessor are defined as lessors, and are liable even for violations **not** apparent on the face of the lease disclosures.

Where a lease involves more than one lessor, only one lessor need make the disclosure. Reg. M § 213.3 (c). Nevertheless, this one disclosure must contain all the required information that any of the lesssors must disclose to a lessee. See Official Staff Commentary § 213.3 (c)-1. In

6

the 1999 lease BMW was identified as a lessor, "The consumer lease disclosures contained in this lease are also made on behalf of BMW Financial Services N.A. Inc."Exhibit 2, ¶ 4. *Credit sales* are governed by TILA and Reg. Z. the Consumer Leasing Act is governed by Reg. M.

Therefore, BMW is liable as a matter of law.

## E.   BMW WAS SUBSTANTIALLY INVOLVED IN THE LEASE

This court Ruled on BMW's Motion to Dismiss [Dkt. No. 37] denied in part and granted in part. At n3 the court stated "However, it appears that BMW holds itself out to be the 'Lessor' in the Transfer of Interest and Assumption of Obligation under Motor Vehicle Lease Agreement, Exhibit 1, Plaintiff's Objection to Defendant's Motion to Dismiss". (now Exhibit 2).

BMW was substantially involved in the lease that is the subject of this action. In Ford Motor Credit Co. v. Cenance et al., 452 U.S. 155; S. Ct. 2239; 68 L. Ed. 2d 744 the court in the TILA case reviewed a case consolidation from the Court of Appeals, Cenance v. Bohn Ford, Co., 621 F.2d 130 (CA5 1980). In each of the cases the purchaser of an auto entered into a Retail Installment Contract ("RIC") with an auto dealer. Prior to consummation of the agreement, the dealer would forward the prospective buyer's credit application to Ford Motor Credit Co. ("FMCC"). Once the buyer met FMCC's credit standards the consumer and dealer signed the RIC. Each contract read "The foregoing contract hereby is accepted by the Seller and assigned to Ford Motor Credit Company in accordance with the terms of the Assignment set for on the reverse side here."

FMCC purchased the contract without recourse against the dealer. Notwithstanding that FMCC did not participate in the negotiations, it provided the dealer credit forms, including blank RICs. One of the basic claims in the case was that the consumer was not provided an itemization

7

of money paid to public officials. See Kennedy's Exhibit 2, ¶ 10 (inaccurate itemization), Exhibit A ¶ 5, "... blank lease forms provide to it in advance by Defendant."

The court in its analysis said TILA defined creditors in pertinent part as those "who regularly extend, or arrange for the extension of credit . . . 15 U.S.C. § 1601 (f). The court held, "The acceptance of the contract and the assignment became operational simultaneously, and the assignment divested the dealer of any risk in the transaction. In short, we agree with the Court of Appeals that it would be elevating form over substance to conclude that FMCC is not the creditor with the meaning of the Act. N4."

The court said in footnote 2 "There were additional violations sustained by the Court of Appeals, The Court of Appeals rejected FMCC's claim that under § 226.6 (d) one of these violations should not have been attributed to it since the violation was beyond the 'purview' of its relationship with the dealer, (emphasis added) We deny FMCC's petition for certiorari insofar as it challenges the Court of Appeals judgment in this respect." (Emphasis added).

This Court should follow the same rational and deny BMW's argument that it cannot be held liable for any inaccuracies in disclosures made by an assigning dealer. See BMW Memorandum Page 6.

Also, this Court should follow the reasoning in Ford Motor Credit Co. supra "The Meyers analysis applies with even greater force to the instant situation because here the dealers regularly dealt with Ford. The dealer and Ford prearranged for assignment of the finance instrument. At no time did the risk of finance reside with the dealer. The transaction between the dealer and automobile purchaser was conditioned upon acceptance of the credit application by Ford. Indeed, the credit application form was prepared by Ford. As in Meyers, it would be elevating

8

form over substance to hold that Ford was anything but the original creditor within the meaning of the Act . . . ." The relationship in the present case is the same as in FMCC; BMW deals on a regular basis with BMW authorized dealers.

Below are listed BMW's involvements with the transaction which by far are substantially greater than the acts of Ford Motor Credit Corp supra.

1. Exhibit 2 paragraph 4, "AGREEMENT TO LEASE. This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee(s) and the lessor ("Lessor") named above. "You" and "Your" relate to the Lessee(s). "We", "our" and "us" refers to the Lessor. "Vehicle" refers to the leased vehicle described below. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this lease are also **made on behalf** of BMW Financial Services NA Inc. Logic dictates that the Lessor was BMW and made the disclosures simultaneously with the Dealer in Boston, MA.

2. The lease in bold lettering with BMW's logo reads BMW FINANCIAL SERVICES NA, INC. Motor Vehicle Lease Agreement (Closed End).

3. BMW, the Lessor was in total control of the transaction See Exhibit 2, also see Exhibit 1, defendant's deposition dated December 16, 2003, page 9, lines 23-25, page 10 whereby the blank leases are prepared by defendant and supplied to its dealers. BMW's purpose for sending Exhibit 2 to its dealers "so they will know - - they will use a form that they already know is acceptable to us to be assigned to us." Exhibit 1, Page 12.

4. When asked at the deposition how the dealer would know how to fill in the lease document, defendant responded "They would have work sheets. They understand - - we have sales and marketing managers that assist them in understanding what we expect to have, how we

expect them to be completed. And we also have a retailer communications center where the dealers can call in if they have any questions on completing any of these documents." Exhibit 1, page 12.

5. On line 20 of Exhibit 2 the lease contains a charge of $.20 per mile. BMW contents that charge represents an excess wear and tear charge for any miles over and above what the lease contracted for. And the charge is controlled by defendant. Exhibit 1, page 12-13. Further in Exhibit 2, paragraph 21 in-house counsel revises these documents who is employed by BMW Financial Services. Exhibit 1, page 13.

6. Exhibit 2, line 8, the consumer pays a disposition fee, of $350 and is a fee that BMW Financial Services has set when they send out the leases to the dealer. Exhibit 1, page 13-14. "In other words, for a dealer to assign a lease to us, a primary requisite would be that we have already approved that customer's credit and secondarily, that we received the lease assigned to us with some other backup documentation". Exhibit 1, page 16.

7. Credit applications, Exhibit 3 are completed and submitted to BMW on application supplied by defendant to dealers, Exhibit 1, page 17. In fact, BMW supplies manuals that are updated regularly to help the dealers in all facets of preparing document for – BMW Financial Services, Exhibit 1, page 18. BMW has set standards whether they will approve or disapprove the lessee's credit. Exhibit 1, page 18.

8. BMW sent approval notification to the Dealer authorizing the Iannuzzis to lease the auto provided both signed the lease and set the **lease term of 36 months, the sum of $43,200 and BMW options.** Exhibit 4.

9. BMW supplies the Dealers with a "BMW Financial Services Funding Package