Financial Services Corp., 993 F.2d 11 (2nd Cir. 1993). The clear and conspicuous standard requires that disclosures be reasonably understandable. BMW was understand it own lease, see Exhibit 1, page 46-47 how then, could the average consumer be capable of understanding the confusing dates that payments were due when BMW said it was **"human error"** Exhibit 1, page 47, line 16.

Therefore, BMW is liable as a matter of law.

BMW's employee Armando Macias signed an affidavit on November 14, 2003 based on personal knowledge as well as records made and kept in the ordinary course of BMW''s business. Exhibit 12. In ¶6 of this exhibit Mr. Macias states "Neither did BMW FS collect or receive the title fee, registration fee, license fee, VIN etch fee, or money due at lease signing for the transaction"

BMW responded in Exhibit 1, page 62, **A.** "First question had to do with the consumer putting a cap coast reduction of $5000 and do we credit this back to the consumer. The - - its. The – I just want to make sure I understand the question. The $5.000 is – a reduced reduction and what we purchase the vehicle for is $5000 less. So the dealer keep those funds. I not sure that's really answering your question or not.

The – the – monthly payments are based on the adjusted cap cost so in that sense, yes the customer does get a credit for the $5000. See Exhibit 17 entitled BMW Financial Services Transaction Statement. It shows on the Post Date of 5/1/99 the plaintiff/ Lessee was credited $5300. $5000 was the down payment made by Iannuzzis in Exhibit 2, ¶ 10 (1) and $300 in the same Exhibit ¶ 10 line (7) sales tax on capitalized cost reduction. No explanation was provided why BMW would issue a credit in the sum of $5000 plus $300 sales tax had it not received a

21

benefit.

### G.   THE 1999 LEASE WAS TERMINATED AND COULD NOT BE ASSIGNED

The original lessees (Iannuzzis) were charged $250 for Early Term Charge, Exhibit 18. Exhibit 2, the lease, was originally executed by Iannuzzis and the lease allegedly assumed by Kennedy. Assuming that to be true, when BMW charged Iannuzzis $250 for Early Term Charge Exhibit 18, then the charge terminated Exhibit 2. BMW requires a consumer to pay the $250 early termination charge, Exhibit 2, ¶ 22 at time of early termination. When Iannuzzis were charged the termination fee the lease then, no longer existed. "An automobile lease may terminate prior to the expiration of the full lease term for a variety of reasons." See Pettola v. Nissan Motor Acceptance Corp., 44 F. Supp. 2nd 442 (D.Conn. 1999), quoting Kedziora v. Citicorp Nat'l Serv., Inc., 844 F. Supp. 1289, 1292 (N.D. Ill 1994). "In this case the lease was terminated . . . and her voluntary surrender of the automobile . . . at which time plaintiff signed a "Federal Odometer/Lease Termination Statement." "We find that the Lease was terminated . . ."

Iannuzzis signed a Federal Odometer Disclosure Statement (Leased Vehicle) back to the Lessor BMW Financial Services NA, Inc. on January 21, 2000 and thereafter it was signed by BMW. Exhibit 2 was terminated and could not be assigned.

Therefore, BMW is liable as a matter of law.

### H.   PLAINTIFF'S ALLEGED ASSIGMENT OF THE LEASE IN 2000 CONTAINED A MODIFICATION OF THE ORIGINAL LEASE OR WAS A NEW LEASE

1. BMW in its memorandum of law page 12 offered 12 C.F.R. § 213.5 (c) as reference that new disclosures are not required when a consumer lease is assumed by another person.

However, in the instant case there was a **modification of the lease,** See Exhibit 11

22

entitled Transfer of Interest and Assumption of Obligation under a Motor Vehicle Lease agreement. *Modification*- a change; an alteration or amendment which introduces new elements into the details or cancels some of them. Blacks Law Dictionary Fifth Edition, 1979 West Publishing Co.

In pertinent part Exhibit 11 reads "The parties hereto agree that this transfer and *modification* of the subject lease is entered into in accordance with the Lease terms and that all the Lease terms and provisions remain unchanged and in full force and effect." Yet when asked at the deposition if Exhibit 11, the transfer of lease "was it a modification of a lease?" BMW answered "no". See Exhibit 1 page 49, lines 8-9.

Exhibit 11 was prepared by BMW and the terms are to be construed against the Scribner. Since there was a *modification* in the Kennedy lease, new disclosures were required, Reg. M § 213.3(a) (3). BMW prepared Exhibit 11 and failed to provide new disclosures as required by the CLA prior to consummation.

Note the following *modifications* in Exhibit 11 that affected Exhibit 2 at time of execution Exhibit 11. The original lessees (Iannuzzis) were charged $250 for Early Term Charge, Exhibit 18. Exhibit 2 was originally executed by Iannuzzis and the lease allegedly assumed by Kennedy. Iannuzzis paid BMW in Exhibit 2 ¶10 (8) the Acquisition Fee of $480. See also Exhibit 1, page 63. Kennedy was charged $450 (an undisclosed fee) at time of transfer of the alleged lease, a sum close to what Iannuzzis paid earlier. Kennedy paid a Disposition Fee Exhibit 19 in the sum of $350 lease termination notwithstanding that Iannuzzis paid an Early Term Fee. See Exhibit 20.

**2.** New disclosures are not required if the lease is a renegotiation, extension and

23

assumption, Official Staff Commentary § 213.5. In the pending case, the lease was captioned an assumption but that is form over substance. The lease, Exhibit 11, was a new lease because either the original lease had been terminated by the Iannuzzis or because it was a modification of the original lease. Either way, BMW failed to provide lease disclosures to Kennedy prior to consummation § 213.4.

Therefore BMW is liable as a matter of law.

### I.  BMW'S EARLY TERMINATION FORMULA IS NOT CLEAR NOR CONSPICUOUS

BMW failed to provide its Early Termination Liability in a Clear and Conspicuous manner as required by the CLA, see plaintiff's amended complaint ¶7.

The lease Exhibit 2 was printed by or for BMW and sent to its Dealer for its use in leasing, Exhibit 1 page 10-12.

Under Reg. M and the CLA disclosures on a consumer lease must be made "accurately and in a clear and conspicuous manner," 15 U.S.C. § 1667a, "in meaningful sequences,"12 C.F.R. § 213.4(a) (1), and in "a reasonably understandable form" 12 C.F.R. pt. 213, supp. I, § 213.4(a) (1) Official Staff Commentary. In the instant case BMW failed to make proper disclosures.

*"The duty to disclose under the CLA is breached, if at all, at the time of lease consummation."* 15 U.S.C. § 1667a; see also Applebaum v. Nissan Motor Acceptance Corporation, 226 F.3d 214 (3rd Cir. 2000).

BMW's lease provides in relevant part:

24

## 21. EARLY TERMINATION OF THE LEASE

You may terminate this Lease at any time if you are not in default (Section 34). If you do not purchase the Vehicle, you must return it to the place we specify with all parts and accessories and in good working order. The Vehicle must have 5 serviceable tires with tread of at least 1/8", all the same grade and quality as those delivered with the Vehicle. Your Early Termination Liability is: (a) Early Termination Cost (22) plus (b) if we terminated this Lease because you are in default, all collection costs, and to the extent permitted by law, court courts and reasonable fees of attorneys who are not our salaried employees. You must pay us Your Early Termination Liability when we bill you.

For the consumer to figure the sum due at early termination they must go to paragraph 22. Item 22 provides as follows:

## 22. EARLY TERMINATION COST.
For the purpose of figuring your Early Termination Liability (Section 21) the Early Termination Cost is: (a) any unpaid Monthly Payments due; plus (b) any official fees and taxes assessed or billed in connection with this Lease and any other charges to satisfy your obligation under this Lease, including repair charges, at termination: plus (c) an early termination fee of $250.00 plus (d) the Disposition Fee (Section 8A); plus (e) the Actuarial Payoff, minus (f) the Estimated Value of the Vehicle (Section 23). You may be liable for any excess ware and use charges and excess mileages charges upon the return of your Vehicle which will be billed to you. Your actuarial payoff is the total of Base Monthly Payments remaining until the end of your Lease plus the Residual Value, minus the unearned Rent Charges remaining until the end of your Lease. We compute Rent Charges based upon the actuarial method which

25

means we earn our monthly Rent Charges during your Lease on the constant yield method based upon your declining Lease balance, assuming your Base Monthly Payments have been received on their scheduled due dates. We may use some or all of your security deposit to pay what you owe.

Item 23 provides as follows:

**23. ESTIMATED VALUE OF THE VEHICLE.** For the purpose of figuring your Early Termination Cost (Section 22), the Estimated Value of the Vehicle is the value in the current Black Book Wholesale Average Condition for your region. In the event Black Book does not quote such a value, the average wholesale trade-in value of the Vehicle as published in the current N.A.D.A. Official Used Care Guide Wholesale Average Condition for your region will be used to determine the Estimated Value of the Vehicle. If you disagree with the Estimated Value of the Vehicle, you may obtain, at your own expense within 10 days from the date the Vehicle is returned to us, from an independent third party agreeable to both you and us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale, which will then be final and binding upon you and us.

Item 8A provides as follows:

**8A. OTHER CHARGES** Disposition Fee (if you do not purchase the Vehicle at lease end).

In the present case the consumer must look to lease paragraph 34 (Default) then to lease paragraph 22 (Early Termination of the Lease) then to lease paragraph 8 A (Other Charges) and lease paragraph 23 (Estimated Value of the Vehicle).

26

Within those paragraphs of the lease BMW cited above to determine the cost of early termination it has failed to tell the consumer where or how to locate the Residual Value as reference in lease paragraph 23. See <u>Applebaum</u> <u>subra</u>.

Paragraph 21, 22, 23, 34 and 8 are absent of information informing the consumer where to locate the required information in paragraph 23 (Early Termination Cost) where or how to locate the Rent Charges or the Base Monthly Payment.

BMW's early termination formula under the CLA and Reg. M failed to meet the test the disclosures on a consumer lease must be made "accurately and in a clear and conspicuous manner" 15 U.S.C. § 1667a; <u>Clement v. American Honda Finance Corp.</u>, 145 F. Supp. 206 (D.CONN. 2001); <u>Applebaum v. Nissan Motor Acceptance Corporation</u>, 226 F.3d 214 (3rd Cir. 2000); <u>Lundquist v. Security Pacific Automotive Financial Services Corp.</u>, 993 F.2d 11 (2nd Cir. 1993).

Therefore BMW is liable as a matter of law.

## BMW VIOLATED CUTPA

The plaintiff brought this litigation, in part, under Connecticut Unfair Trade Practice Act ("CUTPA") seeking damages. "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade commerce." C.G.S. § 42-110b.

In a recent Appellate court decision, Justice Peters, writing for the unanimous court, held that a single incident can support a CUTPA violation. <u>Johnson Electric Co. v. Sales Contracting Associates, Inc.</u>, 72 Conn. App. 342, 349-353 (2002), cert. denied 262 Conn. 922 (2002).

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the 'cigarette rule' by the Federal Trade Commission for

27

determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statues, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness' (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Thus a violation of CUTPA may be established by showing either an actual deceptive practice, or a practice amounting to a violation of public policy. Furthermore, a party need not prove intent to deceive to prevail under CUTPA. (knowledge of falsity, either constructive or actual, need not be proven to establish CUTPA violation." (Citations omitted in part; internal quotations omitted.) Cheshire Mortgage Service Inc. v. Montes, 223. 80, 105-6 (1992). Also, see Lugo v. Able Auto, Inc., (3:97CV2136 RNC 1999) (Exhibit A attached).

BMW's violations enumerated within the memorandum entitles plaintiff to damages under CUTPA as a matter of law.

**CONCLUSION**

Based on the undisputed material facts, BMW violated the Consumer Leasing Act, CLA. Therefore, plaintiff is entitled to Partial Summary Judgment on the issues regarding BMW's liability for actual and statutory damages pursuant to 15 U.S.C. § 1640 (A) (2) (A) (i). Plaintiff further requests that he be awarded his costs, expenses and his attorney fees pursuant to 15 U.S.C. § 1640(a)(3) and actual damages, punitive damages, costs and attorney fees under the

28

Connecticut Unfair Trade Practices Act, (CUTPA) at a separate hearing.

The court need find "only a single violation of the statutory requirements to hold BMW liable under the CLA".

THE PLAINTIFF

BY _____
Bernard T. Kennedy
49 Rose Street, # 301
Branford, CT 06405
(203) 481-1322
Fed. Bar No. ct00680

# EXHIBIT A



UNITED STATES DISTRICT COURT

FILED
MAR 9 10:40 AM

**June 7, 1999.**         Lugo v. Able Auto, Inc.
                          3:97CV2136 (RNC)

Re:  Plaintiff's Motion for Partial Summary Judgment (doc. # 21)

    The motion is GRANTED as to the TILA claim (count one).  It is undisputed that defendant required plaintiff to pay (and plaintiff did pay) $52.19 by no later than July 24, 1997, which was several weeks in advance of the date the first weekly payment of $52.19 was due under the retail installment contract.  See Tr. of 5/13/1999 Hrg., at 14-16; see also Def.'s Brief, at 5 ("[defendant] took the payment early because that is what his financier directed that it do.").  Defendant's witness, Mr. Moeller, has testified that the money was collected and kept by the defendant on the understanding that the total amount financed would be reduced by the financing company accordingly.  See Moeller Dep. at 55-56.  Defendant contends there is a triable issue of fact as to whether the payment constituted a down payment or one of the 112 payments due under the contract.  Any uncertainty about that dispute does not prevent summary judgment.  The record is clear that the retail installment contract does not accurately reflect what was required of plaintiff to close the transaction.  Plaintiff was required to pay at least three weeks in advance money that was purportedly loaned to him under the contract.  As a result, defendant's representations concerning the total amount financed and the finance charge were incorrect in violation of TILA.  Even a technical violation is actionable under TILA, because it is a remedial statute that is strictly construed in favor of the consumer.  See Lopez v. Orlor, Inc., 176 F.R.D. 35, 41 (D. Conn. 1997).  Defendant invokes the "bona fide error" defense contained in 15 U.S.C. § 1640(c), but "a defendant invoking this excuse is required not merely to show the clerical error was unintentional, but also that due care has been taken to set up procedures to avoid it."  Ratner v. Chemical Bank New York Trust Co., 329 F. Supp. 270, 281-82 (S.D.N.Y. 1971).  Defendant has made no such showing.

    The motion is also GRANTED as to the CUTPA claim (count 3).  On May 13, 1999, the court granted summary judgment for plaintiff on his claim under the Motor Vehicle and Cost Saving Act (hereinafter the "Odometer Law") (count 2).  Although the violation of the Odometer Law does not necessarily violate the second prong of the "cigarette rule," i.e., it is not "immoral, unethical, oppressive, or unscrupulous," see Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80, 112 (1992), it does satisfy the first and third prongs.  The statute expresses the public policy of informing and protecting consumers of credit, and the violation has caused substantial injury to plaintiff.  See id. at 113; see also Prishwalko v. Bob Thomas Ford, Inc., 33 Conn. App. 575, 587 (1994); Johnson v. Ron's Used Cars Ltd., No. 271277, 1990 WL 265342, at *2 (Conn. Super. Dec. 12, 1990).  "All three [cigarette rule] criteria do not need to be satisfied" to find a violation of CUTPA, see Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707, 725, 26 (1995), and "the degree to which the other two criteria have been met" warrants holding that a CUTPA violation has occurred.  Cheshire Mortgage Serv., Inc., 223 Conn. at 113.  So ordered.

*/s/ Robert N. Chatigny*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed on this 26 day of January 2004 via U.S. Mail to:

Adam J. Cohen, Esq.
Sheila A. Denton, Esq.
Pullman & Comley
Box 7006
Bridgeport, CT 06601-7006

_____
Bernard T. Kennedy