# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

| | |
|---|---|
| MICHAEL W. KENNEDY, | \* |
| Plaintiff, | \* |
| VS. | \* |
| BMW FINANCIAL SERVICES, N.A. | \* |
| Defendant | \* |

CIVIL ACTION
NO. 3:02cv1754 (CFD)

FEBRUARY 24, 2004

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

## DEFENDANT'S CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule 56 and the Order of this Court dated February 5, 2004, the defendant BMW Financial Services NA, LLC ("Defendant") hereby submits this consolidated memorandum constituting its Reply in support of Defendant's Motion for Summary Judgment and also its Opposition to the Cross-Motion for Summary Judgment filed by the plaintiff Michael W. Kennedy ("Plaintiff").

## I.    INTRODUCTION

This litigation is a dispute over fees associated with a motor vehicle lease. Plaintiff accuses Defendant, a finance company, of liability for alleged overcharges calculated and collected by the

original dealer, and of other fees and taxes charged by Defendant at the lease's end. Defendant properly filed a Motion for Summary Judgment as to both surviving counts on November 14, 2003. Plaintiff sought, and this Court granted, additional time for him to depose Defendant. Now before this Court are Plaintiff's opposition to Defendant's Motion and his own cross-motion for summary judgment dated January 26, 2004.

Defendant's principal contentions in support of its Motion are that: (1) the Consumer Leasing Act, 15 U.S.C. § 1667, et seq. ("CLA"), immunizes finance companies assigned motor vehicle leases which, as in this case, contain no violations apparent on their faces; (2) even if Defendant was not an "assignee" but rather a "lessor" along with the original dealer, the CLA and its regulations clearly impose exclusive liability for any overcharges upon the dealer; and (3) Defendant properly charged Plaintiff an excess mileage fee and state taxes at the lease's termination. Defendant hereby incorporates all of the arguments, evidence, and authorities which it presented in support of its Motion for Summary Judgment into this Opposition to Plaintiff's cross-motion. Moreover, Defendant agrees with the suggestion implicit in Plaintiff's cross-motion for summary judgment that purely legal questions will govern the outcome of this litigation and no issues of fact need be tried.

## II.    DISCUSSION

### A.    Defendant's Evidentiary Submissions Are Dispositive on All Issues.

As an initial matter, this Court should recognize that Defendant's evidentiary submissions are dispositive and unchallenged for purposes of both parties' respective summary judgment

2

motions.  Such motions must be supported by *authenticated* evidence, and when they are, only *authenticated* counter-evidence can be used to oppose them.  <u>See</u> Federal Rule 56(e); <u>S.E.C. v. Electronics Warehouse, Inc.</u>, 689 F.Supp. 53, 62 n.12 (D.Conn. 1988) (so stating, and granting summary judgment), <u>aff'd</u>, 891 F.2d 457 (2d Cir. 1989); <u>Price v. Worldvision Enterprises, Inc.</u>, 455 F.Supp. 252, 266 n.25 (S.D.N.Y. 1978), <u>aff'd</u>, 603 F.2d 214 (2d Cir. 1979); <u>Cauble v. Mabon Nugent & Co.</u>, 594 F.Supp. 985, 995 (S.D.N.Y. 1984) (granting summary judgment where opposition evidence was unauthenticated).  Defendant has properly authenticated all exhibits which it filed with its Motion for Summary Judgment.  <u>See</u> Exhibits A and B (affidavits of Defendant and counsel authenticating all evidentiary exhibits).[1]  Plaintiff, however, has made no effort to do the same to support its own exhibits, and Defendant hereby objects to his unauthenticated evidence.  Thus, Defendant's own documentary evidence must be deemed as the exclusive record before this Court for purposes of deciding both motions for summary judgment.

Even if Plaintiff had presented authenticated evidence which this Court could properly consider, Plaintiff has violated Local Rule 56(a)(3) by failing to provide any "specific citation" to that evidence to support the denials and factual issues he has asserted in his Rule 56(a)(2) statement.  Instead, he has curtly responded "denied" to most of Defendant's Rule 56(a)(1) Statement, without explaining why or how Plaintiff would be able to disprove its properly-supported assertions at trial.

---

[1]    Citations to "Exhibit ___" herein refer to those exhibits submitted with Defendant's November 14, 2003 Motion for Summary Judgment, which are adopted into this memorandum insofar as it opposes Plaintiff's cross-motion for summary judgment.

<u>See</u> Pl.Local Rule 56(a)(2) Stmt. at ¶¶ 2-9.  Moreover, his purported "factual issues" are in fact legal conclusions (<u>e.g.</u>, "BMW is liable for the lease violations," <u>see</u> ¶ 1) which not only fail to identify evidentiary support in the record but are flatly inconsistent with Plaintiff's *own* cross-motion for summary judgment, which naturally presupposes that no issues of fact exist.  The mandates of Local Rule 56(a)(3) are not mere recommendations to counsel; instead, the rule explicitly states that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including … when the opponent fails to comply, an order granting the motion [for summary judgment]."  <u>See</u> Local Rule 56(a)(3).  Because Plaintiff has flagrantly disregarded this rule and failed to introduce properly authenticated evidence for this Court's consideration, Defendant's Motion for Summary Judgment should be granted upon its uncontradicted evidentiary submissions.

### B. Defendant Is Entitled to Summary Judgment as an "Assignee" Because No Facially-Apparent Disclosure Violations Can Be Demonstrated.

Defendant is entitled to summary judgment on Plaintiff's CLA claims because it is an "assignee" which cannot be held liable except for facially-apparent disclosure violations, and no such violations have been shown.  Plaintiff openly acknowledges that 15 U.S.C. § 1641(a) authorizes civil action "against any assignee of [a] creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement," that the financial disclosures upon which he has brought suit were tabulated by the dealer, and that the inaccuracies alleged within them were not apparent without comparison to unassigned documents.

4

See Pl.Mem. at 6, 8, 16; see also Paragraph 6 of Defendant's Local Rule 56(a)(1) Statement dated November 14, 2003 and exhibits cited therein (hereinafter "Statement at ¶ __"). Instead, Plaintiff's contention is that § 1641(a) never applies to the CLA at all, but only to the other portions of the Truth-In-Lending Act, 15 U.S.C. §§ 1601, et seq. ("TILA"). See Pl.Mem. at 4-7.

The statutory language leaves no room for doubt that Plaintiff is completely wrong. Section 1641(a) expressly states that the assignee defense within it applies to "any civil action for a violation of *this subchapter*" (emphasis added). The section appears in Subchapter I of Chapter 41 of Title 15 of the U.S. Code, so "this subchapter" means "Subchapter I." Subchapter I *is itself* what the common name "TILA" refers to. Sherrill v. Verde Capital Corp., 719 F.2d 364, 366 (11th Cir. 1983) ("[t]he Truth In Lending Act is Subchapter 1 of the Consumer Protection Act, 15 U.S.C. § 1601 et seq."). Subchapter I is divided into five Parts labeled A through E, which contain the entirety of the CLA (Part E), all definitions for both (in § 1602 of Part A, and §§ 1667 and 1667d of Part E), and the private causes of action for both (in § 1640 of Part B, and § 1667d of Part E incorporating it). Because the plain language of § 1641 mandates its application to all actions under "this subchapter" and the CLA is in that very same subchapter, there can be no possible construction under which § 1641 would not govern causes of action under the CLA. See Greenery Rehabilitation Group, Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998) (statute's plain language governs its construction); Kedziora v. Citicorp Nat. Services, Inc., 780 F.Supp. 516, 519 (N.D.Ill. 1991) ("[because] Congress chose to embed the [Consumer Leasing] Act within the TILA structure … general rules of construction applicable in TILA cases must also apply in cases under the Act"),

aff'd in relevant part, 89 F.3d 379 (7ᵗʰ Cir. 1996); Jarvis v. South Oak Dodge, Inc., 773 N.E.2d 641, 646 (Ill. 2002) ("under federal law, a subsequent holder, i.e., an assignee, of a consumer lease is liable only for TILA violations 'apparent on the face' of the lease").[2]

Since § 1641(a) could not be clearer that it applies to actions for "violation of this subchapter," there was obviously no need for it to also say, "such as Part E of this subchapter" (the CLA). Plaintiff's contrary suggestion is untenable. Indeed, Congress *did* go on to reiterate § 1641(a)'s application to the CLA when it stated in § 1667d of the CLA itself that § 1640 of TILA was incorporated as the CLA's enforcement device, see 15 U.S.C. § 1667d(a), and *then* stated in § 1640 that "[w]ith respect to any failure to make disclosures required under this part or part D or E of this subchapter [the latter being the CLA], liability shall be imposed only upon the creditor required to make disclosure, *except as provided in section 1641 of this title*." See 15 U.S.C. § 1640(a) (emphasis added). In other words, the right-of-action clause in the CLA expressly adopts the right-of-action clause for the rest of TILA, which itself expressly adopts the assignee defense. To make this even more clear, Congress also directed in subsection (b) of § 1667d of the CLA that the term "creditor" in both § 1640 and § 1641 includes a "lessor" as defined in the CLA. See 15 U.S.C. § 1667d(b). Plaintiff is therefore incorrect that § 1641(a), and the extensive line of authorities

---

[2]    Plaintiff's sole authority to the contrary is Jordon v. Schaumburg Toyota, No. 97cv6697, 1999 WL 116224 (N.D.Ill. Feb. 26, 1999). See Pl.Mem. at 6. However, that decision provided neither precedent nor barest rationale for this proposition. Indeed, Jordon is not even consistent internally, since it expressly holds (without explanation) that § 1640 but not § 1641 – two consecutive sections within Part E of TILA – are integrated in the CLA. See id. at *6 n.5. To the extent Jordon ignores the plain language of § 1641(a), it is simply incorrect and ought not be followed.

construing it, do not control this litigation.  Instead, the plain language of all of the governing statutes unambiguously direct that Defendant cannot be held liable unless the violations alleged were apparent on the face of the assigned lease documents.

This construction falls squarely in line with the Uniform Consumer Leases Act, which has been adopted in Connecticut.  See Conn.Gen.Stat. § 42-390, et seq.  The CLA was used as the model for this uniform legislation, including its provision that "[a]n action … may be maintained against a subsequent holder only if … [a] required disclosure is omitted or can be determined to be incomplete or inaccurate from the face of the record or other documents assigned."  Conn.Gen.Stat. § 42-428(b)(1).  See Uniform Law Commissioners, Official Commentary of the Uniform Consumer Leases Act at § 505, ¶ 2 ("[s]ubsection (b) parallels the federal law provision (TILA Section 131, 15 U.S.C.A. Section 1641) that protects assignees from liability for disclosure violations if the violation is not apparent on the face of the disclosure statement"); id. at § 305, ¶ 6 ("[u]nder the federal Consumer Leasing Act … an assignee is liable for violations of its disclosure provisions only if 'the violation is apparent on the face of the disclosure statement.' 15 U.S.C.A. Section 1641(a).  Section 505 of this Act replicates this federal rule for violations of disclosure rules in this Act.").[3]  Clearly, the recognized interpretation of the CLA's unambiguous language is that assignees are only liable for facially-apparent violations.

---

[3]  Connecticut's uniform act does not itself govern this action because it was enacted after the expiration of the lease at issue in this case.  See C.G.S. § 42-433.

7

Plaintiff makes two arguments in his effort to circumvent the statutes under which he has brought suit and the extensive line of authorities construing them against his position. First, he theorizes that because the CLA states in § 1667(1) that it does not apply to "credit sales" as defined in § 1602(g), and because the original lease here did not meet that definition, only the CLA rather than the rest of TILA applies. See Pl.Mem. at 4-6, 13. Plaintiff is correct that this transaction was not a "credit sale" and that his claim is governed by the CLA, but neither of these facts change that the CLA is *itself* expressly subject to the assignee defense in § 1641(a) according to its plain language. This argument therefore accomplishes nothing except to point out the obvious: that Plaintiff leased the vehicle rather than purchased it. This does not overcome, or even address, the assignee defense in § 1641(a) which by its own terms is equally applicable in both contexts.

Plaintiff's other argument is that this case should be governed by the Supreme Court's ruling in Ford Motor Credit Co. v. Cenance, 452 U.S. 155 (1981), which determined that a particular finance company's involvement in a sale made it a "creditor" under the pre-1980 language of § 1602(f) of TILA. See Pl.Mem. at 6-9. As Plaintiff himself openly admits, Cenance is no longer good law, even for "credit sales" which Plaintiff acknowledges this action does not involve. Congress immediately overturned Cenance by enacting § 602(a) of Public Law 96-221 (1982), which limited the definition of "creditor" to its current form by excluding assignees (i.e., anyone other than "the person to whom the debt arising is initially payable on the face of the indebtedness"). The purpose was to protect third-party assignees from being sued for disclosure violations in contracts between a consumer and dealer. See generally Riviere v. Banner Chevrolet,

8

Inc., 184 F.3d 457, 460 (5th Cir. 1999) (explaining amendment and purpose); Kinzel v. Southview

Chevrolet Co., 892 F.Supp. 1211, 1216 (D.Minn. 1995) (same, and granting summary judgment to

the assignee-defendants for this reason). Plaintiff's theory is that by not enacting similar legislation

for the CLA itself, Congress must have intended assignees to remain within its purview, and that the

reasoning in Cenance should be applied to show that Defendant was "involved enough" in this

transaction to incur liability. See Pl.Mem. at 6-9.[4]

     Plaintiff completely ignores that Congress *has* limited CLA liability for lease assignees, and

that it did so in the very same legislation as for the rest of TILA. Section 1641(a), which sets forth

the assignee defense, was enacted as § 616 of Public Law 96-221 (1982) – the very same act which

limited the definition of "creditor" to overrule Cenance. As explained above, that section explicitly

states that the defense applies to violations of the CLA just like any other part of TILA. Plaintiff is

wrong that Congress immunized assignees of credit sales but not of leases; to the contrary, the very

same legislation expressly did so in both contexts. Not only is Cenance no longer good law, but

Congress's disapproval of Cenance makes even more certain that the statutes under which Plaintiff

has brought suit now prohibit the imposition of liability against Defendant for any violation not

apparent on the face of the assigned lease documents. Plaintiff's utter failure to identify a single

such violation is therefore dispositive of all of his claims under the CLA, as more fully explained in

---

[4]    Plaintiff's heavy reliance on Cenance is surprising given his insistence in the rest of his brief that "th[is] court must disregard all ... case law" decided under the non-CLA portions of TILA – as Cenance was. See Pl.Mem. at 6. Regardless, the decision is wholly unavailing to Plaintiff as explained herein.

Defendant's original Motion for Summary Judgment.

     **C.**     **Defendant Is Not a "Lessor," But is Entitled to Summary Judgment Under the CLA Even if Defendant Could be Deemed as One.**

Defendant contends that this Court must hold that Defendant is an "assignee" under § 1641(a) and therefore cannot be held liable under the facts of this case. Apparently in the alternative to his argument that no assignee defense exists at all under CLA, Plaintiff introduces three arguments to show that Defendant was not an "assignee" but rather a direct "lessor" in this transaction.

Plaintiff's principal argument is that Defendant was so involved in the lease transaction that "the Dealer is but a conduit for [Defendant] and completely under its control," and should therefore be considered a "lessor" in its own right. See Pl.Mem. at 15. Plaintiff recites a litany of examples, such as the following: Defendant approved the customers' credit, provided the dealer with blank lease forms containing Defendant's logo and certain substantive terms, and gave dealers guidelines as to how the forms should be completed. See Pl.Mem. at 7-15. In other words, Plaintiff seeks to hold Defendant liable for someone else's financial disclosures on the ground that Defendant "controlled" other aspects of the transaction.

Plaintiff's argument misleadingly omits that Defendant never imposed any ***generally-applicable rule*** purporting to bind dealers or their customers with respect to the execution, terms, or disclosures of any leases or other transactions which they negotiate between them. To the contrary, Defendant did no more than to set forth guidelines as to the contents of leases ***it would be willing to***

*accept for assignment* from a dealer, in accordance with practices and dealer agreements which are common in the automobile financing industry.  See Statement at ¶¶ 3, 5.  Dealers and customers are free to negotiate whatever terms they wish in their leases; Defendant, however, will agree to take an assignment only if certain items are included and certain procedures are followed.   Most importantly, Defendant never "controlled" the governmental fees of which Plaintiff complains; those charges were calculated, written in, and collected by no one but the dealer.  (Plaintiff unsurprisingly chose to exclude the pages from Defendant's deposition transcript where this was explained.  Those pages are attached hereto as Exhibit K.[5])

These types of arrangements are not only commonplace, but are beneficial and encouraged. The Federal Reserve Board itself generally wishes to "facilitate use of multipurpose standard forms" in lease disclosures, see 12 C.F.R. Pt. 213, Supp.I, Appendix A at ¶ 2(v), and has even provided the following specific example: "An auto dealer and a bank have a business relationship in which *the bank supplies the dealer with credit sale contracts* that are initially made payable to the dealer and provide for the *immediate assignment of the obligation* to the bank.  The dealer and purchaser execute the contract only after *the bank approves the creditworthiness* of the purchaser. Because the obligation is initially payable on its face to the dealer, the dealer is the only creditor in the transaction." 12 C.F.R. Pt. 226, Supp.I ¶ 2(a)(17)(i)(2) (emphasis added).  See Allen v. Jerome

---

[5]   "It is fundamental that one side may introduce only a part of a document or deposition in evidence, but of course it is also well recognized that the other side may later introduce more or the rest of any such document or deposition which was not introduced into evidence." Worden v. Tri-State Ins. Co., 347 F.2d 336, 341 (10th Cir. 1965); Camps v. New York Transit Auth., 261 F.2d 320, 322 (2d Cir. 1958).

Imports, Inc., No. 97cv3847, 1998 WL 751633, *2 (E.D.La. Oct. 26, 1998) (citing this example when dismissing claim against vehicle finance company as "assignee").  Simply put, nothing in the CLA obligates finance companies to surrender their assignee status in order to fix the parameters of the contents of leases they are willing to finance.  To the contrary, the Federal Reserve Board has approved of this efficient and established manner of vehicle financing.

Plaintiff also claims that by collecting a $480 "acquisition fee" in this transaction, Defendant was somehow transformed from an "assignee" into a "lessor."  See Pl.Mem. at 12, 15.  He misunderstands, or simply ignores, the purpose of this charge.  The "acquisition fee" is a common charge which covers various administrative expenses, such as the costs of obtaining a credit report, verifying insurance coverage, checking the completeness of the lease documentation, and entering the lease in data and accounting systems.  Nothing about this fee forfeited Defendant's status as an assignee – indeed, it was properly charged to effectuate the financing assignment which the Iannuzzis had requested.  See Exhibit C.  Similarly, Plaintiff states that "[n]o explanation was provided why [Defendant] would issue a credit in the sum of $5000 plus $300 sales tax [to the consumer for the capitalized cost reduction] had it not received a benefit."  See Pl.Mem. at 21-22.  The point of this contention is incomprehensible, but in any event, it is also completely immaterial to Defendant's assignee status.  As explained in Defendant's original Motion for Summary Judgment, dealers retain the downpayments they collect.  See Exhibit A at ¶ 6.  Nothing in 15 U.S.C. § 1641, or any other provision of TILA generally or the CLA specifically, suggests that assignee status can be lost by virtue of any "credit" relating to a capitalized cost reduction.

12

Plaintiff has raised two additional arguments to suggest that Defendant is a "lessor," which even he realizes merit very little discussion. First he argues that the lease could not have been "assigned" to Defendant because it was "terminated" when he assumed it from the original lessees. See Pl.Mem. at 22.[6] The contention is incomprehensible given that the Assumption Agreement repeatedly states that obligations under the lease will remain ongoing and that its terms remain in full force and effect, see Exhibit D, plus the undisputed facts that Plaintiff retained possession of the vehicle and kept making payments. However, assuming Plaintiff is correct, then his lawsuit would be time-barred because the CLA states that all actions under it "shall be brought within one year of the termination of the lease agreement." 15 U.S.C. § 1667d(c). The assumption occurred in January 2000, more than two and a half years before he commenced this action in September 2002. This half-hearted argument simply cannot save Plaintiff's claim. Should Plaintiff choose to adhere to this theory, Defendant would ask that this Court simply dispose of this action as untimely.

Plaintiff's final argument that Defendant is a "lessor," which is apparently made in the alternative to his second argument, is that the assumption was actually a "modification" of the lease and therefore required new disclosures. See Pl.Mem. at 22-24. This argument is irrelevant because Defendant had already been the assignee of this lease long before that assumption took place. Compare Exhibit C (April 30, 1999 lease assignment) with Exhibit D (February 28, 2000

---

[6] Plaintiff repeatedly cites his Exhibit 18 for the proposition that the original lessees paid a $250 Early Termination Charge. See Pl.Mem. at 22-23. Exhibit 18, however, makes absolutely no discernable reference to any such charge or payment.

assumption). This argument also proves far too much. Regulation M does not define "modification" or explain whether it would require new disclosures, but it does make absolutely clear that "[n]ew disclosures are not required when a consumer lease is assumed by another person, whether or not the lessor charges an assumption fee." 12 C.F.R. § 213.5(c). If Plaintiff was correct in asserting that any "change ... alteration or amendment" constitutes a "modification" under the CLA, see Pl.Mem. at 22-23, and in implicitly suggesting that every "modification" requires new disclosures (which nothing in Regulation M says), then 12 C.F.R. § 213.5(c) could never have any relevance or application. Plaintiff's position is logically untenable and legally unfounded. What happened here was plainly an "assumption by another person," just as the document itself unambiguously states, and just as Regulation M allows without the need for new disclosures. See Exhibit D.[7]

Even if all of Plaintiff's contentions are true – and motor vehicle finance companies throughout the nation are mistaken in considering themselves as the "assignee" and dealers as the "lessor" – that *still* does not mean they automatically incur liability for the dealer's inaccurate disclosures. To the contrary, "[i]f a transaction involves more than one creditor or lessor, *only one* creditor or lessor shall be required to make the disclosures," and "[w]ith respect to any failure to make disclosures required under this part or part D or E of this subchapter [the latter being the CLA], *liability shall be imposed only upon the creditor [or lessor] required to make disclosure*."

---

[7] Plaintiff himself acknowledges that Defendant testified at its deposition that the Assumption Agreement was not a "modification" of the lease, or a "renegotiation" or "extension" of it either. See Pl.Mem. at 23.

15 U.S.C. §§ 1631(b) and 1640(a) (emphasis added).[8] See also 12 C.F.R. § 213.3(b) ("[w]hen a transaction involves more than one lessor, the disclosures required by this part may be made by one lessor on behalf of all the lessors"); 12 C.F.R. Pt.213, Supp.I ¶ 3(c) (permitting a "single lessor [to] provide[] disclosures to a lessee on behalf of several lessors"); 12 C.F.R. § 226.17(d); 12 C.F.R. Pt.226, Supp.I ¶ 17(d); 12 C.F.R. Pt.213, Supp.I ¶ 3(a)(1)(4).[9] Here, Defendant has introduced evidence that the dealer agreed to be responsible for providing the lease disclosures, see Statement at ¶ 3, and Plaintiff has introduced no evidence to the contrary. Nor has Plaintiff even attempted to argue that the dealer was never a "lessor" at all in this transaction, which would obviously be untrue. Thus, even if Defendant could possibly be deemed a "lessor" along with the original dealer in this transaction, Defendant is still entitled to summary judgment because the CLA expressly prohibits the imposition of liability upon such other "lessors."

### D.    Defendant Is Entitled to Summary Judgment On Plaintiff's Previously-Unrevealed Arguments for Liability.

Plaintiff has also raised two completely new arguments for the first time in his opposition and cross-motion brief, which had not been disclosed during the pleading or discovery stages of this litigation. Neither of them should even be entertained by this Court at this late stage, much less

---

[8]    The CLA explicitly directs that the term "creditor" in § 1640(a) includes a "lessor" as defined in the CLA. See 15 U.S.C. § 1667d(b).

[9]    These regulations make clear that Defendant did not assume liability merely because the lease stated "[t]he consumer lease disclosures contained in this lease are also made on behalf of BMW Financial Services," which is nearly verbatim identical to the regulations themselves. See Pl.Mem. at 9 (arguing that this statement nullified the lease's express definition of the term "lessor" as the dealer by its name and address). See Exhibit C at ¶¶ 1, 4.

used to justify denying summary judgment in Defendant's favor.

The first argument is that when Defendant charged Plaintiff twenty cents for each of the 9,341 miles on the vehicle's odometer beyond the 36,025 identified as the maximum in the lease, that charge and the state tax tabulated upon that charge were too high because the parties had verbally agreed to allow Plaintiff an extra 2,000 miles. See Pl.Mem. at 18-19; Pl.Ex. 19 at ¶¶ 4-5.[10] Defendant emphatically objects to this newfound claim which not only appears nowhere in Plaintiff's Amended Complaint or discovery responses, but flatly contradicts those responses. During the discovery phase of this litigation, Plaintiff swore under oath that the sole basis for his claim that Defendant "charg[ed] plaintiff an inaccurate sum for excess mileage" (see Am.Compl. at ¶ 21) was that Defendant could not corroborate its mileage reading records with an odometer statement, but that Plaintiff himself did not know what the correct mileage should have been. See Exhibit H at ¶¶ 10-12; Exhibit I at ¶ 11. Defendant also swore that the sole basis for his challenge to the state tax was that it was not itemized. See Exhibit H at ¶ 7. Now, Plaintiff suddenly remembers exactly what the correct mileage and tax should have been, and that the reason was a verbal agreement with Defendant inconsistent with all other record evidence and discovery responses. See Pl.Ex. 19. He even dares to accuse Defendant of having "*falsified* its affidavit to this Court" setting forth the excess mileage tabulation, apparently for this reason. See Pl.Mem. at

---

[10]    Plaintiff asserts that his Exhibit 15 also evidences this assertion, but nothing in it makes any reference to an agreement for additional miles. To the contrary, Exhibit 15 refers to advising the customer that "he will be billed for … mileage…" See Pl.Ex. 15 at p. 50, fifth entry (middle of page).

19 (emphasis in original).

Plaintiff's new theory must be excluded from this Court's consideration of the motion and cross-motion for summary judgment.  First, Federal Rule 37(c)(1) plainly states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) [governing discovery] … is not … permitted to use as evidence … on a motion any … information not so disclosed."  See, e.g., Hyun v. South Kent School, No. 3:95cv2235, 1997 WL 597122 (D.Conn. Sept. 17, 1997) (excluding information undisclosed in discovery under this rule).  Second, it is well-settled that a Court presented with a summary judgment motion cannot consider factual assertions inconsistent with pre-motion interrogatory responses.  Reisner v. General Motors Corp., 671 F.2d 91, 93 (2d Cir. 1982).  Indeed, the Second Circuit has affirmed an award of monetary sanctions under Rule 11 because it was "unreasonable for plaintiffs' counsel to file affidavits … and supplemental interrogatory answers in which the plaintiffs contradicted their earlier deposition testimony and interrogatory answers" to oppose a summary judgment motion.  Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000).  Plaintiff stipulated, and this Court ordered, that all written discovery in this case was to be completed by May 15, 2003.  See Order Approving Planning Report dated December 9, 2002.  Defendant relied on that deadline and filed its summary judgment motion upon the sworn responses Plaintiff supplied.  Introducing this previously-withheld factual assertion at this late stage is prejudicial and unacceptable.[11]

---

[11]    In the *very same envelope* as his Opposition and Cross-Motion for Summary Judgment, Plaintiff sent Defendant "Supplemental Responses" to Defendant's Interrogatories dated January 26, 2004 (more than 8 months after the
(continued …)

17

Even if this Court could possibly consider the Plaintiff's new story, it still cannot defeat summary judgment under either of the causes of action left in the Amended Complaint. First, the CLA is concerned with lease disclosures at and before consummation; it does not apply to disputes over post-termination mileage charges. See 15 U.S.C. §§ 1667a, 1667b; see 12 C.F.R. Pt.213, Supp.I ¶ 4(m)(2)(3)(ii) (CLA "does not preclude a lessor from recovering other charges from the lessee at the end of the lease term. Examples of such charges include ... [e]xcess mileage charges."). Second, the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a, et seq. ("CUTPA") would not permit Defendant to be held liable for allegedly breaching a verbal agreement with Plaintiff to allow him additional mileage, because "[a] simple breach of contract does not offend traditional notions of fairness, and ... standing alone does not offend public policy to invoke CUTPA." Boulevard Asso. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1038-39 (2d Cir. 1995); Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc., 41 Conn.Supp. 575, 580 (1991) ("[a] simple breach of contract, even if intentional, does not amount to a violation of the Act"). This evidence therefore cannot save Plaintiff's complaint from summary judgment even if it were properly before this Court.

The second argument which Plaintiff introduces now for the first time is that the Early Termination Fee formula in the lease was not "clear and conspicuous" because five paragraphs in

---

court-ordered deadline) revealing for the first time his intention to raise this "verbal agreement" argument. Any contention that this satisfies Federal Rule 37(c)(1) would obviously render the rule a nullity. See Reisner, 671 F.2d at 93 (late-filed supplemental responses did not validate inconsistency with earlier responses). Plaintiff's egregiously late "Supplemental Responses" are an admission, not a cure, of his discovery abuses and outright ambush of Defendant.

the lease may relate to its tabulation.  See Pl.Mem. at 24-27.  Again, this argument ought not be entertained because nothing about it was ever raised in Plaintiff's Amended Complaint or discovery responses.    To the contrary, when asked to explain all of the bases for his lawsuit, Plaintiff provided responses which he swore under oath constituted them – none of which mentioned the early termination formula, the "clear and conspicuous" rule, or the lease provisions he now challenges.  See Exhibit H at ¶¶ 2-12; Exhibit I.[12]  This Court should preclude Plaintiff from raising these claims now for the first time after having indefensibly concealed them during written discovery.  See Federal Rule 37(c)(1); Margo, 213 F.3d at 65; Reisner, 671 F.2d at 93.[13]

    Once again, even if Plaintiff could properly introduce such a theory, he could not prevail upon it.  The lease's "early termination" warning clause is verbatim identical to the Federal Reserve Board's model CLA disclosure provided in 12 C.F.R. Pt. 213, Appendix A.  That model warning instructs the consumer to look to the terms of the lease for further explanation, which the Plaintiff's lease does.  See 12 C.F.R. Pt. 213, Supp.I, ¶ 3(a)(1)(2) (addressing the "Clear and conspicuous standard" and stating that "appendix A of this part contains model forms that meet this

---

[12]    Plaintiff summarily cites Paragraph 7 of his Amended Complaint as the source of this challenge, see Pl.Mem. at 24, but this was merely a conclusory allegation that Defendant "did not provide the information required" by the CLA which gave no notice that a "clear and conspicuous" claim was being asserted – especially in light of Plaintiff's discovery responses to the contrary.  See Exhibit H at ¶¶ 2-12.

[13]    Nothing about either of Plaintiff's newfound theories can be said to have first become known (or even mentioned in) Defendant's deposition, or at any other time after the close of written discovery in this action.  Indeed, Plaintiff did not even ask Defendant any questions at the deposition which related to these theories or suggested an intention to introduce them now.

standard.").[14]  The Federal Reserve Board has also approved the components in Defendant's early termination formula, see 12 C.F.R. Pt. 213, Supp.I, ¶ 4(g), and Plaintiff does not contend otherwise. Indeed, the Board acknowledged the unavoidable complexity of early termination disclosures when it determined that "[d]escriptions that are full, accurate, and not intended to be misleading will comply with § 213.4(g)(1), even if the descriptions are complex."  12 C.F.R. Pt. 213, Supp.I, ¶ 4(g)(1)(2).  Plaintiff does not, and cannot, contend that Defendant's early termination terms are anything less than "full" and "accurate," nor has he introduced any evidence that they were "intended to be misleading."  To the contrary, they truthfully explain the formula, they are legibly printed in the standard font and typesize, and they are logically divided into discrete paragraphs containing five or fewer sentences each.  See Exhibit C.  Plaintiff's claim would necessarily fail even if his decision to withhold it from discovery did not preclude its consideration now.

Finally, Plaintiff makes one more argument that something about his lease was not "clear and conspicuous."  Paragraph 7 of the lease states, "Your first Monthly Payment of  $484.65  is due on  04/30/99 , followed by  35  payments of  $484.65  due on the  1ST  of each month."  See Exhibit C at ¶ 7.  Plaintiff contends that this language suggested that the second monthly payment would be due the day after the lease was signed (which was April 30, one day before May 1), but that Defendant did not actually expect the second month's payment until a month later (June 1). See Pl.Mem. at 19-21.  In other words, Plaintiff is complaining that his predecessors were given an

---

[14]    See 12 C.F.R. Pt. 213, Supp.1 at App.A(1) (users of model forms "properly will be deemed to be in compliance with the regulation").

extra month longer to make the second payment than they should have had. This argument fails to entitle Plaintiff to summary judgment for several reasons. First and most importantly, Paragraph 7 of the lease is *verbatim identical* to the Federal Reserve Board's model CLA disclosure provided in 12 C.F.R. Pt. 213, Appendix A, and users of model forms "properly will be deemed to be in compliance with the regulation." See 12 C.F.R. Pt. 213, Supp.I at App.A(1). Second, the paragraph does not purport to require a 24-hour deadline for the second payment; the only "discrepancy" and "human error" mentioned by Defendant in its deposition was that it accepted this lease for assignment despite that no immediate second payment would be required. See Pl.Ex.1 at 47. Finally, there was never anything "unclear" about this paragraph, because both parties understood exactly when the second payment was due (June 1) and operated on their common interpretation for the lifetime of the lease. See Pl.Ex.17. The record contains no evidence of confusion, such as an earlier payment attempt or demand. There can be no question that Paragraph 7, both under the plain language of Regulation M and the actual effect in this case, were "reasonably understandable," which is precisely what the "clear and conspicuous" standard requires. See 15 C.F.R. Pt. 213. Supp.I at ¶ 3(a)(2). Plaintiff's theory necessarily fails, and Defendant is entitled to summary judgment.

### E.    Defendant Is Entitled to Summary Judgment On Plaintiff's Unfair Trade Practices Claim.

Finally, Defendant is entitled to summary judgment on Count Three of the Amended Complaint, which asserts a claim under CUTPA based upon the previous allegations. Plaintiff

concedes that his CUTPA claim is predicated exclusively upon the same arguments and evidence as his CLA claim under Count One. See Pl.Mem. at 28. Because he cannot prevail upon that claim as a matter of law, Defendant is likewise entitled to summary judgment upon the CUTPA claim for all of the same reasons. See, e.g., Hildabrand v. DiFeo Partnership, Inc., 89 F.Supp.2d 202, 209-10 (D.Conn. 2000) (awarding summary judgment against CUTPA claim after finding no violation of the CLA).

## III.     CONCLUSION

Faced with the unambiguous and overwhelming authorities against holding Defendant liable for a dealer's alleged disclosure violations, Plaintiff has resorted to impermissibly changing his story and effectively challenging the nation's entire motor vehicle assignee-financing system. Defendant is immune from liability as an "assignee" exactly as the lease and CLA state, and even if Defendant was somehow a "lessor," it is still immune according the plain language of the CLA and its regulations imposing exclusive responsibility upon the dealer. This Court therefore should grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion.

THE DEFENDANT
BMW FINANCIAL SERVICES NA, LLC

By: _____
       Adam J. Cohen (ct 19877)
       Pullman & Comley, LLC
       850 Main Street, P.O. Box 7006
       Bridgeport, CT  06601-7006
       Telephone (203) 330-2000

22

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed on the date hereon to:

**Attorney for the Plaintiff:**
Bernard T. Kennedy, Esq.
49 Rose Street, Suite 301
Branford, CT  06405
Telephone:  (203) 481-1322

20 Yacht Club Drive #214
North Palm Beach, FL  33408
Telephone: (561) 776-6335

**The Plaintiff:**
Michael W. Kennedy, Esq.
101 W. Main Street
Branford, CT  06405
Telephone:  (203) 481-4040

Adam J. Cohen