UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL W. KENNEDY
    Plaintiff,

V.                                                                      CIVIL ACTION NO.
                                                                                 3:02CV1754 (SRU)
BMW FINANCIAL SERVICES, N.A.
    Defendant.                                                           MARCH 17, 2004

PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff submits his reply to Defendant BMW Financial Services, N.A. ("BMW")

Objection to Plaintiff Michael W. Kennedy's ("Kennedy")

Cross-Motion for Summary Judgment.

**I.    INTRODUCTION**

Kennedy has supported his Cross-Motion for Summary Judgment that BMW has violated the Consumer Leasing Act 15 U.S.C. § 1667 *et seq.* First, BMW was the lessor in the transaction between itself, the original lessee and Kennedy. In the alternative, BMW was the *original* lessor in original lease between it and Iannuzzis because the lease so states and because of BMW's substantial involvement in the lease contract. Second, its disclosures were inaccurate. Third it overcharged Kennedy sums of money for additional mileage and sales tax. Fourth its early termination disclosures were not clear and conspicuous.

**II. DISCUSSION**

      **A.**  Under § 1667 entitled Definitions, <u>"assignee"</u> is <u>not</u>

defined for chapter 15 U.S.C. § 1667 *et seq.* BMW continues to use a term that is not defined in the Consumer Leasing Act definitions.

BMW wrongfully continues to support its position to assignee liability when it cited Rivera v. Banner Chevrolet, Inc., 184 F.3d 457 (5th Cir. 1999) and Kinzel v. Southview Chevrolet Co., 892 F.Supp 1211, 1216 (D. Minn. 1995). See Def. Mem. At 8-9. Defendant continues to confuse apples with oranges. The above cases were brought under the Truth in Lending Act and Regulation Z which may be found at 12 C.F.R. § 226. The pending case was brought under the Consumer Leasing Act and Regulation M, 12 C.F.R. § 223.

BMW in its Mem. at 11-12 discusses banks and credit sales, citing 12 C.F.R. Supp.I ¶ 2(a)(17)(i)(2) and Allen v. Jerome Imports, Inc., No. 97cv3847, 1998WL 75163. Once again it is presenting information relating to purchases and not leases. The pending case was brought under the Consumer Leasing Act and Regulation M at 12 C.F.R. §223.

Assuming arguendo that BMW could be an assignee, which Kennedy denies, its status would be an **assignee/lessor** due to the substantial involvement between itself and the lessor dealer. See Pl. Mem. at 6. Plaintiff is entitled to Summary Judgment.

**B. BMW WAS A LESSOR IN THIS TRANSACTION**.

§ 1667 (3) defines the term "lessor" "a person who is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease." BMW was the lessor pursuant to the definition. See Pl. Mem. Exhibit 2 at ¶ 4.

2

BMW in its. Mem.at 10-11 claims that it only sets *guidelines* as to the content of lease that it will accept from dealers and never imposed any *generally applicable rule.* Then BMW contradicts itself and states its Mem. at 11, **"Defendant, however, will agree to take an assignment only if certain items are included and certain procedures are followed."** Simply put, if a dealer fails to follow the rules set by BMW then it will neither purchase the motor vehicle or fund the money. BMW controls its dealers and uses them as a conduit in transactions between BMW and the consumer.

BMW has twisted Kennedy's argument in Pl. Mem. at 22. See Def. Mem. at 13. Kennedy said that the lease was terminated by Iannuzzis, who paid an early termination fee of $250 and signed an odometer statement for BMW. Therefore, the lease could not be assigned to him because it was terminated. Clearly, BMW understood Kennedy brought his action against BMW because BMW was the original lessor between itself and Kennedy. To state otherwise would not be an accurate representation of Kennedy's statement.

Kennedy, in error, misidentified in Pl. Mem. at 22 Exhibit 18 shows that Iannuzzis paid $250 early termination fee as a penalty for terminating the lease. Correctly attached is Exhibit 20 displaying the early termination fee paid by the original lessees Iannuzzis.

BMW's argument in Def. Mem. at 13-14 that new disclosures were unnecessary was wrong. However, BMW was correct when it stated that Regulation M does not define the word "modification." What BMW

3

misunderstood in Pl. Mem. at 22-23, was that the lease between BMW and Kennedy was a new lease. BMW *wrote* and chose to caption the document "Transfer of Interest and Assumption of Obligation under a Motor Vehicle Lease Agreement", Pl. Mem. Exhibit 11 and chose to attach a copy of Exhibit 2 Pl. Mem. BMW clearly stated "The parties hereto agree that this transfer and modification of the subject lease . . . ." Exhibit 11. BMW chose to write **modification** into the agreement. It's noteworthy that BMW in Def. Mem. failed to explain what it meant by **modification.** One would have to presume that if BMW had a valid explanation it would have said so. However, the court can rely on Blacks Law Dictionary Fifth Edition, 1979 West Publishing Co. that a "modification" is "a change; an alteration or amendment which introduces new elements into the details or cancels some of them."

It was BMW and not the "leasing dealer" that chose the term **modification.** The reality was BMW created a new lease obligation with Kennedy, using the old lease as part of the basis of the transaction between it and Kennedy to create new obligations. In this instance, BMW was the sole lessor and Kennedy became the original lessee. BMW was obligated to provide Kennedy new disclosures and it alone chose to use the lease between it and Iannuzzis Pl. Mem. Exhibit 2 and incorporate it together with Pl. Mem. Exhibit 11 containing the terminology *modification.* See Reg. M § 213.3(a) (3) new disclosures are required by the CLA prior to consummation. That being true, when BMW incorporated Exhibit 2 into the agreement in Exhibit 11 with Kennedy, it was obligated to provide accurate

4

disclosures. Also true, BMW must provide accurate disclosures resulting from its substantial involvement between it and the Dealer.

BMW correctly called the transfer a modification between it and Kennedy. Otherwise, BMW would not have collected $250 from the Iannuzzis as an early termination fee Exhibit 20 nor obtained the odometer statement, Pl. Mem. Neither exhibit 5 (required by Federal Law) nor (collected $450 from Kennedy without disclosing why), Exhibit 21. See Pl. Mem. Exhibit 19 Kennedy's affidavit.

It is illogical that BMW refused to admit that the transaction between it and Kennedy was a modification; all it needs to do is refer it Exhibit 11. BWM created Exhibit 11 and all errors are construed against the Scrivener. BMW was obligated to provide new disclosures. See Reg. M, 12 C.F.R.§ 213.3.

BMW in Def. Mem. at 14, refers to "motor vehicle finance companies throughout the nation are mistaken in considering themselves as the 'assignee' and dealers as the 'lessor . . . .'" Here again BMW puts a spin on what it would like to be the facts and the law. In the instance case, BMW was not acting as a finance company. That thinking is Truth in Lending terminology and Reg. Z. BMW was not financing anything. It owned the vehicle, see Exhibit 13; Exhibit 2 ¶4. BWM was the *lessor* that owned the motor vehicle collecting payments from Kennedy for use of the motor vehicle.

For BMW to act as a *finance company*, Def. Mem at 14 the financing document would include a **finance charge.** A consumer credit transaction is subject to Truth in Lending only when there is a written agreement to pay the debt

5

in four or more installments or when "a finance charge is or may be required." See Official Staff Commentary § 226.2((a)(17)(i)-1.

The purpose of the finance charge is at the heart of Truth in Lending. An accurately calculated finance charge is a necessary precondition to an accurately disclosed Annual Percentage Rate ("APR"). See Ralph Rohner, The Law of Truth in Lending, ¶ 4.01[2][c][i] (1984). The finance charge is the cost of credit as a dollar amount and the APR reflects that cost on yearly percentage rate basis. Together, these two disclosures are designed to provide an accurate price tag for credit. They are the two most important disclosures required under TILA. See First Nat'l Bank v. Office of the Comptroller, 956 F.2d 1456 (8th Cir. 1992).

But see Pl. Mem. Exhibit 2, nowhere on that document was there either a "finance charge" in dollars or an "APR". BMW has once again, confused TILA with the CLA.

The reality of all lessors in this nation is they do not consider themselves assignees and none have ever raised the defense that they are assignees. The assignee defense is a novel position taken by BMW and it has not substantiated that claim with case law. However, Kennedy has cited cases that did not raise such a novel defense. See Wiskup v. Liberty Buick, Inc. U.B. Vehicle Leasing Inc., 953 F. Supp. 958 (N.D. Ill 1997); Lundquist v. Security Pacific Automotive Financial Services, Corp., 993 F.2d 11 (2nd Cir. 1993); Clement v. American Honda Finance Corp., 145 F. Supp. 2d 2001 (D. Conn. 2001); Applebaum v. Nissan Motor Acceptance Corporation, 226 F.3d 214 (3rd Cir. 2000); Wiskup v.

6

Liberty Buick, Inc. U.B. Vehicle Leasing Inc., 953 F. Supp. 958 (N.D. Ill 1997); Jordan v. Schumburg Toyota & Toyota Motor Credit Corporation, 1999 U.S. Dist. LEXIS 2553; Demitropoulos v. Bank One Milwaukee, N.A.915 F. Supp. 1399.

Kennedy is entitled to summary judgment.

### C.   PLAINTIFF'S DISCOVERY DISCLOSURES WERE TIMELY MADE

BMW was in error when it alleges it was not informed prior to receiving the opposition papers and cross motion brief that plaintiff did not plead that the excess mileage charge was inaccurate and the Early Termination Formula was not clear and conspicuous.

Plaintiff's amended complaint at ¶ 7 read "Defendant BMW did not provide the information required to be disclosed by 15 U.S.C. § 1667 et seq and Regulation M there under at or prior to consummation of the transaction.

Plainly, neither factual specifics nor statutes need be alleged in federal notice-pleading complaint. Swierkiewich v. Sorema N.A., 534 U.S. 506 (2002). The . . . Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim . . . . Following the simple guide to Rule 8(f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the

7

outcome and accept the principle that the purposes of pleadings is to facilitate a proper decision on the merits. Conley v. Gibson, 355 U.S. 41, 48 (1957).

In Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163,168-169 (1993) The Supreme Court again confirmed that the Rules do not permit the courts to dismiss claims for lack of factual specificity under Rule 12 (b)(6). Under the Federal Rules and Supreme Court interpretation thereof, at trial, plaintiff can prove whatever facts are consistent with the notice pleading complaint.

BMW's second argument also is without merit. This matter does not have a "breach of contract" claim as BMW implies, Def. Mem at 18.

This Court granted plaintiff permission to take the deposition of BMW no later than December 31, 2003. Plaintiff deposed BMW via Rule 30(b)6 on December 16, 2003. The deposition was received from the reporter at the end December. In January 2004 Kennedy's Objection to Defendant Motion for Summary Judgment and his Cross-Motion for Summary Judgment was prepared.

Plaintiff mailed supplemental responses on January 26, 2004 to BMW's interrogatories pursuant to Rule 26(e)(2) "A party must supplement a response to an interrogatory . . . that the party learns was incorrect or incomplete when made." See, Rodrigtuez v. Ibp. Inc., 243 F.3d 1221, 1229 (10th Cir. 2001); Exhibit 21. When a party learns that an earlier disclosure was incomplete and the information had not been made know to the opposing party during the discovery process in writing a supplemental response is required. Rule 26(e)(1). Klonoski v. Mahlab,

8

156 F.3d 255, 268 (1st Cir. 1998). (Rule 26 provides no exception for documents found after discovery deadlines have passed) (Emphasis added). Supplemental disclosures under Rule 26(e)(2) must be supplemented "seasonably".

### D. BMW'S INACCURATE EXCESS MILEAGE CHARGE AND THE EARLY TERMINATION FORMULA IS NOT CLEAR NOR CONSPICUOUS AND CUTPA VIOLATION

BMW has no claim to surprise because the documents Kennedy replies upon were supplied to him by BMW. For example, Pl. Mem. Exhibit 15, p. 48 "Car was in accident and is in repair shop. Give one month ext to help bring account current"; When plaintiff inquired of BMW's representative at the 30(b)(6) deposition whether the information in was accurate, BMW responded in the affirmative, Pl. Mem.Exhibit 1, Page 58; Pl. Mem. at 18. When BMW was asked were the documents kept in the ordinary course of business the response was "Correct. Correct." Exhibit 1, Page 59. Further when asked if one could make the presumption that based on their training and experience, they should be accurate. BMW responded "They should be accurate." Exhibit 1 Page 59.

It's unusual that BMW was raising objections. The question is why BMW has continued to deny Def. Mem.at 16-18 that by combining the original lease Exhibit 2 with the lease modification Exhibit 11 and Exhibit 15 it provided plaintiff **38,025** miles. Why does BMW claim an odometer reading of 36,025 when the documents it supplied plaintiff contradict the true mileage allowed?

Why does BMW not admit that the mileage on the vehicle was **42,000** as set forth in its documents Pl. Mem.Exhibit 15 Page 51-52 and attempt to rely on

9

an inaccurate odometer reading of 45,366? See Def. Mem. at 16, claim of excess mileage of 9,341 miles plus allotted miles of 36,025 Exhibit 2. BMW failed to produce in discovery an odometer statement when it sold the auto. The truth is BMW did not prepare an odometer statement or know what that reading was at time of sale pursuant to the Federal Odometer Regulations 49 C.F.R. §580.7. BMW has no personal knowledge of the true mileage and refuses to rely on its own documents that the reading was **42,000**. At lease termination the odometer reading was 42,000 less 38,025 allotted miles which equals 3975 over miles not 9341 as BMW alleges.

Plaintiff is confident in his assessment in Pl. Mem. 16-22 pertaining to lease violation by BMW and his assessment in Pl. Mem. 24-27. To further reply to BMW's objection would be redundant. The same holds true for the violations of CUTPA. Plaintiff is entitled to summary judgment.

**CONCLUSION**

Based on the undisputed material facts, BMW violated the Consumer Leasing Act and the Connecticut Unfair Trade Practices Act. Therefore, plaintiff is entitled to Partial Summary Judgment and thereafter seeks costs, expenses, actual damages, punitive damages and attorney fees.

                                                        THE PLAINTIFF

                                                        Bernard T. Kennedy Fed. Bar #ct00680
                                                        49 Rose Street, #301
                                                        Branford, CT 06405
                                                        (203) 481-1322

Case 3:02-cv-01754-CFD Document 78 Filed 03/18/2004 Page 11 of 11

11