**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL W. KENNEDY,<br>Plaintiff | : | |
| v. | : | Civil Action No.<br>3:02 CV 1754 (CFD) |
| BMW FINANCIAL SERVICES, N.A.,<br>Defendant | : | |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Michael Kennedy filed this action against defendant BMW Financial Services, N. A. ("BMW"), alleging that BMW violated the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667 et seq., the Motor Vehicle Information and Cost Saving Act ("Odometer Act"), 49 U.S.C. § 32701 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., in relation to a motor vehicle lease agreement assumed by and transferred to Kennedy.[1]

The defendant has raised the affirmative defenses provided under the CLA that any inaccuracies in the lease agreement are not attributable to BMW, were unintentional bona fide errors, or occurred despite BMW's reasonable, good-faith efforts to comply with all obligations. See 15 U.S.C. § 1640(c),(f); 15 U.S.C. § 1641(a). The defendant further has raised the affirmative defenses that Kennedy has unclean hands and has failed to mitigate his damages. Finally, BMW has counterclaimed against Kennedy for breach of the lease agreement and

[1] The action was removed to federal court by the defendant pursuant to 28 U.S.C. § 1446. This Court's subject matter jurisdiction is based on 28 U.S.C. § 1331 and § 1346.

Kennedy's claims under the Odometer Act were dismissed by the Court in a Ruling filed October 3, 2003. See Doc. # 37. His remaining claims are those brought under the CLA and CUTPA.

damage to the leased vehicle. Kennedy seeks declaratory and injunctive relief, actual and punitive damages, and attorney's fees; BMW seeks compensatory damages, attorney's fees, and costs.

The parties have filed cross-motions for summary judgment.

## I. Background[2]

On April 30, 1999, Michael C. Iannuzzi and Michael P. Iannuzzi leased a new 1999 BMW 328IC convertible from the Herb Chambers 1186, Inc. automobile dealership ("Herb Chambers") in Boston, Massachusetts. This was a "closed-end" motor vehicle lease with a term of 36 months.[3] The Iannuzzis paid $6,960.15 at signing, with the outstanding balance to be paid in monthly installments of $484.65. The lease also included a mileage allowance of 36,000 miles over the life of the lease, with an excess mileage charge to be billed at $0.20 per mile. The lease agreement was prepared on preprinted forms supplied to the dealership by BMW Financial Services. Herb Chambers subsequently assigned its interest in the lease and the monies collected from the Iannuzzis to BMW.

On January 28, 2000, the Iannuzzis transferred their interests in the lease to Michael Kennedy. The Iannuzzis and Kennedy signed a preprinted Transfer of Interest and Assumption

---

[2] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment papers, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

[3] "In a 'closed-end' lease, sometimes referred to as a 'walk-away' lease, the lessee is not responsible for the residual value of the leased property at the end of the lease term. . . . Thus, it is the lessor that assumes the risk by guaranteeing the residual value of the leased vehicle at the end of the lease term." Pettola v. Nissan Motor Acceptance Corp., 44 F. Supp. 2d 442, 443 n.1 (D. Conn. 1999).

of Obligation form prepared by BMW. When the Iannuzzis transferred the lease to Kennedy, there were 27 monthly payments of $484.65 remaining. In addition, as part of the lease assumption procedure, the Iannuzzis paid an early termination fee of $250, and Kennedy paid an acquisition fee of $450. Kennedy continued to make payments on the convertible through the expiration of the lease term in May 2002.[4] Included in Kennedy's end-of-lease charges from BMW was a bill for $1,868.20 for 9,341 excess miles, plus $160.53 in associated sales tax.[5]

Kennedy now claims that, at the original lease signing, BMW overstated the title, registration, and license fees due on the automobile, and that this caused BMW to overstate the correct total payment on the lease. Kennedy also argues that BMW miscalculated his excess mileage at the lease's termination, and that his excess mileage fees and the sales tax on those fees were overstated. Finally, Kennedy charges that the original lease did not correctly state the due date for the second monthly lease payment.[6]

---

[4] Although the lease expired on May 1, 2002, Kennedy was involved in an car accident and had to take the convertible to a body shop for repair. BMW gave him a one-month lease extension so that his account would not enter default for failure to turn in the car. The convertible was returned to BMW in June 2002, at which point the company conducted its standard lease-end inspection and billing.

[5] Kennedy's total balance due at the end of the lease was $2,975.45. Of the charged items, Connecticut sales tax was assessed on Kennedy's remaining base payment of $457.22, disposition fee of $350.00, and excess mileage fee. Kennedy disputes only the excess mileage fee and the sales tax (both on the ground that the tax was not itemized and also that the component of the sales tax charge attributable to his excess mileage fee was incorrectly calculated); he has not challenged any of the other entries on his end-of-lease balance statement.

[6] Some of the parties' papers include a dispute over billing for "VIN etch fees," charged to the Iannuzzis for etching a vehicle identification number on some of the BMW convertible's components. No allegations related to the VIN etch fees appear in Kennedy's amended complaint or in his summary judgment papers. The Court therefore will not consider the VIN etch dispute in ruling on the cross-motions for summary judgment.

## II. Discussion

Kennedy claims that all these alleged miscalculations and discrepancies violate both the Consumer Leasing Act and the Connecticut Unfair Trade Practices Act. BMW responds that it is not subject to liability under the CLA for Kennedy's claims, and that even if it were found to be liable under that statute, its conduct does not rise to the "unfair" or "deceptive" standard required to find a CUTPA violation. The claims under each statute will be examined in turn.

### A. Consumer Leasing Act

The Consumer Leasing Act ("CLA") was enacted in 1976 as an amendment to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. Like the rest of TILA, "the CLA is a disclosure rather than regulatory statute." Turner v. General Motors Acceptance Corp., 180 F.3d 451, 454 (2d Cir. 1998). The CLA extends TILA's credit disclosure requirements to consumer leases; its primary purpose is to "assure a meaningful disclosure of the terms of leases . . . so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Because lease financing had become an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." Id. The CLA thus requires lessors of personal property to make certain disclosures "in a clear and conspicuous manner" upon entering into a lease.[7] 15 U.S.C. § 1667a. The statute creates a private right of action against lessors who breach the disclosure requirements. See 15 U.S.C. § 1667d; 15 U.S.C. § 1640.

In passing the CLA, Congress also delegated to the Federal Reserve Board authority "to

[7] The CLA applies to all leases for the use of "personal property" having a term "exceeding four months" that have a "total contractual obligation not exceeding $25,000." 15 U.S.C. § 1667(1). Neither party disputes that the CLA applies to Kennedy's lease.

issue regulations 'to update and clarify the requirements and definitions applicable to lease disclosures" and to publish "model disclosure forms to facilitate compliance with [the statute's] requirements." 15 U.S.C. § 1667f(a)(1), (b)(1). Those regulations, collectively referred to as "Regulation M", are codified at 12 C.F.R. § 213. The Federal Reserve Board also has issued staff commentary to Regulation M. See 12 C.F.R. § 213, Supp. I. Courts are to defer to these regulations and associated commentary when interpreting the CLA. See Ford Motor Credit Corp. v. Milhollin, 444 U.S. 555, 560 (1980); see also Murphy v. Empire of America, FSA, 746 F.2d 931, 933 (2d Cir. 1984) (holding that Federal Reserve Board regulations pertaining to TILA should be accepted by the courts and that Board commentary on the statute or regulations should be considered dispositive unless "demonstrably irrational").

BMW first claims that it is immune from liability under the CLA because it is an assignee of the original lessor, Herb Chambers. In support of its argument, BMW points to the language of 15 U.S.C. § 1641(a), which provides that "any civil action for a violation of [TILA] . . . which may be brought against a creditor may be maintained against the assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." Kennedy argues that due to its extensive involvement with Herb Chambers' leasing procedures, BMW should be considered a second lessor in the transaction rather than an assignee and fully subject to liability under the CLA.[8]

---

[8] Kennedy makes a second argument that BMW should be considered a lessor for purposes of the CLA because it terminated the Iannuzzis' lease in 2000 and then negotiated either a new lease or modified lease with Kennedy, either of which would trigger new disclosure requirements. Kennedy, however, did not raise this argument in his Amended Complaint, bringing it up for the first time in his Memorandum in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment as to Liability Only [Docs. # 57-58]. See id. at 22-24.

The CLA defines a lessor as "a person who is regularly engaging in leasing, offering to lease, or arranging to lease under a consumer lease." 15 U.S.C. § 1667(4). The staff commentary to Regulation M further defines an arranger of a lease as one who "has knowledge of the lease terms and participates in the preparation of the contract documents required in connection with the lease." 12 C.F.R. § 213.2(h), Supp. I. The commentary then offers as a prototypical example of an arranger "an automobile dealer who, pursuant to a business relationship, completes the necessary lease agreement before forwarding it for execution to the lease company (to whom the obligation is payable on its face) . . . ." Id. That commentary would suggest that Herb Chambers, as the auto dealer that completed the lease documents, would be

---

"[A] memorandum in support of a motion for summary judgment is not the proper place to present new claims which, in effect, amend the complaint." Coppola v. Conn. Student Loan Found., 1989 U.S. Dist. LEXIS 3415, *9 n.14 (D. Conn. Mar. 21, 1989). Moreover, the Court finds Kennedy's argument without merit. The document that the Iannuzzis and Kennedy signed was entitled "Transfer of Interest and Assumption of Obligation." The substance of that document does not support the conclusion that the Iannuzzis' lease was terminated, as the form stated that "all the Lease terms and provisions remain unchanged and in full force and effect. Transferor[s] [here, the Iannuzzis] shall remain liable for the indebtedness and the provisions thereof may be enforced jointly and/or severally against both or either Transferor or Transferee." Doc. # 70 at Exh. 11. Kennedy did not provide any new down payment or security deposit, and assumed only the 27 payments remaining on the Iannuzzis' original lease. See id. This transaction is consistent with a lease assumption, rather than a new lease.

Nor can the Transfer of Interest form be considered a modification, as the form's plain language indicates that all lease terms and provisions remain "unchanged and in full force and effect." The only modification to the lease was the addition of Kennedy as the assignee of the Iannuzzis' interest in the lease. Regulation M clearly provides that "new disclosures are not required when a consumer lease is assumed by another person, whether or not the lessor charges an assumption fee." 12 C.F.R. § 213.5. Therefore, BMW's status as a lessor cannot be predicated on its entering into a new lease or a modification with Kennedy in 2000, as neither of these events occurred. Nor can BMW be found liable under the CLA for failure to make disclosures at the time when the lease was assigned to Kennedy. The Court will consider only BMW's involvement in consummating the original 1999 lease in determining whether BMW may be found liable as a lessor or if BMW is entitled to the protections afforded assignees under 15 U.S.C. § 1641(a).

considered the "lessor" in the transaction with the Iannuzzis.

The Regulation M staff commentary, however, also states that "an assignee *may* be a lessor for purposes of the regulation in circumstances where the assignee has substantial involvement in the lease transaction." Id (emphasis added). BMW appears to have been substantially involved in Herb Chambers' lease transactions, as the dealership completed its lease on preprinted forms supplied by BMW and structured the lease terms in accordance with BMW guidelines. The lease agreement itself, although identifying Herb Chambers as the "Lessor," additionally states that "The consumer lease disclosures contained in this lease are also made on behalf of BMW Financial Services NA, Inc." See Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment at Exh.C.

The Second Circuit has not spoken on whether automobile lease financing companies may avail themselves of the protections awarded assignees under 15 U.S.C. § 1641(a). The appeals court and other district courts in the circuit, however, previously have treated finance companies who immediately assumed a dealer's interests in a lease agreement as lessors in their own right. See generally Turner v. General Motors Acceptance Corp., 180 F.3d 451 (2d Cir. 1999); Hildabrand v. DiFeo Partnership, 89 F. Supp. 2d 202 (D. Conn. 2000); Pettola v. Nissan Motor Acceptance Corp., 44 F. Supp. 2d 442 (D. Conn. 1999). In none of these cases, though, did the defendant raise a defense under 15 U.S.C. § 1641(a). Accordingly, the respective courts did not confront the question of whether the finance companies should be classified as lessors or assignees.

Across the country, other circuit courts have allowed assignee finance companies partial immunity from suit under § 1641(a) in the context of automobile *sales* installment contracts.

See, e.g., Green v. Levis Motors, 179 F.3d 286 (5th Cir. 1999) (holding that bank, as assignee of the sales contract, could not be held liable under TILA for the dealer's misstatement of amount paid for state license fees); Taylor v. Quality Hyundai, 150 F.3d 689 (7th Cir. 1998) (holding that only the dealer making the original disclosures, and not the bank subsequently assigned the installment contract, could be held liable for overstating the charge for an extended warranty); Ellis v. General Motors Acceptance Corp., 160 F.3d 703 (11th Cir. 1998) (holding that financing company, to whom dealer simultaneously assigned installment contract, could not be found liable for overstated charge to mechanic itemized on contract); but see Applebaum v. Nissan Motor Acceptance Corp., 226 F.3d 214 (3d Cir. 2000) (treating financing company who promptly had been assigned automobile lease as a lessor liable for inaccurately disclosed early termination charge).

Kennedy argues that, regardless of BMW's status as lessor or assignee, it is entitled to no protection under § 1641(a), because that statutory provision appears in a different section of the TILA than the CLA. The Court finds this reasoning unpersuasive. The CLA itself is enforced through the larger statutory scheme of TILA. 15 U.S.C. § 1667d of the CLA, discussing the civil liability of lessors, specifically states that the "grounds for maintenance of [a civil] action" is provided by "[15 U.S.C.] section 1640 of [TILA]." Section 1641, obviously, directly follows 15 U.S.C. § 1640, and limits what claims under the former section may be pursued against assignees. There is nothing to suggest that, in the context of consumer leases, a lessee may avail himself of the remedies provided by TILA through § 1640 but ignore the restrictions of §

1641(a).[9]

Nor does the staff commentary to Regulation M, to which courts must defer in interpreting the CLA, suggest that lease assignees are excluded from the protections of § 1641(a). That commentary says that assignees who are substantially involved in lease arrangements *may* be considered lessors for purposes of the regulation. See 12 C.F.R. § 213.2(h), Supp. I. That language implies both that is not *mandatory* for substantially involved assignees to be treated as such, and that assignees less involved in lease arrangements should not be considered lessors.

The better question is whether BMW should be classified as an assignee or a lessor for purposes of the alleged violations in the instant case. Those violations can be divided into two categories: the allegedly incorrectly calculated license and registration fees due at lease signing, and the allegedly incorrectly calculated excess mileage fees and sales tax due at lease termination.[10] The Court finds that, based on the undisputed facts here, BMW should be treated

---

[9] The Court here underscores that § 1641(a) does not provide assignees absolute immunity for TILA violations, but merely limits claims that may be brought against assignees to violations "apparent on the face of the disclosure statement."

[10] Kennedy does raise a third allegation which can be classified in a category of its own: He claims that BMW misstated the correct date of the second lease payment and the end of the lease term, and that this violates the CLA's requirement that all required disclosures be "clear and conspicuous." See Amended Complaint at ¶ 7. Kennedy bases this claim on the fact that Section 7 of the original lease stated that the first payment was due on April 30, 1999, with 35 additional monthly payments due on the first of each month. Kennedy argues that this language required the Iannuzzis to make a second lease payment 24 hours later, on May 1, 1999, which would have meant that the lease term would expire one month earlier than the May 1, 2002 date given on the lease.

The evidence before the Court, however, suggests that neither the Iannuzzis nor BMW construed the lease to read that way and that both considered the second lease payment to be due on June 1, 1999, and that the lease term would correspondingly expire on May 1, 2002. See Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment at Exh. K, 67-68. Neither does the record contain any evidence that the Iannuzzis were confused by the meaning of this disclosure, nor that BMW pursued payment on any schedule other than the

as an assignee as to the first category, and as a lessor as to the second.

Within Kennedy's first category of alleged violations are his claims that the original lease overstated by $107.50 the amounts due for title, registration, and licensing of the vehicle, thus overstating the payment due at lease signing by that amount, which error also overstated his "total of payment" under the lease (itemized in Section 9 of the original lease, and calculated by adding the total monthly payments plus the payment due at lease signing plus the lease disposition fee of $350). Kennedy does not allege that the fees and taxes due over the lease term (considered a finance charge that must be disclosed under the CLA, and which were calculated in a different section of the lease) were in error, nor that his monthly payment was improperly calculated or disclosed.[11]

The Court finds that BMW should be shielded from liability on these violations as an assignee, as BMW did not calculate these figures and any errors in calculation were not apparent

---

parties' mutual understanding that the second lease payment was due on June 1, 1999. See Appendix of Exhibits in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment at Exh. 17. The Court further notes that the lease's disclosure on the date and amount of monthly payments exactly reproduces the model disclosure statements promulgated by the Federal Reserve Board. See 12 C.F.R. § 213, App. A, Model A-2. Lessors using such model forms are "deemed to be in compliance with [Regulation M]." Id. at App. A(1).

The Court thus finds that the lease complies with Regulation M with regard to the schedule of monthly payments, and that the potential discrepancy of dates is protected under § 1640's language that "a creditor *or* assignee may not be held liable . . . [if] the violation was not intentional and resulted from a bona fide error . . . ." 15 U.S.C. § 1640(c) (emphasis added). The Court therefore grants summary judgment to the defendant on this claim. Its resolution does not affect the Court's analysis of whether BMW should be classified as a lessor or an assignee on Kennedy's remaining claims.

[11] Nor does Kennedy allege that the miscalculated taxes and fees included a potentially actionable "upcharge," a non-itemized profit realized by the dealer. See, e.g., Green, 179 F.3d at 288, 293-94. Kennedy limits his claim to the contention that the itemized amounts simply were incorrect. See Amended Complaint at ¶¶ 8-11.

on the face of the lease. In coming to this conclusion, the Court draws on the Seventh Circuit's reasoning in Taylor v. Quality Hyundai, 150 F.3d 189 (7th Cir. 1998). The Taylors bought a new Hyundai Accent on a retail sales installment contract with their dealer, Quality Hyundai. The disclosure form provided by Quality Hyundai stated that the Taylors had been charged $1,395 for an extended warranty, though in fact Quality Hyundai only forwarded part of that money to the warranty provider. After concluding the installment contract, Quality Hyundai assigned its interest to Bank One Chicago. Upon discovering that they had been overcharged for the warranty, the Taylors sued both Quality Hyundai and Bank One for violating TILA. See id. at 691-92.

Upon review, the Seventh Circuit upheld a grant of summary judgment for Bank One, and affirmed that the bank was protected as an assignee under 15 U.S.C. § 1641(a):

> Even though we do not assume that assignees approach their tasks with blank minds . . . that still does not mean that an employee of a bank or other financial institution could tell, simply by looking at the face of the documents assigned, whether the particular TILA statement before her was inaccurate or incomplete. . . In effect, the rule for which plaintiffs are arguing would impose a duty of inquiry on financial institutions that serve as assignees. Yet this is the very kind of duty that [TILA] precludes, by limiting the required inquiry to defects that can be ascertained from the face of the documents themselves. A useful analogy is the duty of banks to review documents presented under a letter of credit. Like an assignee bank reviewing a TILA assignment, a bank reviewing a letter of credit is responsible for noticing facial irregularities, such as statements that are illegal, impossible, or in conflict with other terms. But in neither instance does the bank have a duty to seek out additional information before it makes its own decision to accept tender of the documents. . . ."

Id. at 694.

Although Taylor involved an installment sales contract rather than an automobile lease, BMW's situation is analogous to Bank One's position in that case. Although Herb Chambers did prepare the Iannuzzis' lease on preprinted BMW forms, it was the dealer and not the financing

company who made the calculations therein. BMW does have standard procedures and documentation with which dealers must comply in order for BMW to accept an assignment. Those procedures, however, are limited to evaluating a potential lessee's creditworthiness, setting the sale price and residual value of the leased vehicle, calculating the monthly lease charge and depreciation, and tabulating the total monthly payments for the life of the lease. See Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment at Exh. K; Appendix of Exhibits in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment at Exh.1-4, 7, 10. Neither party has submitted evidence showing that BMW had any involvement in calculating the license, title, and registration charges of which Kennedy complains.

The Court holds that BMW may be considered a lessor for those parts of the lease agreement with which it was substantially involved (*i.e.*, the terms described above which were set by Herb Chambers in accordance with BMW internal procedures). See 12 C.F.R. § 213.2(h), Supp. I. BMW, however, must be considered an assignee and afforded the limited liability provided by 15 U.S.C. § 1641(a) as to those calculations with which it had no involvement and which were made before its assumption of the lease.[12] To hold otherwise would impose an unreasonable duty of inquiry on BMW that was explicitly rejected in Taylor.

As an assignee, BMW is liable only for those CLA violations which are apparent on the

---

[12] The Court stresses that it draws this conclusion based on the undisputed facts submitted by both parties. Certainly, the involvement of a finance company in any particular lease agreement may vary widely; resolving whether a given company should be considered a lessor or assignee may not be appropriate at summary judgment for all litigation. Here, however, the parties submitted extensive evidence as to BMW's involvement in the lease process and agreed that it was appropriate for the Court to determine BMW's status as a matter of law.

face of the disclosure statement itself. Any miscalculation of license, title, and registration fees could only be ascertained by reference to extraneous documents; such violations cannot be termed facially apparent. Therefore, BMW may not be held liable for any such miscalculations, and the Court grants summary judgment for the defendant as to these claims.[13]

BMW may be considered a lessor in regard to Kennedy's second category of claims, that the excess mileage fees and associated sales tax charged to him at lease termination were miscalculated.[14] Kennedy has submitted evidence to support the conclusion that BMW

---

[13] The Court notes that Kennedy has not named the original dealer, Herb Chambers, as a defendant, and expresses no opinion as to whether Kennedy could recover for these alleged violations against that entity.

[14] While it may appear novel for a financing company to be treated as an assignee for some parts of a lease transaction and as a lessor for others, the Court finds that this conclusion reconciles the potentially contradictory precedents of Taylor v. Quality Hyundai, 150 F.3d 689 (7th Cir. 1998), and Applebaum v. Nissan Motor Acceptance Corp., 226 F.3d 214 (3d Cir. 2000). In Taylor, the finance company was treated as an assignee and could not be held liable for a miscalculated warranty charge that was not apparent on the face of the disclosure statement. Although the Third Circuit did not specifically examine 15 U.S.C. § 1641 in Applebaum, that court nonetheless held that a financing company was liable as a lessor for an improperly disclosed early termination charge. Significantly, there was no evidence in Taylor that the financing company had any involvement with calculating or disclosing the disputed warranty charge, while in Applebaum, the dealer who prepared the lease "responded that it had not performed the [early termination] calculation and had no idea how the figure had been derived. [The dealer]'s practice was to call [the financing company] for the pay-off figure . . . ." Applebaum, 226 F.3d at 217.

This Court similarly concludes that a financing company may be entitled to the protections of § 1641(a) when it is subsequently assigned a lease or sales contract that contains calculations with which it had no involvement, but may not rely on § 1641 when the company itself supplies the relevant figures and disclosures or is substantially involved in their preparation. The lease at issue here contains some disclosures that BMW assisted the dealership in calculating, and BMW should be fully exposed to liability as a lessor if any of those disclosures are inaccurate. But the lease also contains disclosures with which BMW was uninvolved and which it could not have verified without reference to extraneous documents. As to that limited set of disclosures, BMW may invoke the statutory protections provided to assignees.

participates in setting the mileage allowance and excess mileage charges for vehicle leases that it assumes from a dealer. See Appendix of Exhibits in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment at Exh. 10. Furthermore, at the time of lease termination (when these fees were calculated), BMW was the only involved lessor.

In his Memorandum in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment for Liability Only [Docs. # 57-58], Kennedy for the first time raises the claim that he and BMW entered an oral agreement to increase his mileage allowance by 2000 miles, for total allowable mileage of 38,025 miles. See id. at 18-19. This agreement, Kennedy argues, supports his claim that BMW miscalculated and overcharged him for excess mileage. He also accuses BMW of falsifying an affidavit to the Court regarding the true mileage allowance. Id. at 19.

Kennedy, however, made no claims regarding such an oral agreement in his Amended Complaint or in his discovery responses to BMW. At the outset of this litigation, Kennedy based his allegation that he was inaccurately charged for excess mileage on the fact that BMW did not record an odometer statement in compliance with the federal Odometer Act. See Amended Complaint [Doc. #16] at ¶¶ 16, 17, 21. Kennedy's claims under the Odometer Act were dismissed by this Court on October 3, 2003 for failure to state a claim upon which relief could be granted. See Doc. # 37.

"[I]t is improper to raise new claims for the first time in submissions in opposition to a summary judgment motion. . . . A claim must be set forth in the pleadings in order to give defendants fair notice of the nature of the plaintiff's claim to prepare an appropriate defense." Coger v. Connecticut, 309 F. Supp. 2d 274, 279-80 (D. Conn. 2004). Therefore, the Court will

not consider any post-lease oral agreement between Kennedy and BMW for the purposes of deciding this summary judgment motion.[15]

Even if Kennedy and BMW agreed to extend Kennedy's lease term for an additional two months, BMW was not obliged to make any new disclosures to him at that time. New disclosures are not required when the lessor allows "the deferment of one or more payments" or "the extension of a lease for not more than six months on a month-to-month basis." 12 C.F.R. § 213.5(d)(2)-(3). The old disclosures of the original lease thus remained in effect. Part 18 of the original lease agreement reads, in part, "At the scheduled end of this lease you must pay lessor 20 cents per mile for each mile in excess of 36,025." See Appendix of Exhibits in Support of Defendant's Motion for Summary Judgment at Exh. C. When Kennedy returned the car at the expiration of his lease, he was charged $1,868.20 in excess mileage fees, based on an odometer reading of 45,366 miles (45,366-36,025= 9341; 9341 x 0.20= $1,868.20).

The original lease provided Kennedy notice that he was subject to overage charges for exceeding his mileage allowance, and clearly stated how those charges would be calculated. There is no genuine issue of material fact whether BMW has met its disclosure requirements under the CLA, or committed a violation of that statute in charging Kennedy for excess mileage or the associated sales tax on that excess mileage fee.[16] Nor has BMW committed any violation

---

[15] The Court further notes for the record that it has no evidence before it to suggest that BMW has falsified any of its submissions in this case.

[16] Indeed, one of the standard features of a closed-end lease such as Kennedy's is that, while the lessee is not responsible for any difference between the actual and residual values of the automobile at the expiration of the lease term, he still "may be responsible for excess wear and excess mileage charges and for other lease requirements." Applebaum v. Nissan Motor Acceptance Corp., 226 F.3d 214, 217 n.1 (3d Cir. 2000) (quoting Federal Reserve Board Leasing Language, updated Mar. 29, 2000).

by failing to itemize the sales tax owed by Kennedy at lease termination. The only requirement under the CLA is that all taxes to be "paid in connection with the lease" be disclosed; the lessor does not have to itemize the total tax charge. See 15 U.S.C. § 1667a(3); 12 C.F.R. § 213.4(n). Therefore, the Court grants summary judgment for the defendant as to Kennedy's claims based on excess mileage and sales tax charges at lease termination.

### B. Connecticut Unfair Trade Practices Act

Kennedy also claims that any CLA violations committed by BMW are per se violations of CUTPA. As the Court has found that BMW did not violate the CLA, BMW also has not committed any per se violations of CUTPA.

Because it has disposed of all the federal claims before it, the Court declines to exercise supplemental jurisdiction to determine whether BMW's acts independently violated CUTPA. See 28 U.S.C. § 1367(c)(3). Both the Second Circuit and the Supreme Court agree that when all federal claims are dismissed, the "state claims should be dismissed as well." Lanza v. Merrill Lynch & Co., 154 F.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

### C. Defendant's Counterclaims

For the reasons stated above, the Court also declines to exercise supplemental jurisdiction over BMW's state law counterclaims. See 28 U.S.C. § 1367(c)(3).

## III. Conclusion

The Court GRANTS Defendant's Motion for Summary Judgment [Doc. # 46] in its entirety, and DENIES Plaintiff's Cross-Motion for Summary Judgment [Doc. # 58]. The Clerk is

directed to enter judgment in favor of the defendant and close this case.

So ordered this ___15th____ day of March 2005 at Hartford, Connecticut.

/s/ CFD

**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**